1  Donald S. Edgar, Esq. (SBN 139324)
   Jeremy R. Fietz, Esq. (SBN 200396)
2  Rex Grady, Esq. (SBN 232236)
   *THE EDGAR LAW FIRM*
3  408 College Avenue
   Santa Rosa, CA 95401
4  Telephone: (707) 545-3200
   Facsimile: (707) 578-3040
5
6  Attorneys for Plaintiff,
   JOHN D. HANSEN
7
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
11
   MIGUEL A CRUZ, and JOHN D. HANSEN,)   Case No. C 07 2050 SC
12 individually and on behalf of all others)
   similarly situated,                  )
13                                       )   **PLAINTIFF JOHN D. HANSEN'S BRIEF**
                      Plaintiffs,        )   **IN OPPOSITION TO DEFENDANTS'**
14                                       )   **MOTION FOR SUMMARY JUDGMENT**
   v.                                    )
15                                       )   Judge:              Hon. Samuel Conti
                                         )   Complaints Filed:   April 11, 2007
16 DOLLAR TREE STORES, INC,              )                       July 6, 2007
                                         )   Trial Date:         No dates set
17                    Defendant.         )
                                         )
18 _____)
   ROBERT RUNNINGS, individually, and on)
19 behalf of all others similarly situated,)
                                         )
20                    Plaintiff,         )
                                         )
21 v.                                    )
                                         )
22                                       )
   DOLLAR TREE STORES, INC.,             )
23                                       )
                      Defendant          )
24                                       )
                                         )
25 _____)
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  A.    GENUINE DISPUTES OF FACT DO EXIST WITH REGARD TO
        MATERIAL FACTS SUPPORTING DEFENDANT'S AFFIRMATIVE
        DEFENSE TO PLAINTIFF'S STATE LAW CAUSES OF ACTION . . . . . . . . . 3

    1.    The Issue At The Heart Of Defendant's Motion Is Whether
          Plaintiff Spent More Than Fifty Percent Of His Work Time
          Performing Managerial Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    Defendant's Alleged Undisputed Facts In Support Of Its
          Contention That Plaintiff Spent Most Of His Time Performing
          Managerial Duties Are Not Actually Facts And Thus Cannot Be Relied
          Upon In Placing This Matter Beyond Genuine Dispute . . . . . . . . . . . . . . 5

      a.    The Hernandez Declaration Does Not Present Nor
            Support Any Undisputed Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      b.    The Jacobsen-Allen Declaration Rests On Faulty And
            Highly Disputable Premises And Thus Fails To Support
            Defendant's Assertion That A Material Factual Dispute
            Has Been Resolved In Defendant's Favor . . . . . . . . . . . . . . . . . . 7

      c.    The Minimal Amount Of Time Necessary And Actually
            Expended On Managerial Duties Supports The Conclusion
            That A Genuine Dispute Remains Over How Much Time
            Plaintiff Actually Spent Performing Non-Managerial Duties . . . 13

  B.    DEFENDANT HAS NOT MET ITS BURDEN WITH REGARD
        TO PLAINTIFF'S FLSA CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . 16

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## Statutory or Positive Authorities

*8 California Code of Regulations* § 11070(2)(N) ..................................... 4

*29 Code of Federal Regulations* § 541.103 ..................................... 16-17

## Common Law Authorities

*Corning Glass Works v. Brennan* (1974) 417 U.S. 188, 94 S.Ct. 2223 ..................... 1

*Cortez v. Purolator Air Filtration Products Co.* (1998)

      64 Cal.App.4th 882, 75 Cal.Rptr.2d 551 ................................ 1

*Nordquist v. McGraw-Hill Broadcasting Co., Inc.* (1995)

      32 Ca.App.4th 555, 38 Cal.Rptr.2d 221 ................................ 1

1    Plaintiff JOHN D. HANSEN hereby opposes the Defendant DOLLAR TREE STORE'S
2  Motion For Summary Judgment.

3                                  **I. INTRODUCTION**

4    Ordinarily, when a Plaintiff alleges commission of a wrong against him, he bears the burden
5  of proving the wrong actually occurred. There are, however, certain situations when the burden rests
6  on the shoulders of the alleged wrongdoer.  When the Defendant is, as here, an employer who is
7  alleged *not* to have paid the Plaintiff overtime wages or abided by other legislatively established
8  minimum labor standards. The Plaintiff-employee, of course, retains
9  the burden of proving non-payment of overtime wages, as well as the Defendant's failure to provide
10 meal and rests breaks and issue itemized wage statements.  When precisely the burden shifts is when
11 the Defendant does not contest the Plaintiff's facts, but instead asserts *an affirmative defense*.  In this
12 case, the Defendant has indeed raised such a defense.  The defense raised is that the rules governing
13 overtime payment and the providing of meal and rest breaks and itemized wage statements do not
14 apply due to a legal *exception*.  Specifically, Defendant claims that because Plaintiff was a manager,
15 Defendant was exempt from providing overtime wages, meal and rest breaks and wage statements.
16 If this particular exception (or any other) is to apply, it is the Defendant's burden to prove it, not the
17 Plaintiff's to disprove.  (In the overtime payment arena, this principle is well recognized, and has
18 been acknowledged by both State and Federal Courts in such cases as *Corning Glass Works v.*
19 *Brennan* (1974) 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, *Nordquist v. McGraw-Hill Broadcasting*
20 *Company, Inc.* (1995) 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221, 225-226, and *Cortez v.*
21 *Purolator Air Filtration Products Company* (1998) 64 Cal.App.4th 882, 889, 75 Cal.Rptr.2d 551,
22 555). Thus, when considering Defendant's Motion For Summary Judgment seeking a ruling that the
23 Plaintiff-employee was an exempt manager, the Court is faced with an interesting situation.  The
24 Court is faced with determining that the moving party Defendant has demonstrated that the
25 presumptive entitlement of Plaintiff to overtime pay, meal and rest breaks and itemized wage
26 statements is rebutted and that there remains no genuine dispute of material fact supporting its
27 affirmative defense that the Plaintiff, John Hansen, was an exempt manager, and thus not entitled
28 to the relief sought via his lawsuit.

