1
2
3
4
5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

6   MIGUEL A. CRUZ, and JOHN D. HANSEN,)   Case Nos. 07-2050 SC
    individually and on behalf of all )             07-4012 SC
7   others similarly situated,         )
                                       )
8           Plaintiffs,                )   ORDER GRANTING
                                       )   AMENDED MOTION FOR
9      v.                              )   <u>CLASS CERTIFICATION</u>
                                       )
10  DOLLAR TREE STORES, INC.,          )
                                       )
11          Defendant.                 )
    _____)
12                                     )
    ROBERT RUNNINGS, individually, and )
13  on behalf of all others similarly )
    situated,                          )
14          Plaintiffs,                )
                                       )
15     v.                              )
                                       )
16  DOLLAR TREE STORES, INC.,          )
                                       )
17          Defendant.                 )
                                       )
18  _____)

19  **I.   <u>INTRODUCTION</u>**

20       This matter comes before the Court on the Amended Motion for

21  Class Certification ("Motion") file by Plaintiffs Robert Runnings,

22  Miguel Cruz, and John Hansen (collectively "Plaintiffs").  Docket

23  No. 124.[1]  Defendant Dollar Tree ("Defendant" or "Dollar Tree")

24  filed an Opposition, and Plaintiffs filed a Reply.  Docket Nos.

25  151, 162.  For the following reasons, the Motion is GRANTED.

26

27  _____

28       [1] Unless otherwise noted, all docket numbers refer to entries
    in Case No. 07-4012.

## II. **BACKGROUND**

### A. **Procedural Background**

Miguel Cruz ("Cruz") and John Hansen ("Hansen"), on behalf of themselves and all others similarly situated, filed a class action against Dollar Tree, alleging that they were improperly classified as exempt managers and denied wages for overtime. First Am. Compl., Cruz Docket No. 1.[2] Robert Runnings ("Runnings") filed a substantially similar class action in California Superior Court, which Dollar Tree removed to this Court. Notice of Removal, Docket No. 1. On August 30, 2007, the Court signed a Related Case Order after finding that the two cases were similar. Cruz Docket No. 34; Docket No. 21. On November 20, 2007, the Court signed a Joint Stipulation and Proposed Order for Consolidation of Actions signed by counsel for Cruz, Hansen, Dollar Tree, and Runnings. Cruz Docket No. 45; Docket No. 33.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move for an order certifying the following class: "All persons who were employed by Dollar Tree Stores, Inc. as California retail Store Managers at any time on or after December 12, 2004." Mot. at 13 (italics omitted). Starting the class period from December 12, 2004, ensures that any eventual awards to Dollar Tree Store Managers ("SMs") in this case will not overlap with the awards

---

[2] As well as state law causes of action, the Amended Complaint filed by Cruz and Hansen also claims that Dollar Tree's failure to pay overtime wages violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. First Am Compl. ¶¶ 96-104. This motion does not concern the FLSA claim, which requires individual consent, and cannot be litigated pursuant to Rule 23. See Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 605 (C.D. Cal. 2005).

1    that resulted from a previous settlement.  See McDearmon Decl. ¶

2    3; Ex. A ("Settlement Agreement").[3]  Plaintiffs allege the class

3    consists of at least 655 members.  Mot. at 14 n.56.  Defendant

4    contends that the number is likely to be less, and that there are

5    currently 273 SMs in California.  Opp'n at 1 n.5.

6        **B.   Factual Background**

7        Dollar Tree operates discount variety stores offering

8    merchandise at the fixed price of $1.00.  Cole Decl. Ex. A

9    ("Dollar Tree Annual Report") at 6.[4]  Dollar Tree operates

10   approximately 3411 stores nationwide.  Id. at 13.  Dollar Tree

11   currently has 273 stores in California.  McDearmon Decl. ¶ 10.

12   Dollar Tree's goal is for each store to have one SM.  Id. Ex. B

13   ("Hensley Dep.") at 18:22-19:4; McDearmon Decl. ¶ 10.  At the

14   lowest level of Dollar Tree's employment hierarchy are Sales

15   Associates, often employed on a part-time basis, who engage in

16   cashiering, freight receipt, stocking, cleaning, and restoring

17   merchandise to shelves.  Cole Decl. Ex. C. ("Balderas Dep.") at

18   57:1-58:25;[5] McDearmon Decl. ¶ 10.  The next store position is

19   that of an Assistant Manager, who tends to specialize in freight,

20   merchandising, front end work, and operations.  McDearmon Decl. ¶

21

22       [3]  David McDearmon, Dollar Tree's Director of Human Resources,
     Field Operations, filed a declaration in support of Dollar Tree's
23   Opposition.  Docket No. 144.