In its Motion, Defendant identifies twelve allegedly undisputed facts in support of its Motion. Several of these facts are not entirely relevant to the issue before the Court, including the fact that Dollar Tree operates approximately 220 retail stores throughout California, or that Plaintiff was hired by Dollar Tree in January of 2006, or that Plaintiff's employment with Dollar Tree ended on or about November 16, 2007, or that Dollar Tree's stores vary in size from approximately 3,200 square feet to 21,000 square feet. These facts are not entirely relevant here, nor are they in dispute.

Other of the allegedly undisputed facts enumerated by Defendant are not entirely untrue, but are not entirely true either, because, as presented by the Defendant, they stand stripped of meaningful context. For instance, it may be true that Defendant called Plaintiff a "manager," but what Defendant called Plaintiff is distinct from how it treated him. It may be true that as a "manager" Plaintiff was required to perform a number of management functions, but the amount of time he spent performing these functions, and just how virtually automated they were, belies the claim that he exercised much discretion or independence and was, in practice, as well as in name, a "manager." It may be true that Plaintiff earned more than three times the minimum wage, but what one earns hardly is sufficient alone to establish whether one is a "manager," or not. And while it may be true that at any given time Plaintiff performed his duties there were usually two "associates" present, their presence hardly transformed Plaintiff's status as a glorified cashier and stock boy into an exempt manager who was not entitled to overtime pay, meal and rest breaks or the issuance to him by his employer of an itemized wage statement with each pay check.

What Defendant is most correct about in its Motion is its identification of the foundational premise of the Plaintiff's various causes of action. This premise is that Plaintiff was not in truth a manager and thus was entitled, but did not receive, those things that ordinary employees are by law entitled (and required) to receive, including overtime wages, meal and rest breaks, and itemized wage statements. If Plaintiff was, in fact, a manager in more than merely name, none of his claims can be supported and must be dismissed. Defendant is also correct in identifying two relevant standards by which to determine whether Plaintiff was indeed a manager. One of these standards is found in the laws of California and governs claims arising in State law; the other is found in Federal law and governs the Plaintiff's Fair Labor Standards Act claim. Defendant, however, is **not** correct in its

1   conclusion that Plaintiff cannot genuinely dispute facts essential to a finding that Plaintiff was not

2   a manager under either of these standards.  And because Defendant is not correct in its conclusion,

3   its Motion should be denied.

## II.  ARGUMENT

### A. GENUINE DISPUTES OF FACT DO EXIST WITH REGARD TO *MATERIAL FACTS* SUPPORTING DEFENDANT'S AFFIRMATIVE DEFENSE TO PLAINTIFF'S STATE LAW CAUSES OF ACTION

#### 1.  The Issue At The Heart Of Defendant's Motion Is Whether Plaintiff Spent More Than Fifty Percent Of His Work Time Performing Managerial Duties

10          California's test for determining whether an employee is a manager is correctly set forth by

11   the Defendant.  A manager is an employee (a) whose duties and responsibilities involve management

12   of the enterprise in which he is employed; *and* (b) who customarily and regularly directs the work

13   of two or more other employees; *and* (c) who has the authority to hire or fire other employees or

14   whose suggestions and recommendations as to the hiring or firing and as to the advancement and

15   promotion or any other change of status of other employees will be given particular weight; *and* (d)

16   who customarily and regularly exercises discretion and independent judgment; *and* (e) who is

17   primarily engaged in duties which meet the test of the exemption (i.e. management duties); *and* (f)

18   who earns a monthly salary equivalent to no less than two times the state minimum wage for full-

19   time employment (i.e. forty hours per week).

20          In determining whether one is a manager pursuant to this test, the Court does not possess

21   discretion to weigh the several elements and reach what might be called an equitable conclusion.

22   The test is not what might called a "balancing test."  In truth, the elements of the test are

23   conjunctively, not disjunctively, arranged. This means that each element must be considered

24   individually, and each must be satisfied. *If one of the elements does not apply to the employee, then*

25   *a finding that he is not a manager is mandatory.*  Such a test obviously places a *heavy burden* on the

26   party seeking to demonstrate that an employee was a manager.

27          It may (or may not) be true that several of the elements of the test are satisfied with regard

28   to the Plaintiff.  For instance, there may be no dispute that Plaintiff's duties involved (at times, at

1   least) management of Dollar Tree stores.  Nor, perhaps, is there any dispute that he had some

2   authority regarding the hiring and firing of other employees.  Nor, may there be any dispute that he

3   exercised some discretion and judgment.  Nor is it disputable (for purposes of argument, at least) that

4   he worked full-time and earned more than twice the minimum wage.

5          If there was indeed lack of substantial dispute of fact with respect to any of these matters (all

6   of which are material to this Motion), this would not conclude the inquiry.  The Defendant still has

7   not met its burden.  If no dispute exists as to the aforementioned "facts," the Defendant must still

8   demonstrate that there is no genuine dispute over the alleged fact that Plaintiff was "primarily

9   engaged in duties which meet the test of the exemption"– that is, whether he spent most of his time

10  managing, as opposed to performing non-management duties.  As pointed out by the Defendant in

11  its Motion, the word "primarily" is defined in the *Code of Regulations* as "more than one-half the

12  employee's work time." (See *Defendant Dollar Tree Store, Inc.'s Motion For Summary Judgment*,

13  at p. 11, citing 8 Cal. Code of Regulations Sec. 11070(2)(N)).  As shall be explained, the "fact" of

14  how much time Plaintiff spent performing management duties remains markedly in dispute.  The

15  Defendant's lack of evidence in support of the contention that Plaintiff spent most of his time

16  performing such duties demonstrates the enduring controversy on this point.