24       [4] Scott Edward Cole, an attorney and Principal of Scott Cole &
     Associates, filed a declaration in support of the Motion.  Docket
25   No. 126.

26       [5] Reed Balderas is Dollar Tree's Regional Human Resources
     Manager for Southern California and Las Vegas.  Balderas Dep. at
27   6:4-11.

28                                    3

10.    The Assistant Managers report to the SM.  Id.  SMs report to a District Manager, who generally oversees eight to fifteen stores.  Id.  District Managers report to a Regional Director, who has responsibility for six to nine districts.  Id.  Regional Directors report to a Zone Vice-President.  Id.  California consists of thirty districts, and four regions.  Id.  The Zone Vice-President for California has responsibilities for a zone that extends beyond California.  Id.

In early 2005, Dollar Tree settled pending lawsuits that alleged it improperly classified SMs, Assistant Store Managers, and Managers in Training as exempt from overtime compensation. McDearmon Decl. ¶ 3; Settlement Agreement.  The settlement was anticipated to provide $125 per workweek to SMs during the period for January 1, 1999, through December 11, 2004.  Settlement Agreement at 4.  After the settlement, Dollar Tree reclassified Assistant Store Managers and Managers in Training as nonexempt positions.  McDearmon Decl. ¶ 4.  Dollar Tree revised the SM job description.  Id.  SMs in California are now required to spend the majority of their actual work time performing the following duties and responsibilities:

> 1.    Supervision of associates.
> 2.    Oversee daily store activities, including opening and closing store.
> 3.    Ensure customer and associate safety.
> 4.    Protect all company assets, including store cash, merchandise and equipment.
> 5.    Maintain proper sales, banking, inventory, accounting, productivity, payroll and time records.
> 6.    Responsible for adequate staffing of store. Recruit, interview, hire, employ, and train sales associates.  Train associates to properly use all equipment and technology as well as provide thorough merchandise display training.

4

7. Schedule and assign work to store personnel. Evaluate, motivate, counsel, develop, discipline and discharge sales associates appropriately. Maintain production reports to evaluate job performance of sales associates.
8. Provide leadership and direction to store personnel.
9. Communicate company policies to sales associates. Ensure associates comply with company policies and procedures, including safety guidelines and human resources policies.
10. Analyze sales, expenses, and profit, review reports, analyze competition, determine customer preferences, manage sales forecasting, meet sales and profit objectives and goals, determine product mix, determine most effective placement of product and ensure standards for merchandise presentation, displays and signage to maximize sales. Assist in developing promotions and advertisements as appropriate.
11. Control inventory. Supervise ordering, receiving, stocking and pricing of goods. Ensure goods are properly marked and mark downs are properly recorded.
12. Responsible for overall cleanliness and appearance of store.
13. Ensure highest level of customer service. Handle customer complaints and problems.
14. Ensure accident reports and damage reports are completed in timely and accurate manner.
15. Complete management reports in a timely and accurate manner.
16. Ensure compliance with applicable laws and regulations.
17. Communicate professionally and effectively with customers, subordinates and supervisors.

Id. Ex. B ("SM Job Description"); Ex. C ("Payroll Certification"). The certification states that SMs "may not spend more than a total of 35% of his/her actual work time each week receiving product, distributing and storing product, stocking product and cashiering." Payroll Certification.

Around the middle of 2005, Dollar Tree began to require all SMs to certify on a weekly basis that they were spending a majority of their time on the tasks described above. McDearmon

5

Decl. ¶ 5.  Dollar Tree management held meetings in California to explain the certification process to its SMs.  Id.  Beginning in 2007, Dollar Tree has engaged in follow-up contact with SMs who responded "no" on the certification forms.  Id. ¶¶ 6-8.

## III. **EVIDENTIARY ISSUES**

### A. **Request for Judicial Notice**

Dollar Tree filed a Request for Judicial Notice ("RJN") in support of its Opposition.  Docket No. 150.  The Court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Court may take notice of other court proceedings that have a direct relation to matters at issue.  United States ex rel. Robinson Racheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  The Court therefore GRANTS Dollar Tree's request with respect to Exhibits A to P, which consist of documents filed earlier in these consolidated cases, or in other court proceedings.  The Court GRANTS Dollar Tree's request with respect to Exhibit Q, the State Bar of California's attorney web page for Scott Cole.