17         Before examining Defendant's supposed evidence in support of its Motion, Plaintiff must

18  point out that he alleged in his Complaint the existence of a work environment that literally reduced

19  the traditional discretionary roll of managers to Pavlovian responses to stimuli.  It has been alleged

20  by the Plaintiff that there was essentially no discretion in the ordering process because Plaintiff was

21  simply required to review the automatically compiled electronic inventory data base and push a

22  button to send an order if the product numbers in the data base were below certain levels.

23  Furthermore, Plaintiff has alleged that drastic pressures to keep operating costs down compelled the

24  scheduling of skeleton crews which seldom numbered more than two or three persons, and that in

25  order to serve clients and keep the shelves stocked with product, the so-called "manager" was

26  compelled to perform these tasks himself, rendering him indistinguishable from non-exempt, non-

27  managerial employees.

28         In its Motion, Defendant has not denied that its inventory was tracked by a bar code scanning

1  system and a related computer program. It has not denied that ordering by the manager was as
2  simple as bringing the correct window up on a computer monitor and pushing a button to send a
3  message to the Defendant's distribution center requesting shipment of product. Defendant has not
4  denied that Plaintiff's job-site usually had no more than three employees in it at any time. It has not
5  denied that there was a great pressure on "managers" to keep staffing levels low, and, with it, store
6  overhead. Instead, Defendant has enumerated all of the so-called "managerial duties" admittedly
7  performed by Plaintiff, and then attempted to present evidence that performance of these "managerial
8  duties" consumed more than fifty percent of Plaintiff's time. Examination of the evidence in support
9  of Defendant's position demonstrates just how misleading the Defendant's argument is, and just how
10 far short it falls from meeting the standard it must satisfy if its Motion is to be granted.

11      The enumeration of "managerial" duties performed does not establish that Plaintiff was a
12 manager and thus exempt from being paid overtime, or receiving meal and rest breaks, or receiving
13 itemized wage statements. It is not disputed that the duties identified by Defendant were actually
14 performed by Plaintiff (though the extent of discretion and independence necessary to perform these
15 duties, or which was permitted the Plaintiff, is in dispute). What is disputed, and genuinely and
16 materially so, is the contention by Defendant that Plaintiff performed these duties more than fifty
17 percent of his work time.

18      **2. Defendant's Alleged "Undisputed" Facts In Support Of Its Contention That Plaintiff**
19 **Spent Most Of His Time Performing Managerial Duties Are Not Actually Facts And Thus**
20 **Cannot Be Relied Upon In Placing This Matter Beyond Genuine Dispute**.

21      Examination of Defendant's Motion reveals Defendant's reliance on only <u>two</u> alleged facts,
22 or sources of facts, supporting the conclusion that Plaintiff spent more than fifty percent of his time
23 performing exempt managerial duties.

24      **a. The Hernandez Declaration Does Not Present Nor Support Any Undisputed Fact**
25      The first "fact" is found on page 15 of Defendant's Motion Memorandum, beginning on line
26 19. After identifying a series of managerial duties performed by Plaintiff, Defendant states: "all
27 these duties required Hansen's independent discretion and judgment and consumed more than fifty
28 percent (50%) of his work time." This statement is not a fact. Instead, it is a mere conclusion.

1   Alone, without factual support, it establishes *nothing*.

2     Following the conclusory statement is what appears on its face to be a reference to evidence
3   in its support.  The reference appears parenthetically at the end of the statement.  It is identified in
4   parentheses as paragraph 6 of the supporting *Declaration of Carlos Hernandez*.  In this Declaration,
5   Mr. Hernandez identifies himself as a Regional Training Manager employed by Dollar Tree.  In
6   Paragraph 6, Mr. Hernandez states that when training store managers, "I tell them that planning is
7   the key to success in operating a store."  He explains that he tells store managers "that 25% to 30%
8   of their time must be devoted to planning the staffing and operations of the store to maximize sales."
9   He then goes on to describe in detail the procedures he instructs them to follow.  He concludes the
10  paragraph with the statement: "If a store manager spends 25% to 30% of his time in planning, and
11  taking into consideration the remaining supervisory functions to be performed, the Store Manager
12  will spend more than 50% of his time on management responsibilities."

13    In its Motion Memorandum, Defendant asserts as fact that "all duties" described as
14  managerial which were performed by Plaintiff John Hansen "consumed more than fifty (50%) of his
15  work time."  The presentation of this alleged fact is unconditional and applies expressly and
16  exclusively to John Hansen.

17    Mr. Hernandez' statement, however, is hardly so unconditional as Defendant suggests, and
18  on its face *does not apply to John Hansen at all*.  The statement begins with the protasis "if," which
19  signals the coming of a purely conditional statement.  The statement itself indeed lives up to the
20  expectation created by its first word.  "If a store manager spends 25% to 30% of his time in planning,
21  and taking into consideration the remaining supervisory functions to be performed, the Store
22  Manager will spend more than 50% of his time on management responsibilities."  The statement
23  begs the question: *what if the store manager only spends 5 percent of his time in planning*?  What
24  is the result then?  Mr. Hernandez does not tell us, but logic compels the inference that by changing
25  the conditions in the form of the numeric variables, his conclusion (and Defendant's) is necessarily
26  altered.  Mr. Hernandez's statement clearly is not a fact; it is a theorem.  It has nothing expressly to
27  do with the Plaintiff.  It does not relate to Plaintiff's actual experience.  The percentages themselves
28  are mere suppositions of someone who trains managers, not someone who performs the manager's

1 duties.  Therefore, the Declaration of Mr. Hernandez cannot support the conclusory statement

2 appearing in the Defendant's Motion Memorandum and must be disregarded by the Court.