### B. **Dollar Tree's Evidentiary Objections**

Dollar Tree filed Evidentiary Objections in support of its Opposition.  Docket No. 149 ("Dollar Tree Objections").  Most of Dollar Tree's objections focus on Plaintiffs' characterization of evidence, rather than its admissibility.  The Court relies on the

6

United States District Court

For the Northern District of California

evidence itself, rather than Plaintiffs' characterization of the evidence, and therefore the Court does not need to reach Dollar Tree Objections Nos. 1 to 7, and Objections 10 to 29.  See <u>Inamed Corp. v. Kuzmak</u>, 275 F. Supp. 2d 1100, 1115 n.57 (C.D. Cal. 2002). The Court OVERRULES Dollar Tree Objections Nos. 8 and 9, and the objection to the Declaration of Scott Cole, because the statements objected to do not consist of inadmissible hearsay.

The Court OVERRULES Dollar Tree's objection to the Declaration of Molly A. Kuehn and the attached putative class member declarations.  Dollar Tree bases its objection on <u>Dunbar v. Albertson's, Inc.</u>, 141 Cal. App. 4th 1422 (Ct. App. 2006).  Dollar Tree states that, in <u>Dunbar</u>, the court disregarded declarations of putative class members.  Dollar Tree Objection at 13.  In that case, it is clear that the trial court took all of the evidence into account.  See <u>Dunbar</u>, 141 Cal. App. 4th at 1433.  <u>Dunbar</u>, therefore, provides no support for Dollar Tree's attempt to strike the putative class member declarations.

### C.  **Plaintiffs' Evidentiary Objections**

Plaintiffs filed Evidentiary Objections in support of their Reply.  Docket No. 166 ("Plaintiffs' Objections").  Plaintiffs object to the declaration of Patricia Doss, Docket No. 142, on the basis that Patricia Doss was not disclosed as a person likely to have discoverable information under Federal Rule of Civil Procedure 26.  Plaintiffs' Objections at 2.  Dollar Tree's disclosures show that Patricia Doss was not previously disclosed, and therefore the Court will not consider her declaration in ruling on this Motion.

7

1    Plaintiffs object to the declaration of David McDearmon,

2  Docket No. 144.  The Court finds that the contents of this

3  declaration are either not inadmissible hearsay or are business

4  records under Federal Rule of Evidence 803(6), and the Court

5  therefore OVERRULES Plaintiffs' objection.  Plaintiffs object to

6  the declarations of Steven Pearson, Docket No. 145, Charlotta

7  Jacobson-Allen, Docket No. 137, and Pam Wolpa, Docket No. 147.

8  The Court OVERRULES Plaintiffs' objections finding that they do

9  not raise concerns regarding admissibility, and the objections are

10  without merit.  Plaintiffs object to statements in Dollar Tree's

11  SM declarations, Docket No. 138.  Plaintiffs' Objections at 8-20.

12  The Court OVERRULES Plaintiffs' objections.  The Court has

13  considered these declarations in ruling on this Motion, but the

14  Court does not rely on any statements that are purely speculative,

15  too vague, or mere opinions.

16

17  **IV.   LEGAL STANDARD**

18    Federal Rule of Civil Procedure 23 governs the certification

19  of class actions.  A class action must meet the requirements of

20  Rule 23(a) and fall within one of three categories set forth in

21  Rule 23(b).  Fed. R. Civ. P. 23.  For a class to be certified

22  under Rule 23(a), Plaintiffs must show that the following

23  conditions are met: (1) the class is so numerous that joinder of

24  all members is impractical; (2) there are questions of law or fact

25  common to the class; (3) the claims or defenses of the

26  representative parties are typical of the claims or defenses of

27  the class; and (4) the representatives will fairly and adequately

28                                    8

represent the interests of the class.  Fed. R. Civ. P. 23(a); <u>see</u>
<u>also</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613
(1997)(describing requirement).  In addition, a class can be
certified if common questions of law or fact predominate, and
class resolution is superior to other available methods for fair
and efficient adjudication of the controversy.  Fed. R. Civ. P.
23(b); <u>see</u> <u>also</u> <u>Amchem</u>, 521 U.S. at 614 (describing requirement).