3       As a final point on this subject, it is important to add that the Defendant's unsupported

4 conclusion not only fails on the basis of logic, but simply is powerless to overcome the fact attested

5 to by Plaintiff that he not only spent more than 25 percent of his time performing non-managerial

6 cashier and stocking duties, but that the performance of such duties consumed more than half of his

7 work-time.  (See ¶ 7 of the *Declaration of John D. Hansen*, filed herewith).

8       **b.  The Jacobson-Allen Declaration Rests On Faulty And Highly Disputable Premises**

9 **And Thus Fails To Support Defendant's Assertion That A Material Factual Dispute Has Been**

10 **Resolved In Defendant's Favor**

11       Now *if* it was true that a store manager spent twenty-five to thirty percent of his time in

12 planning, and *if* it was true that the store manager in question was John Hansen, and *if* one then took

13 into consideration the remaining supervisory functions to be performed (whatever they might be),

14 it *might* be true that Plaintiff spent more than fifty percent of his work time performing management

15 responsibilities. This is exactly what the Defendant attempts to establish with its second alleged

16 undisputed fact (or group of facts) in support of its contention that Plaintiff was a manager and thus

17 exempt from State (and federal) wage and hour laws.

18       This second alleged fact appears on page 16 of Defendant's Motion Memorandum.  It comes

19 in the form of allegations as to proof of the amount of time Plaintiff spent in operating the cash

20 register.  Why is this relevant?  It is relevant because the time Plaintiff spent operating the cash

21 register is an essential component of a larger calculation of how much time Plaintiff actually spent

22 performing non-managerial duties.  Cashiering and shelf stocking are two duties that are non-

23 managerial in nature.  Plaintiff alleged in his Complaint that he spent most of his time at work

24 performing such duties.  And he testified at his deposition that he spent *more time* cashiering than

25 shelf stocking.  What Defendant wishes to demonstrate with its second "fact" is the truth of the

26 theorem that *if* Plaintiff spent less than twenty-five percent of his time cashiering, he could not have

27 spent more than forty-nine percent of his time both cashiering *and* stocking, and must, therefore,

28 necessarily have spent *more* than fifty percent of his time performing managerial duties.  This

1  theorem and the logic supporting it are flawed because the theorem does not take into account other
2  non-managerial duties Plaintiff performed, such as cleaning store facilities, grounds and equipment.
3  More significantly, the theorem's application to the facts is flawed due to the highly tenuous
4  reasoning connecting the facts to the theorem.  In truth, the facts, such as they are, do not support the
5  theorem at all.

6      What are the facts supporting the theorem?  What Defendant states in its Memorandum is
7  that:

8

9      Dollar Tree is able to ascertain the amount of time each store employee spent on a
10     cash register by reviewing certain cashier reports. (Brady Decl., ¶ 7). These Reports
11     show that, as a Store Manager, Hansen spent an average of only 12% of his time in
12     the store cashiering. (Jacobsen-Allen Decl., ¶ 12) ....Given Hansen's admission that
13     he spent more time cashiering than stocking, coupled with the fact that he spent only
14     12% of his time cashiering, Hansen cannot have performed non-exempt tasks more
15     than 25% of the time he worked. [Defendant's *Memorandum of Points and*
16     *Authorities*, 16:1-7].

17

18     But is it true that Cashier Reports unequivocally and undisputably establish that Plaintiff
19  spent an average of only 12% of his time in the store cashiering?  To examine the veracity of this
20  alleged fact asserted by Defendant, we must look at the evidence cited in its support, which is
21  paragraph 12 of the  *Declaration of Charlotta Jacobson-Allen.*
22     Ms. Jacobson-Allen (who is a paralegal, not an accountant) declares that she examined the
23  Cashier Reports for the machines operated by Mr. Hansen.  It was, she says, possible to identify the
24  machines used by Mr. Hansen by an electronically inputted code assigned to him, which he would
25  have entered into the register in order to operate it.  The register, and the computer system linked to
26  it, was able to track how much time a particular cashier spent operating that register.  By examining
27  the Cashier Reports generated by machines operated by Plaintiff, Ms. Jacobon-Allen says she was
28  able to calculate a raw number of minutes (and hours) spent by Plaintiff cashiering.  Then, after

1   determining that Mr. Hansen worked, on average, 49 hours per week, she calculated that Mr. Hansen

2   spent less than 12% of his time operating a cash register.

3        To simplify our inquiry, we can, for the sake of argument here (but not for trial purposes),

4   concede that Plaintiff worked, as Ms. Jacobson-Allen attests, on average of 49 hours per week.

5   Plaintiff himself believes this to be roughly accurate. (See ¶ 4 of the *Declaration of John D. Hansen*,

6   filed herewith).  We cannot, however, concede her conclusion that Plaintiff spent less than 12

7   percent of this time operating a cash register.  We cannot do so because it is not consistent with

8   Plaintiff's own recollection of his experience. (See ¶ 7 of the *Declaration of John D. Hansen*, filed

9   herewith). and, as importantly, because it is founded on a distortion of the underlying evidence.  The

10   distorted nature of Ms. Jacobsen-Allen's conclusion as to the time Plaintiff spent cashiering is not

11   on its face clear, though the lack of any copies of exemplar Cashier Reports forming the basis of her

12   calculations does give rise to a nebulous suspicion.  When one actually examines but *one* of these

13   reports, and then takes into consideration Plaintiff's own testimony regarding that very *same report*,

14   that suspicion dissipates, and in its place emerges the un-blurred understanding that Ms. Jacobson-

15   Allen's fundamental premise, that the reports reflect <u>*all*</u> time spent by an employee manning a cash

16   register, is <u>false</u>.  Examination of but one report reveals that the Cashier Reports track only the

17   amount of time dedicated to each customer transaction, and *do not* track time that passes *between*

18   <u>*each*</u> transaction.