A district court may certify a class only if, after "rigorous
analysis," it determines that the plaintiff has established by
sufficient evidence that all of the requirements set forth by Rule
23 are satisfied.  <u>See</u> <u>Gen. Tel. Co. of the Southwest v. Falcon</u>,
457 U.S. 147, 158-61 (1982); <u>Valentino v. Carter-Wallace, Inc.</u>, 97
F.3d 1227, 1233 (9th Cir. 1996).  The party seeking certification
bears the burden of proof with respect to these requirements.
<u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186, as
amended, 273 F.3d 1266 (9th Cir. 2001).  Plaintiff can meet this
burden by providing the court with a sufficient basis for forming
a reasonable judgment on each requirement.  <u>Blackie v. Barrack</u>,
524 F.2d 891, 901 (9th Cir. 1975).

In determining whether an action warrants class treatment
under Rule 23, "the question is not whether the plaintiff or
plaintiffs have stated a cause of action or will prevail on the
merits, but rather whether the requirements of Rule 23 are met."
<u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (citation
omitted); <u>see</u> <u>also</u> <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 954 (9th
Cir. 2003)(accord).  However, the court may consider evidence
relating to the merits if the evidence also goes to the

requirements of Rule 23.  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d
497, 508 (9th Cir. 1992).

**V.   <u>DISCUSSION</u>**

   **A.   <u>Numerosity</u>**

   Rule 23(a)(1) provides that a class action may be maintained
only if "the class is so numerous that joinder of all parties is
impracticable."  Fed. R. Civ. P. 23(a)(1).  However,
"impracticable" does not mean impossible; it refers only to the
difficulty or inconvenience of joining all members of the class.
<u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913-14
(9th Cir. 1964).  In determining whether joinder would be
impracticable, a court should consider not only the number of
class members, but also "the nature of the action, the size of the
individual claims, [and] the inconvenience of trying individual
suits . . . ."  <u>Wang</u>, 231 F.R.D. at 606 (citing <u>Jordan v. County
of Los Angeles</u>, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on
other grounds, 459 U.S. 810 (1982)).

   Here, Plaintiffs allege the class contains at least 655
members.  Mot. at 14 n.56.  Defendant responds that there are
currently 273 SMs in California.  Opp'n at 1 n.5.  Defendants do
not dispute that this first prerequisite is satisfied.  <u>See</u> Opp'n
at 5.  The Court finds that the class is so numerous that joinder
of all parties is impracticable.

   **B.   <u>Commonality</u>**

   Rule 23(a)(2) requires that there be "questions of law or
fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The

commonality requirement is less rigorous than the related
requirement in Rule 23(b)(3) that commmon questions of law or fact
predominate. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th
Cir. 1998). The commonality requirement must be "construed
permissively." Id. "All questions of fact and law need not be
common to satisfy the rule. The existence of shared legal issues
with divergent factual predicates is sufficient, as is a common
core of salient facts coupled with disparate legal remedies within
the class." Id.; see also Perry v. U.S. Bank, No. 00-1799, 2001
WL 34920473, at *7 (N.D. Cal. Oct. 17, 2001) (finding Rule
23(a)(2) was satisfied but Rule 23(b)(3) was not).

Plaintiffs identify the common questions of fact as "*what
tasks SMs do, the resources they use to do it, the environment
within which they do it, and the directives from Dollar Tree's
corporate office.*" Mot. at 18 n.61 (emphasis in original).
Plaintiffs suggest that questions concerning Dollar Tree's
certification process, and whether SMs perform the tasks described
in the SM Job Description, are common factual issues. Mot. at 18-
20; Reply at 2, 7. Plaintiffs further contend that the legal
issues in this case, such as whether it is proper for Dollar Tree
to classify its SMs as exempt, whether SMs are entitled to meal
and rest breaks, and the adequacy of Dollar Tree's record-keeping,
are common to all putative class members. Mot. at 17-18.

Dollar Tree responds by pointing to variations in how SMs
perform their jobs. Opp'n at 21. The Court does not deny the
work experience of particular SMs varies considerably, but these
variations do not undercut Plaintiffs' contention that all of the

11

legal issues and many of the factual questions are the same for all putative class members. "The existence of shared legal issues with divergent factual predicates is sufficient" to satisfy the commonality requirement. <u>Hanlon</u>, 150 F.3d at 1019. The Court finds that there are questions of law and fact common to the proposed class.

### C. **Typicality**

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020. Rule 23 "does not require the named plaintiffs to be identically situated with all other class members. It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." <u>Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . . The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon</u>, 976 F.2d at 508 (citation and internal quotation marks omitted). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend

12

to merge." <u>Gen. Tel. Co. of the Southwest</u>, 457 U.S. at 157 n.13.