19        To demonstrate this point, we need only examine the Cashier Report that was discussed at

20   Plaintiff's deposition and which was attached to the transcript of that deposition as Exhibit 64.  The

21   Court can review this document itself by turning to Exhibit "A," attached to the supporting

22   *Declaration of John D. Hansen*, filed herewith.

23        The Cashier Report in question relates to the week of October1, 2007, and includes October

24   6.[1]  It is a very sparse document.  It evinces five columns, headed, in sequence, with the words:

25   "store", "cashier number", "transactions date", "total transactions", and "total minutes."  The fourth

26

27        [1] For the veracity of the dates associated with this document we must trust Defendant's counsel,

28   who supplied this information to Plaintiff and his attorney at Plaintiff's deposition on November 1, 2007.
  See Deposition of John D. Hansen, 333:19-24, true and correct copies of which pages are attached as
  Exhibit "B" to the *Declaration of John D. Hansen*, filed herewith.

1  entry below these headings represents, according to Defendant's counsel at Plaintiff's deposition,
2  the total number of transactions and total time spent on the register by Plaintiff on October 6. The
3  document apparently indicates that Mr. Hanson (whose cashier number is 56323) conducted 130
4  transactions in the space of 104 minutes on that day. In other words, on October 6, 2007, Mr.
5  Hanson served 130 individual clients in only 104 minutes (i.e. 1 hour and 44 minutes). If it is true
6  that he was only on the register for 104 minutes that day, he would have been serving one client
7  every 50 seconds. This means he would have scanned every item for purchase by a single client,
8  accepted payment either by cash, or check or charge, made change, provided a receipt, bagged the
9  purchased items and responded to any questions the customer had or issues they raised— all within
10 a mere 50 seconds. And he would have had to have done this for each client *without stop* for 104
11 straight minutes!

12      As unlikely as this seems, we need not rely solely on our own logic and common sense to
13 doubt its truth. We can refer to Plaintiff's own testimony regarding this very document.

14      At his deposition, Plaintiff was presented a copy of the document by Defendant's counsel,
15 who said:

17      This is a total of the time spent on the cash register at 2262 under cashier number
18      56323 for the week of October 1st, 2007 through October 6th, 2007. Do you see that
19      this report shows that you spent less than two hours on the register on October 6,
20      2007? Does that refresh your recollection in any way as to how much time you
21      actually spent on the register that day? (Transcript of the Deposition of John D.
22      Hansen, 333:19-334:2, true and correct copies of which pages are attached to the
23      Declaration of John D. Hansen as Exhibit "B.").

25      Plaintiff's response was as follows:

PLAINTIFF'S OPP. TO MOTION FOR SUMMARY JUDGMENT        07-2050$0

Not necessarily.  I'm curious how I could cash out 130 people in 140 (sic) minutes.
That doesn't make sense to me at all.  I mean, I know I'm fast, but I don't see how
that could be necessarily possible.  I don't know how they're calculating the minutes
on this. (*Id.*, at 334:3-8).


Defendant's counsel suggested that the cash register allowed for a recording of the amount
of time it was being operated by a particular employee.  Plaintiff expressed his doubt that it was
actually recording <u>all</u> of the time spent manning the register.  Specifically he doubted that it recorded
the time *between* transactions.  He doubted this because there simply was not enough time for him
to have served 130 clients in a mere 104 minutes (and presumably 140 minutes, too).  He knew *for
a fact* that he spent quite a bit of time that particular day *standing around between transactions* and
that he worked at the register for more than 140 minutes.  This is what he said:

that day I remember being on it for, like, three hours straight.  *Just standing there.*
So I don't see how....  I don't see how this number can reflect the actual time I was
standing there at the register. (*Emphasis added*). (*Id.*, at 334:17-22).


Logic, common sense, our understanding of causality and our own experience with how
much time we all spend waiting in line for other people before us, and how long our own
transactions at a store tend to take, refute the assumption of Ms. Jacobson-Allen (and the Defendant)
that the time recorded on the Cashier Reports reflects <u>all</u> time spent by an employee at a particular
register.  Instead, logic and common sense suggest that the Cashier Reports only record the time
during which the register and its attached scanner were in operation, from the beginning of each
transaction until the end of each transaction.  Logic and common sense are supported by the
Plaintiff's own fact-based recollection and doubt as presented in the form of his oath-sworn

1    testimony.[2]

2         It is interesting to reflect on what is known as "methodology" as it has been employed by the

3    Defendant.  Instead of simply obtaining testimony from Plaintiff about how much time he spent

4    performing non-managerial tasks, or how much time he spent performing managerial tasks, or what

5    percentage of his time, in his estimation, he spent performing either class of tasks, the Defendant

6    carefully avoided eliciting such testimony throughout the fourteen hours Plaintiff was deposed.  In

7    place of testimony from Plaintiff's own mouth (or anyone else's) about the time he spent performing

8    various tasks, Defendant has constructed a strange, elaborate, tenuously connected and highly fragile

9    "factual" ediface that simply cannot withstand scrutiny either of its "facts" or its underlying logic.