Here, Plaintiffs contend that the typicality requirement is met because the proposed class representatives possess the same interests as other SMs, and allege violations impacting other SMs. Mot. at 15. Dollar Tree responds that the variations in the work experience of SMs shows that the requirement is not satisfied. Opp'n at 21. The Court is not persuaded by Dollar Tree's response. The typicality requirement does not require that Hansen, Cruz, and Runnings be identically situated to all other SMs. Because the alleged injury is based on an alleged improper classification of SMs, and Plaintiffs Hansen, Cruz, and Runnings were employed as SMs, they have suffered the same alleged injury, and therefore have the same claims as other SMs. The Court finds that Plaintiffs' claims are typical of the claims of the proposed class.

**D.   Adequacy of Representation**

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of a judgment which binds them." <u>Hanlon</u>, 150 F.3d at 1020 (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940)). The Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Id.</u> (citing <u>Lerwill v. Inflight Motion</u>

13

1    *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Both the

2    named plaintiffs and their counsel must have sufficient "zeal and

3    competence" to protect the interests of the rest of the class.

4    *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th

5    Cir. 1975).  This requirement again tends to merge with the

6    commonality and typicality requirements.  *Gen. Tel. Co. of the*

7    *Southwest*, 457 U.S. at 157 n.13.

8         Dollar Tree contends that Cruz, Hansen, and Runnings are not

9    adequate class representatives because they are not credible or

10   trustworthy.  Opp'n at 22.  The credibility allegations are based

11   on the claim that Hansen, as an SM, often certified that he spent

12   a majority of his time working on the managerial tasks listed in

13   the weekly Payroll Certification, but later claimed in a

14   declaration that he spent most of his time stocking shelves and

15   cashiering.  *Id.* at 12-13.  In his deposition, Hansen testified

16   that he understood he was supposed to spend most of his time on

17   managerial functions.  *See* Eltanal Decl. Ex. E ("Hansen Dep.") at

18   88:4-15.[6]  However, Dollar Tree presents no evidence that Hansen

19   often certified that he spent most of his time performing

20   managerial tasks.  For example, Dollar Tree does not provide any

21   of Hansen's actual certifications.  The inconsistency between his

22   deposition testimony and statements in a declaration is not

23   sufficient to impugn Hansen's credibility.

24        The untrustworthiness allegations are based on the

25

26        [6] Rossana Eltanal, an associate in the firm Littler Mendelson,
     counsel for Defendant, filed a declaration in support of
27   Defendant's Opposition.  Docket No. 146.

28                                    14

circumstances surrounding Hansen's and Runnings' separations from Dollar Tree. Id. at 22. Dollar Tree alleges that Hansen was terminated for tampering with his employees' time records, and that Runnings resigned after it was discovered he was in possession of a confidential document. Id. at 22-23. The Court finds that these allegations are not sufficient to show Plaintiffs have conflicts of interest with other class members. Nor do these allegations show that Plaintiffs will not prosecute the action vigorously on behalf of the class. The Court is satisfied that Plaintiffs will fairly and adequate represent the interests of the class.

**E.   Predominance and Superiority**

The key question in deciding this Motion is whether Plaintiffs can satisfy the prerequisites of predominance and superiority. Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These questions are interrelated because "[i]mplicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino, 97 F.3d at 1234.

1.   Predominance

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). Amchem, 521 U.S. at 623-24. However, "[w]hen common questions present a significant

15

United States District Court

For the Northern District of California

aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022. "'Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved.'" Tierno v. Rite Aid Corp., No. 05-2520, 2006 WL 2535056, at *5 (N.D. Cal. Aug. 31, 2006)(quoting Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006)).

Considering all the evidence, the Court finds that Dollar Tree's standardized policies and practices support Plaintiffs' contention that common issues predominate. The evidence that supports this contention includes Dollar Tree's certification process, its common training program for SMs, and the common tools SMs use to perform their jobs. See Mot. at 2-12.

The Court finds that the most convincing evidence in support of Plaintiffs' contention that common issues predominate is Dollar Tree's certification process. Dollar Tree requires its California SMs to fill out a weekly certification report. Hensley Dep. at 251:8-11; Ex. F ("Camp Dep.") at 134:25-135:2; Balderas Dep. at 163:1-6. This certification lists seventeen tasks and SMs are required to certify that they spend a majority of their time performing these tasks. See Payroll Certification. Dollar Tree held meetings in Chino and Torrance, California, to review and explain the certification process to SMs. Balderas Dep. at 157:11-158:25. There was also a meeting concerning the certification process in Sacramento. Camp Dep. at 132:7-9.