10         Where, then, does this leave the Defendant?  Well, at the very least, it leaves Defendant

11    without _any_ factual support for its conclusion that Plaintiff spent most of his time performing

12    managerial duties.  Does this mean that the time spent by Plaintiff performing non-exempt, non-

13    managerial tasks exceeded fifty percent of his work shifts?  No, it does not.  But, *it does mean that*

14    *the Defendant has not met its burden to demonstrate that there remains no genuine dispute of*

15    *material fact that Plaintiff did not spend most of his time performing non-managerial tasks*.  A

16    genuine dispute of fact remains as to the amount of time Plaintiff spent cashiering (something that

17    is unquestionably material to this case).  *If* the amount of time spent stocking shelves was less than

18    the time spent cashiering, and it remains in dispute whether Plaintiff spent more than twelve percent

19    of his time cashiering, the amount of time spent stocking shelves remains in dispute too— meaning

20    that it is genuinely disputable that Plaintiff spent less than eleven percent of his time performing this

21    task.  And *if these two key variables of the equation by which Defendant claims it is to be determined*

22    *how much of Plaintiff's time was spent performing non-managerial duties remain in dispute, so too*

23    *does the amount of time Plaintiff spent performing such duties.*

24

25

26
        _____

27       [2] Other entries on the Cashier Report for the week of October 1, 2007 equally support this
conclusion.  The three other entries on the report indicate 52 transactions in 36 minutes on one day, 64

28    transaction in 62 minutes on another day, and 69 transactions in 48 minutes on the third day.

1    **c.  The Minimal Amount Of Time Necessary And Actually Expended On Managerial**

2    **Duties Supports The Conclusion That A Genuine Dispute Remains Over How Much Time**

3    **Plaintiff Actually Spent Performing Non-Managerial Duties.**

4         The genuineness of the enduring dispute as to how much time Plaintiff spent performing

5    managerial duties is further highlighted when examining the duties unique to the manager, what

6    those duties entailed and how simple and with what rapidity they were performed by the Plaintiff.

7    In doing so, we can even rely on some of the particular duties identified by Defendant.  These duties

8    include ordering one hundred percent of frozen food, ordering 19.62 percent of all other store

9    merchandise, hiring sales associates, firing sales associates, counseling employees, scheduling

10   employees, evaluating employees, and delegating duties to his assistant managers.[3]

11        At Plaintiff's Deposition, Defendant did not ask Plaintiff many of the details regarding any

12   of these tasks, particularly with regard to how much time he spent on them.  Certainly the ordering

13   of 100 % of frozen food sounds impressive, and sounds like it might have taken considerable time.

14   However, what is not clear from the evidence presented by Defendant is that the volume of all

15   products in the store, including frozen food, is tracked by an automated electronic data system. (See

16   ¶ 9 of the *Declaration of John D. Hansen*, filed herewith).  When a particular item is sold, it is

17   scanned by the cashier, and the number of items remaining in stock is automatically computed.

18   Ordering a product involves nothing more than pushing a few buttons to call up the relevant data

19   _____

20        [3] It should not be left unsaid that those tasks enumerated by Defendant as "managerial"which
     were performed by Plaintiff were not all truly managerial in nature.  Certainly hiring an employee is a

21   managerial task, as is training an employee and counseling them.  But the erecting of product displays? In
     actuality, no originality or discretion was necessary in the setting up of product displays.  Defendant

22   makes it seem as if Plaintiff spent time at a drafting board contemplating the most efficiently engineered
     and aesthetically attractive arrangements of products.  In reading Defendant's words, it is easy to

23   envision Plaintiff sitting in a neon lit room late at night, pencil behind his ear, sweat on his brow, one
     hand in his temple in frustration and the other crumbling yet another defective schematic and tossing it,

24   absent-mindedly behind him, toward a waste receptacle surrounded by nearly identical crumbled wads of
     paper.  The truth was actually much different.  In setting up displays, all Plaintiff did was follow

25   directions provided by Defendant: A connects to B, which connects to C, which connects to D.  Some
     changes might have been made to the design, but, as Plaintiff noted at his deposition, creativity was not

26   encouraged. (See Transcript of the Deposition of John D. Hansen, 54:1-4, true and correct copies of
     which pages are attached to the supporting *Declaration of John D. Hansen* as Exhibit "B."  See also said

27   *Declaration*, at ¶ 10).

28

1   base "screen" on a computer monitor, looking to see if product levels have fallen below an arbitrarily
2   established threshold (established by the Defendant) and then pushing another button to transmit a
3   request for more product to the Defendant's regional supply hub.  This process took, on average,
4   two hours per week.  (See ¶ 9 of the *Declaration of John D. Hanson*, filed herewith).   Subtracting
5   the two hours he spent ordering product from the total hours he worked each week, Plaintiff would
6   have still have approximately 48 hours, or two thousand, eight hundred and eighty (2,880) minutes
7   remaining to dedicate to performance of all of his other weekly tasks.   Put another way, ordering
8   product consumed about four (4) percent of Plaintiff's work time each week.