16

Because all of Dollar Tree's California SMs are required to perform a common set of tasks, Dollar Tree's reliance on Sepulveda v. Wal-Mart Stores, Inc., is misplaced. 237 F.R.D. 229 (C.D. Cal. 2006) rev'd in part, aff'd in part, 275 Fed. Appx. 672 (9th Cir. 2008). In that case, the court found that individual questions predominate over common issues because of the "voluminous evidence that there actually was a great deal of variance in AM [Assistant Manager] duties . . . AM duties varied based on the characteristics of the store, its workforce, and the surrounding community." Sepulveda, 237 F.R.D. at 249.[7] Here, by contrast, Dollar Tree requires its SMs to certify every week that they spend most of their time performing a finite number of duties. Also, the class size in this case is considerably smaller than in Sepulveda, where there were approximately 2750 putative class members. Id. at 242.

Dollar Tree presents evidence suggesting variations in how SMs go about performing those tasks. Opp'n at 2-5. For example, Dollar Tree submits a detailed comparison of twenty-five California stores showing they vary considerably in size, number of different products available for SMs to order, sales, and average monthly payroll hours. Jacobson-Allen Decl. Ex. A ("California Store Comparison Chart").[8] Dollar Tree filed a

---

[7] The Ninth Circuit reversed the district court's denial of class certification under Rule 23(b)(2), but affirmed the district court's Rule 23(b)(3) determination.

[8] Charlotta Jacobson-Allen, a paralegal and complex litigation specialist working in Dollar Tree's in-house legal department, filed a declaration in support of Dollar Tree's Opposition. Runnings Docket No. 137

17

document showing the differing roles and experiences of California SMs. Id. Ex. B ("California Store Managers Have Different Work Experiences"). Dollar Tree submitted twenty SM declarations to show that SMs have substantially different day-to-day experiences and duties. Docket No. 138 ("SM Declarations"). Dollar Tree contrasts the deposition testimony of the Plaintiffs with the testimony of other SMs to show they perform their jobs in different ways. Opp'n at 2-5. Dollar Tree also submits deposition testimony of SMs to show they have considerable autonomy and discretion in fulfilling their tasks and responsibilities. Opp'n at 5-11.

Despite this evidence of variation, Dollar Tree does not, and cannot, deny that all California SMs are required to spend a majority of their time performing a set of seventeen tasks. See Tierno v. Rite Aid Corp., No. 05-2520, 2006 WL 2535056, at *9 (N.D. Cal. Aug. 31, 2006)(noting that Rite Aid's self-audits and study, which were designed to show variations in how store managers performed specified tasks, also counted as concession "that a single set of tasks is applicable to all Store Managers"). For example, while one SM declares that he spent only thirty minutes per week preparing employee schedules, SM Declarations Ex. 4 ("Declaration of Damien John Bujwid"), and another SM declares he spent four hours per week preparing employee schedules, SM Declarations Ex. 20 ("Declaration of Deborah Wiebe"), this comparison also shows that both SMs spent time every week engaged in one of the common duties on the Payroll Certification, namely, "[s]chedul[ing] and assign[ing] work to store personnel." While

18

one SM declares that he spent five hours per week hiring new employees, SM Declarations Ex. 6 ("Declaration of Kimberly Castellanos"), and another SM spent only thirty minutes per week on hiring, SM Declarations Ex. 12 ("Declaration of Lisa Diane Fitts"), hiring is also one of the common duties on the Payroll Certification. This Court can resolve the question of whether SMs who spend most of their time performing these seventeen duties are exempt from California's overtime laws. This question is a common one for all California SMs. There is therefore a clear justification for handling this dispute on a representative rather than an individual basis.

The Court notes the irony of relying on Dollar Tree's certification process to find that the case is suitable for class-wide treatment, when Dollar Tree implemented that process after its earlier settlement, and precisely in order to ensure that its SMs were properly classified. See McDearmon Decl. ¶¶ 5-8. Those certifications certainly support Dollar Tree's contention that it is not liable for improperly classifying SMs. SMs will have to explain why they consistently certified "yes" on the Payroll Certifications if in fact they were spending most of their time stocking shelves and cashiering. However, that liability question is not presently before the Court, and a class certification motion is not an occasion to "advance [to] a decision on the merits." See Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983). Here, the question is whether common issues predominate, and the fact that all California SMs share the same job description, which requires them to spend most of their time

1  performing tasks on a list consisting of seventeen duties,

2  supports the conclusion that they do.