9           Regarding the hiring of sales associates, Defendant never asked Plaintiff what percentage of
10  his time was dedicated to this task, or how much total time per week was spent performing it.
11  However, it was not a lot.  The Court should keep in mind that the workers hired by Plaintiff were
12  non-skilled, minimum wage earners.  No education was required.  Those individuals hired by
13  Plaintiff simply needed to be able to memorize and retain the very basic knowledge of how to scan
14  a bar code, how to push the appropriate button on a cash register, and how to place an item on a
15  shelf.  There was no elaborate vetting process here, no back-ground investigation, no credit checks,
16  no former employers or references to consult, and no second tier interview to conduct.  It was simply
17  a matter of handing a person an application, having them fill it out, and, then, most likely, telling the
18  person when they needed to show up.  How long did it take Plaintiff to hire any given employee?
19  Plaintiff himself testified that he spent about a half hour conducting the hiring interview.  (See
20  Transcript of Deposition of John D. Hansen, 171:16-172:3, true and correct copies of which pages
21  are attached as Exhibit "B" to the *Declaration of John D. Hansen*, filed herewith).  In his Declaration
22  in support of this Opposition Brief, Plaintiff clarifies that the interview included the filling out and
23  reviewing of the application package.  (See ¶ 11 of the *Declaration of John D. Hansen*, filed
24  herewith).  Even if he hired a new employee every week (which he did not), the time it took for him
25  to complete the process would have amounted to only one (1) percent of his work week.

26          Regarding the training of employees we must reiterate that the type of work to be performed
27  was non-skilled in nature.  Training was not elaborate.  No one was sent to a specialized academy
28

1   to learn how to stack canned goods, or hang a package of chinese made panty-hose on a rod stuck
2   into peg board, or set a plastic immitation ming vase (complete with exagerated mold seams) on a
3   plywood shelf. No one needed to sit in lengthy, week-long seminars learning alternative theories of
4   bar code scanning from learned professors well published in their field. Training consisted of simply
5   showing an employee where "stuff" was and what shelf to put it on, how to pass an item of
6   merchandise over the scanner so that the bar code was electronically read, how to listen for the
7   "beep" to know that the item had been properly scanned, how to push a button to open the cash
8   register, and how to remove a receipt from the register and hand it (without dropping it) to the
9   customer. How long did this all take? In truth, it did not take long. How long did it take for
10  Plaintiff to train any given employee? As he noted in his Declaration in support of this Opposition
11  Brief, Plaintiff stated that it usually took him no more than an hour, over an extended period of time,
12  to train someone to stock shelves. He stated, too, that it usually took him approximately half an hour
13  to train someone to operate the cash register and customer check-out station. Since (according to
14  his recollection at this time) he hired no more than twenty-five (25) persons the entire time he
15  worked for Defendant, the time he spent training personnel was likely no more than 27.5 hours.[4]
16  Since he worked, according to Dollar Tree's figures (as reported in the *Declaration of Charlotta*
17  *Jacobsen Allen*), nearly fifty (50) hours a week,[5] and he worked as a Manager (according to
18  Defendant) a total of sixty-eight (68) weeks (from July of 2006 to November 16, 2007),[6] or 3,400
19  hours, it must be true that he spent a mere .81 percent of his work time training employees.

20      Regarding scheduling, this, too, was hardly a laborious, time-consuming task. And it was
21  one that was largely handled by Defendant directly via a computerized scheduling system called
22  Compass. When he came to work for Dollar Tree, Plaintiff did input the names of employees and

---

24      [4] Defendant's records, of course, should contain the exact number of persons Mr. Hansen hired.
    Without access, at this time, to those records to refresh his recollection, Mr. Hansen must rely on his
25  memory on this point.

26      [5] See ¶ 10 of the *Declaration of Charlotta Jacobsen-Allen* in support of Defendant's *Motion For*
27  *Summary Judgment*.

28      [6] See Defendant's *Motion For Summary Judgment*, 3:15-16.

PLAINTIFF'S OPP. TO MOTION FOR SUMMARY JUDGMENT          07–2050SC      15

1  the times they were to work into the scheduling program, but after several weeks, the time he spent
2  on scheduling plummeted to virtually nothing. The only scheduling tasks he performed afterward
3  were merely making modifications to cover gaps left open in the computer generated schedule and
4  to make changes resulting from schedule change requests of employees. (See Transcript of the
5  Deposition of John D. Hansen, 58:19-60:13, true and correct copies of which pages are attached as
6  Exhibit "B" to the supporting *Declaration of John D. Hansen*). On average, Plaintiff believes he
7  spent no more than forty-five (45) minutes per week working on the schedule. (See ¶ 14 of the
8  *Declaration of John D. Hansen*, filed herewith). In other words, Plaintiff spent about 1.5 percent
9  of his weekly work time dedicated to scheduling.

10        The facts presented in the previous several paragraphs, which are derived in part from data
11  collected by the Defendant, indicate that Plaintiff spent no more than twelve (12) percent of his time
12  performing the key managerial functions. This hardly concludes the matter. But Plaintiff need not
13  establish anything conclusively at this point. All Plaintiff need do is demonstrate that a reasonable
14  dispute of material fact remains. Specifically, Plaintiff needs to demonstrate that a dispute remains
15  as to how much time he spent performing non-managerial tasks, as opposed to managerial ones. By
16  pointing out the faulty premises of Defendant's own factual assertions, and how Defendant's own
17  facts in support of its position are neither facts nor undisputed, and how the evidence supports a
18  genuine dispute over how much time Plaintiff spent performing managerial tasks, Plaintiff has
19  clearly highlighted just how inadequate a showing Defendant has made. Because Defendant has
20  clearly failed to meet its burden of demonstrating that all prongs of the California test for
21  determining managerial status have been satisfied, the Defendant's Motion as to the Plaintiff's State
22  law based causes of action should be overruled.