3      Plaintiffs' evidence of Dollar Tree's standardized practices

4  and procedures provides further evidence in support of the

5  contention that common issues predominate.  Dollar Tree's training

6  program for SMs is standardized throughout California.  Hensley

7  Dep. at 82:19-83:7.  Dollar Tree's SM training program for new

8  hires lasts eight weeks, and its SM training program for assistant

9  managers who are being promoted lasts four weeks.  <u>Id.</u> at

10  54:13-55:14.  The corporate office in Virginia develops the

11  written materials for the training program.  Balderas Dep.

12  84:11-85:8.  Dollar Tree does not formally retrain SMs when they

13  are transferred to other stores.  Hensley Dep. at 132:11-133:5.

14  SMs are given the same training, irrespective of which store they

15  might be assigned to down the road.  Cole Decl. Ex. D ("Dunaway

16  Dep.") at 128:12-18; Hensley Dep. at 190:16-19.

17      SMs use common tools in performing their duties at Dollar

18  Tree.  SMs have online access to "plan-o-guides" which recommend,

19  but do not require, that a certain kind of merchandise be

20  displayed in a particular location.  Hensley Dep. at 97:3-100:5;

21  Camp Dep. at 58:5-19.  SMs can also access information and

22  bulletins online via "Dollar Tree Central."  Hensley Dep. at

23  155:3-10; Balderas Dep. at 38:19-25, 66:8-24.   Using Dollar Tree

24  Central, SMs can access newsletters, merchandising suggestions,

25  forms, policies, and information relating to benefits.  Camp Dep.

26  at 57:3-7.  All store managers in California use a computer

27  application called "COMPASS" to create schedules for their staff.

28

Hensley Dep. at 121:14-22; Camp Dep. at 33:23-34:8; Ex. M.  Dollar

Tree maintains an auto replenishment system which automatically

generates orders for some products.  Balderas Dep. at 106:6-18.

Store managers are also encouraged to use a playbook, which

provides information on ordering, scheduling, and basic general

information about Dollar Tree.  Cole Decl. Ex. E ("Tellstrom

Dep.") at 59:15-60:2.

Dollar Tree relies on <u>Jimenez v. Domino's Pizza</u>, 238 F.R.D.

241 (C.D. Cal. 2006), but the Court finds that the case is

distinguishable.  In <u>Jimenez</u>, the Court was not confronted with

evidence of standardized policies and practices.  238 at 251-53.

Where, as here, there is evidence that the duties of the job are

defined by standardized procedures and policies, district courts

have routinely certified classes of employees challenging their

classification as exempt, despite arguments about individualized

differences in job performance.  <u>See</u>, <u>e.g.</u>, <u>Krzesniak v. Cendant

Corp.</u>, No. 05-05156, 2007 WL 1795703, at *3 (N.D. Cal. Jun. 20,

2007) (branch managers at car rental chain); <u>Alba v. Papa John's

USA, Inc.</u>, No. 05-7487, 2007 WL 953849, at *1 (C.D. Cal. Feb. 7,

2007)(store managers at pizza delivery chain); <u>Whiteway v. FedEx

Kinko's Office and Print Services, Inc.</u>, No. 05-2320, 2006 WL

2642528, at *1 (N.D. Cal. Sep. 14, 2006) (managers at shipping and

print services retail chain); <u>Tierno</u>, 2006 WL 2535056, at *5-10

(N.D. Cal. Aug. 31, 2006)(store managers at drug store chain).

The Court finds that Plaintiffs have satisfied the prerequisite of

predominance.

///

2.  <u>Superiority</u>

Matters pertinent to finding that a class action is superior
to other available methods for the fair and efficient adjudication
of the controversy include: (A) "the class members' interests in
individually controlling the prosecution or defense of separate
actions"; (B) "the extent and nature of any litigation concerning
the controversy already begun by or against class members"; (C)
"the desirability or undesirability of concentrating the
litigation of the claims in the particular forum"; and (D) "the
likely difficulties in managing a class action."  Fed. R. Civ. P.
23(b)(3).