23  **B.  DEFENDANT HAS NOT MET ITS BURDEN WITH REGARD TO PLAINTIFF'S**
24                        **FLSA CAUSE OF ACTION**

25        Defendant is correct in pointing out the difference between the standards applicable in state
26  claims arising pursuant to the *Labor Code* and federal claims based on the *Fair Labor Standard Act*.
27  The relevant laws are similar— which should not be surprising once one reflects on the fact that the
28

1 State's overtime law was derived from the federal one.  Where the two standards differ is on the
2 effect of a finding that a "manager" spent more than half of his or her time performing non-
3 managerial tasks.  Under state law, the effect of such a finding is to render the "manager" not exempt
4 from requirements that employers compensate employees overtime wages, provide them with meal
5 and rest breaks, and issue them itemized wage statements.  Under the FLSA, there is potentially no
6 effect at all.  As noted in 29 C.F.R. Sec. 541.103,

8    In the ordinary case it may be taken as a good rule of thumb that primary duty means
9    the major part, or over 50 percent, of the employee's time. Thus, an employee who
10    spends over 50 percent of his time in management would have management as his
11    primary duty. Time alone, however, is not the sole test, and in situations where the
12    employee does not spend over 50 percent of his time in managerial duties, he might
13    nevertheless have management as his primary duty if the other pertinent factors
14    support such a conclusion. Some of these pertinent factors are the relative importance
15    of the managerial duties as compared with other types of duties, the frequency with
16    which the employee exercises discretionary powers, his relative freedom from
17    supervision, and the relationship between his salary and the wages paid other
18    employees for the kind of nonexempt work performed by the supervisor.

20    The difference between the applicable state and federal standards, as noted by Defendant, is
21 qualitative, rather than quantitative. Time spent by an employee in performing managerial tasks is
22 relevant, but it is not alone determinative of the employee's managerial status.
23    Defendant does not spend much time discussing whether it has met its burden pursuant to
24 the federal standard to establish that there remains no genuine dispute of fact that Plaintiff was a
25 manager, and thus exempt from FLSA requirements.  After a long discussion of the proper standard
26 to apply, what Defendant does do in support of its Motion for Summary Judgment as to Plaintiff's
27 FLSA cause of action is to merely conclude: "because Hanson meets the quantitative standard,

1   Hansen also meets the FLSA's qualitative requirements."

2          The logic of this statement is hardly unassailable.  In fact, because it is built on a faulty

3   premise, it fails.  As we have demonstrated in the previous section of this Brief, a genuine dispute

4   remains as to whether Plaintiff qualifies as a manager under the State's quantitative standard.  If a

5   genuine dispute of material fact remains as to the Plaintiff's State claims, Defendant's conclusion

6   with respect to Plaintiff's FLSA claim, *necessarily and logically does not follow*.  The conclusion

7   does not follow because it is based on the lack of such a dispute.  In other words, if B is dependent

8   upon the veracity of A, but A is not indisputably established as true, B cannot be indisputable either.

9          Beyond this fatally flawed argument, Defendant offers nothing of substance in support of

10  dismissal of Plaintiff's FLSA cause of action.  In fact, Defendant actually abandons its effort to

11  dismiss the claim, stating: "**summary judgment is *not* appropriate for Hansen's FLSA claim**

12  **based on the FLSA's qualitative standard.**" (***Emphasis added***).

13         Plaintiff agrees with this conclusion.

## III.  CONCLUSION

15         It has been noted that the Moving Party bears the burden of establishing the non-existence

16  of any genuine dispute of material fact if it is to prevail at summary judgment.  Defendant here has

17  brought a motion seeking summary judgment with respect to all of Plaintiff's causes of action, save

18  one.  This one exceptional cause of action— Plaintiff's FLSA claim— Defendant has, in the end,

19  expressly declared to be ***not*** appropriately subject to a Motion For Summary Judgment.  Regarding

20  the other causes of action, Defendant has correctly stated that they rest upon a single premise: that

21  Plaintiff was not in substance a manager, and, therefore, was not exempt from payment of overtime

22  wages, the taking of meal and rest breaks and the issuance to him by the employer of itemized wage

23  statements.  Defendant correctly surmises that if Defendant could establish that there existed no

24  genuine dispute of fact that Plaintiff was actually a manger, all of the other causes of action would

25  fail.  However, Defendant has not met its burden in demonstrating beyond genuine dispute that

26  Plaintiff was a manager.  Defendant has failed to establish that there is no genuine dispute of fact

27  with respect to at least one of the mandatory elements of the test applicable in California in

28

1 determining whether an employee is an exempt manager.  The element of the test that Defendant has
2 obviously failed to establish is the element that an employee is a manager if he or she spends more
3 than fifty percent of his or her time performing managerial duties.  Defendant argues that facts
4 undisputably establish that the time Plaintiff spent performing the non-managerial tasks of cashiering
5 and stocking shelves amounted to no more than twenty-five percent of his time.  And yet the facts
6 establish no such thing.  Plaintiff has demonstrated that the facts on which Defendant rests its
7 conclusion (and its Motion) on are not facts at all.  Rather these "facts" are clearly mere assumptions
8 based on faulty, highly disputable premises.  Specifically, the calculation of time spent performing
9 cashiering duties rests on the assumption that the time recorded on Cashier Reports includes all time
10 spent by Plaintiff at the cash register, including time spent between transactions waiting for
11 customers.  Logic, common sense and Plaintiff's own testimony assail this assumption and place into
12 genuine dispute not only the veracity of the assumption, but also the supposed fact-based conclusion
13 derived from it.  The disputable nature of the Defendant's assumptions, evident in a variety of facts
14 presented by Plaintiff, demonstrate that all reasoning and factual conclusions derived from it are
15 fatally flawed.  Consequently, the Motion brought by the Defendant for Summary Judgment should,
16 in its entirety, be denied.

17

18 Dated: 29 February 2008                    **THE EDGAR LAW FIRM**

19

20

21                                           Donald S. Edgar, Esq.
22                                           Jeremy R. Fietz, Esq.
                                            Rex Grady, Esq.
23                                           Attorneys for Plaintiff

24

25

26

27

28