Considering these matters as a whole, the Court finds they
favor class certification.  The first matter "is most relevant
where each class member has suffered sizeable damages or has an
emotional stake in the litigation." <u>Zinser</u>, 253 F.3d at 1190.
Likewise, "[w]here damages suffered by each putative class member
are not large, this factor weighs in favor of certifying a class
action." <u>Id.</u>; <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 652 (C.D.
Cal. 1996).  Here, Plaintiffs point out that it would be far more
costly and time consuming for individual class members to file
multiple individual suits.  Mot. at 22.  The Court agrees.
Furthermore, to the extent that individual SMs are entitled to any
damages, they are not likely to be large enough to justify
multiple independent suits.  See <u>Gentry v. Super. Ct.</u>, 42 Cal. 4th
443, 459 (2007); <u>Sav-On Drugs Stores, Inc. v. Super. Ct.</u>, 34 Cal.
4th 319, 340 (2004).

With regard to the second matter, the Ninth Circuit noted

22

that "[i]f the court finds that several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate . . . ." Zinser, 253 F.3d at 1191 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1780 at 568-70 (2d ed. 1986)).  Here, the Court notes that Diana Fierro, a California SM, currently has a case pending in Santa Clara County Superior Court, Fierro v. Dollar Tree, No. 1-08-CV-103712.  McClain Decl. Ex. M ("Fierro Compl."), Ex. N ("Order re: Motion for Summary Judgment").[9]  This lawsuit was filed on January 22, 2008, and it contains causes of action that go beyond allegations that Dollar Tree violated California's labor laws. See Fierro Compl.  Since the complaints filed by Cruz, Hansen, and Runnings were filed earlier, and since there are not several cases pending in other courts, the Court will not deny certification based on the fact that one other case is pending.

With regard to the appropriate forum for Plaintiffs' claims, Dollar Tree does point out that SMs may utilize an administrative forum, the Division of Labor Standards Enforcement, to resolve wage disputes.  Opp'n at 25.  However, merely pointing to the availability of another forum does not show its superiority.  In Bell v. Farmers Insurance Exchange, the California Court of Appeals found that individualized hearings had several disadvantages for the employee -- injunctive relief is not

---

[9] Maureen McClain, an attorney and shareholder in the firm Littler Mendelson, counsel for Defendant, filed a declaration in support of Defendant's Opposition.  Docket No. 143.

available, employees cannot recover attorney fees if they choose to retain counsel, and a losing employer has a right to a trial de novo in Superior Court where the ruling of the hearing officer is entitled to no deference. 115 Cal. App. 4th 715, 745-46 (Ct. App. 2004). Also, "courts have not hesitated to certify class actions for wage and hour claims simply because California law provides for administrative relief." Wang, 231 F.R.D. at 614.

With regard to future difficulties that may arise in managing this class action, district courts have the inherent discretion to review class certification decisions at any time. Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001). If unanticipated or unmanageable individual differences arise, the Court retains the option of decertification. Sav-On, 34 Cal. 4th at 335 (citing Lazar v. Hertz Corp. (1983) 143 Cal. App. 3d 128, 144 (1983)). The Court concludes that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### F.   Class Counsel

In appointing class counsel, the court must consider: (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court finds that Plaintiffs' attorneys are experienced class action litigators. See Cole Decl. Ex. Q ("Firm Resume and Overview"). The Court notes that a considerable amount of

discovery has taken place in this case including depositions and document review.  Id. ¶ 20.  The Court finds that Plaintiffs' attorneys are likely to fairly and adequately represent the interests of the class, as required by Federal Rule of Civil Procedure 23(g)(4).

**VI.  CONCLUSION**

For the reasons stated above, the Court GRANTS the Amended Motion for Class Certification, and ORDERS as follows:

1.  The class is defined as: All persons who were employed by Dollar Tree Stores, Inc. as California retail Store Managers at any time on or after December 12, 2004.

2.  Plaintiffs Miguel Cruz, John Hansen, and Robert Runnings are appointed as class representatives.

3.  The firm of Scott Cole & Associates is appointed as class counsel.

4.  The parties shall meet and confer in good faith as soon as practicable with respect to the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) governing notice to the class.  No later than twenty (20) days from the date of this Order, Plaintiffs shall file a Stipulation and Proposed Order explaining how the class will be notified.  Plaintiffs shall also submit a copy of the Proposed Notice.

5.  To the extent that the parties cannot reach an agreement concerning notice to the class, each party may submit a brief of no more than five (5) pages addressing the

problem and proposing a solution.  The briefs will be
due no later than twenty (20) days from the date of this
Order.

IT IS SO ORDERED.

Dated: May 26, 2009

_____
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California