1   Scott Edward Cole, Esq. (S.B. #160744)
    Molly A. Kuehn, Esq. (S.B. #230763)
2   **SCOTT COLE & ASSOCIATES, APC**
    1970 Broadway, Ninth Floor
3   Oakland, California 94612
    Telephone: (510) 891-9800
4   Facsimile:  (510) 891-7030
    web:  www.scalaw.com
5
6   Attorneys for Representative Plaintiffs
    and the Plaintiff Class
7
8                **UNITED STATES DISTRICT COURT**
9        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
10
11  MIGUEL A. CRUZ and JOHN D.          )  **Case No.: C-07-02050 SC (*Consolidated Action*)**
    HANSEN, individually, and on behalf )
12  of all others similarly situated,   )  **CLASS ACTION**
                                        )
13                          Plaintiffs, )  **DECLARATION OF MOLLY A. KUEHN,**
                                        )  **ESQ. IN SUPPORT OF REPRESENTATIVE**
14  vs.                                 )  **PLAINTIFFS' OPPOSITION TO**
                                        )  **DEFENDANT'S MOTION FOR EXTENSION**
15  DOLLAR TREE STORES, INC.            )  **OF OPT OUT DEADLINE AND**
                                        )  **ADDITIONAL NOTICE TO CLASS**
16                          Defendant.  )  **MEMBERS**
                                        )
17  _____ )
                                        )  **Case No.: C-07-4012 SC**
18  ROBERT RUNNINGS, individually,      )
    and on behalf of all others similarly )  **CLASS ACTION**
19  situated,                           )
                                        )
20                          Plaintiff,  )
    vs.                                 )
21                                      )
    DOLLAR TREE STORES, INC.            )
22                                      )
                            Defendant.  )
23  _____ )

24  I, MOLLY A. KUEHN, declare:

25          1.      I am an attorney-at-law, licensed to practice in all jurisdictions of this state, admitted

26  to appear in this District and am an associate attorney at the law offices of Scott Cole & Associates,

27  APC ("SCA"), attorneys-of-record for Representative Plaintiffs and the class members in the above-

28  captioned matters.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

2.      I make this declaration in support of Representative Plaintiffs' Opposition to Defendant's Motion for Extension of Opt Out Deadline and Additional Notice to Class Members.

3.      Following Class Certification, Representative Plaintiffs' attorneys, Scott Edward Cole, Esq. and I attempted to meet and confer with Dollar Tree Stores, Inc.'s ("Defendant") counsel regarding several disputed issues relating to the Order Granting Amended Motion for Class Certification. *See Cruz/Hansen Dckt No.* 107; *Runnings Dckt. No.* 171(the "Certification Order"). We were unable to reach an agreement as to (1) the Notice Administrator retained to carry out the Class Notice procedures; (2) the end date of the class period; (3) whether to include an opt-out form in the Class Notice package; and (4) the length of the opt-out period.

4.      Attached hereto as Exhibit "A" is a true and correct copy of the "weekly status report" provided to all counsel herein by Notice Administrator Rust Consulting, Inc. ("Rust") as an electronic mail message attachment on October 12, 2009.

5.      Attached hereto as Exhibit "B" is a true and correct copy of excerpts from the rough draft of the transcript of the deposition testimony of Eloisa Buitron taken on September 25, 2009.

6.      Attached hereto as Exhibit "C" is a true and correct copy of excerpts from the rough draft of the transcript of the deposition testimony of Tami Huntsman taken on October 5, 2009.

7.      Attached hereto as Exhibit "D" are two electronic mail message exchanges between Defendant's attorney, Krista Stevenson Johnson, Esq., and Camden Herzfeld of Rust dated September 30, 2009 and October 5-7, 2009.

8.      Attached hereto as Exhibit "E" is the best copy available of excerpts from the rough draft of the transcript of the deposition testimony of Christopher Schneider taken on October 6, 2009.

9.      Attached hereto as Exhibit "F" is a true and correct copy of excerpts from the rough draft of the transcript of the deposition testimony of Sharon Holland taken on October 8, 2009.

10.     Since the Certification Order was approved by the Court on May 26, 2009, Defendant has contacted Scott Cole & Associates to request that it be allowed to contact the four deponent class members only for the purpose of inquiring whether those deponents would accept service of their deposition notices without a subpoena. Class Counsel has not authorized Defendant's attorneys to

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

1    represent the interests of any class members at any time.

2           I declare, under penalty of perjury under the laws of the State of California and the United

3    States that the foregoing is true and correct, is based completely on personal knowledge and, if

4    called as a witness, I could and would competently testify thereto.

5

6           Executed on this 15th day of October 2009 at Oakland, California.

7

8                                                   /s/ Molly A. Kuehn
                                                    Molly A. Kuehn, Esq.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

# EXHIBIT A

**Molly A. Kuehn**

| | |
|---|---|
| **From:** | Damlo, Kim [knelson@rustconsulting.com] |
| **Sent:** | Monday, October 12, 2009 12:18 PM |
| **To:** | KJohnson@littler.com; Molly A. Kuehn |
| **Cc:** | MMcClain@littler.com; Attys 1; Herzfeld, Camden |
| **Subject:** | Runnings v. Dollar Tree Status Report |
| **Attachments:** | Dollar Tree_Opt-Out Status Report_10_09_09.pdf |

Attached please find the weekly status report for the Runnings v. Dollar Tree class certification.

Thank you.

Kim Damlo
Project Manager
Rust Consulting, Inc.
625 Marquette Ave, Suite 880
Minneapolis, MN 55402
Direct 612.359.2831
Fax  612.359.2050
kdamlo@rustconsulting.com

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.RustConsulting.com



**Runnings v. Dollar Tree**
**Matter: 230600**
**As of Friday, October 9, 2009**

Class Size:          733
Deadline:       October 20, 2009

**Project Notice Stats:**

| Week Ending: | Notices Mailed | Undeliverable Notices | Forwarded Notices | Traced Notices | Trace Remailed Notices | Undeliverable From a Traced Address | Opt-Outs Received |
|---|---|---|---|---|---|---|---|
| 8/21/2009 | 733 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9/4/2009 | 0 | 38 | 6 | 0 | 0 | 0 | 4 |
| 9/11/2009 | 0 | 8 | 1 | 40 | 30 | 0 | 3 |
| 9/18/2009 | 0 | 2 | 0 | 8 | 7 | 0 | 3 |
| 9/25/2009 | 0 | 14 | 0 | 2 | 1 | 11 | 0 |
| 10/2/2009 | 0 | 3 | 0 | 2 | 2 | 2 | 0 |
| 10/9/2009 | 0 | 1 | 0 | 0 | 1 | 2 | 1 |
| **Totals:** | **733** | **66** | **7** | **52** | **41** | **15** | **11** |

**Issues/Comments:**

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CRUZ

--oOo--

RANDY SMITH,

      Plaintiff,

                               No. CISCV 160473

vs.

DOLLAR TREE STORES, INC., a
Virginia Corporation, HAYIM
GANNON, an individual, and
DOES 1-50, inclusive,

      Defendants.
_____/


DEPOSITION OF

ELOISA BUITRON

Friday, September 25, 2009


Reported by:
THOMAS J. LANGE, CSR No. 4689
Registered Merit Reporter
Job No.:  23062LR

1  A.      No.

2  Q.      Have you ever been a witness in a lawsuit like

3  sort of like we are doing today?  Have you ever done

4  this before?

5  A.      No.

6  Q.      Have you ever spoken to Molly Kuehn prior to

7  today?

8  A.      No.

9  Q.      Have you ever spoken to someone from her law

10 office, Scott Cole & Associates, prior to today?

11 A.      No.

12 Q.      And how about Mr. Emanuel?

13 A.      No.

14 Q.      Just met him for the first time today?

15 A.      Yes.

16 Q.      Have you ever filed a claim against an

17 employer?

18 A.      No.

19 Q.      Have you ever filed for bankruptcy?

20 A.      No.

21 Q.      Did you receive a notification in the mail

22 about a class action lawsuit in connection with Dollar

23 Tree?

24 A.      No, not that I'm aware of.  The only thing I

25 received is right here, actually.  I didn't know exactly

13

1  what it was but...

2           It's just for the subpoena is the only thing I

3  have.

4  Q.      For this deposition?

5  A.      Yes.

6  Q.      So you haven't received any other mailing or

7  information regarding a class action lawsuit for store

8  managers?

9  A.      No.

10 Q.      Do you know what I'm referring to?

11 A.      I'm pretty sure, yeah.

12 Q.      What is it that you think I'm referring to?

13 A.      To a paper they normally send out to the house

14 and it pretty much tells you what the suit is about.

15 Q.      You haven't seen anything like that?

16 A.      No.

17 Q.      Okay.  Have you discussed this -- other than

18 with Ms. Kuehn and Mr. Emanuel a few moments ago, have

19 you discussed this deposition proceeding with anyone?

20 A.      No.

21 Q.      None of your co-workers?

22 A.      No.

23 Q.      Are you -- do you live alone?

24 A.      No.

25 Q.      Who did you live with?

                                                              14

1  to get on the -- or not requires you, but what do you --

2  strike that.

3          How do you usually make that decision that

4  you're going to ring on the register?

5  A.      Normally if I have nobody else that can

6  actually ring on a register and I've already got two

7  registers going, then, you know, I would put myself on

8  to help out the customer.

9  Q.      Okay.  Can you tell me with any amount of

10 certainly how often that has occurred in the last year?

11 A.      In the last year?  I'm not too sure.  I'm not

12 too sure.  I don't have a count of them.

13 Q.      You would say it was an infrequent occurrence?

14 A.      Infrequent, yeah.

15 Q.      When you have gotten on a register, how long do

16 you actually stay on the register?

17 A.      Just maybe to help a few customers.  You know,

18 not -- not too long.

19 Q.      Ten minutes?

20 A.      Yeah, ten minutes here or there.

21 Q.      Ten minutes max?

22 A.      Yeah, I would say ten to fifteen minutes,

23 maybe, max, I suppose.

24 Q.      Have you ever trained other associates on a

25 cash register?

179

1  A.        Normally my assistant does.

2  Q.        So you don't do that?

3         MS. KUEHN:  Objection, misstates her testimony.

4  Q.        BY MR. VANDALL:  You don't do that with much

5  frequency?

6  A.        No.

7  Q.        It would be rare for you to have to do that?

8  A.        Correct.

9         MR. VANDALL:  I'm going to hand the court

10 reporter a two-page document to be marked as Exhibit 3

11 to your deposition transcript.

12            (Exhibit 3 was marked for identification.)

13         MR. EMANUEL:  Why don't we take a ten-minute

14 break.

15            (Recess.)

16 Q.        BY MR. VANDALL:  Do you have Exhibit 3 in front

17 of you?

18 A.        Yes.

19 Q.        Do you recognize it?

20 A.        Yes.

21 Q.        What is it?

22 A.        It is a responsibilities of a store manager.

23 Q.        The job description?

24 A.        Correct.

25 Q.        Do you recall when you first saw this document?

180

1  questions for you.

2          Earlier you testified that your current

3  residence is at 411 California Street, Watsonville

4  California; is that correct?

5  A.         Correct.

6  Q.         How long have you been living at that address?

7  A.         Not for long.  Getting ready to move out.

8  Q.         How long is not long?

9  A.         Just maybe a few months.

10 Q.         So maybe three months?

11 A.         It could be.

12 Q.         Okay.  Does Dollar Tree have your updated

13 address as 411 California Street?

14 A.         No.

15 Q.         Okay.  What address does Dollar Tree currently

16 have?

17 A.         I don't recall.  But I think it's where I lived

18 with my sister but I don't recall which one.

19 Q.         Why haven't you changed your address with

20 Dollar Tree?

21 A.         Because I'm getting ready to move out of town,

22 actually.

23 Q.         Okay.  All right.  Earlier, you said that you

24 hadn't received the notice of the class action against

25 Dollar Tree; is that correct?

264

1  A.        Right, that I can recall.

2            MS. KUEHN:  I would like to mark this as

3  Exhibit 8.

4            (Exhibit 8 was marked for identification.)

5  Q.        BY MS. KUEHN:  All right.  Ms. Buitron, in

6  front of you, you have the judge's order in the class

7  action case discussing the notice to be sent out to the

8  class about the class action lawsuit.

9            If you look at page 9 of the fax, at the very

10 top of the page it says the first page is 2 of 12.  If

11 you look at 9 of 12.

12           MR. VANDALL:  Oh, okay.

13 Q.        BY MS. KUEHN:  Do you see where I'm indicating?

14           MR. VANDALL:  The line below says 9 of 11 or 8

15 of 11.  Confusing.

16           MS. KUEHN:  Oh.

17           THE WITNESS:  Which one?

18 Q.        BY MS. KUEHN:  So, 9.  We are trying to find

19 09-12.

20           There.

21 A.        Right here.

22           MR. EMANUEL:  Just for the record, we are

23 talking about the top -- total top line of this page?

24           MS. KUEHN:  That's correct.

25           MR. EMANUEL:  Where it says 9 of 12?

                                                           265

1            MR. VANDALL:  Yes, with the e-filing line

2    underneath it that says page 8 of 11.

3            MS. KUEHN:  Yes.

4    Q.        If you can just take a moment and read the

5    notice here that the court approved to be sent out to

6    the class, I'll have a few questions about it for you.

7    Please take your time.

8            MR. VANDALL:  Are you going to attach the

9    postage prepaid envelope at the end of this as well?

10           MS. KUEHN:  Well, this isn't the official

11   notice.  I trust you will make sure that she gets a

12   notice sent to her.

13           MR. VANDALL:  Well, the company is learning

14   about the address change for the first time, Ms. Kuehn,

15   today.  I certainly can't take any action while we are

16   here at the deposition but we will have that address

17   information updated.

18           MS. KUEHN:  Excellent.

19           THE WITNESS:  Okay.

20   Q.        BY MS. KUEHN:  You have read the entire notice?

21   A.        Yes.

22   Q.        Okay.  Did you understand the notice when you

23   read it?

24   A.        Yes, I'm pretty sure.

25   Q.        And you understand what a class action is?

                                                        266

1  spent supervising as well?

2  A.        Say 70 percent with supervising and with the

3  managerial stuff together, 70 percent.

4  Q.        Can you supervise your employees from inside

5  your office?

6  A.        I can sometimes.  Yes, I can supervise my

7  cashiers.

8  Q.        By watching them through the window?

9  A.        Yes.

10 Q.        How often when you're in the office are you

11 watching your employees through the windows?

12 A.        I don't keep track of it.

13 Q.        More than half the time you're in your office?

14 A.        I don't know, to be honest with you.  Don't

15 keep track of how many times I look out there.

16          MS. KUEHN:  I think I'm done.

17          MR. VANDALL:  I have a couple of follow-up

18 questions, then I promise we are nearing the end of the

19 day.

20          FURTHER EXAMINATION BY MR. VANDALL

21 Q.        We talked a little bit about -- well, let's

22 talk about the class notice first, which is Exhibit 8.

23          Ms. Kuehn asked you to just review two pages of

24 this document, but there are a number of other pages to

25 it.  And before you make any decisions about it, it's

                                                        286

1 recommended that you read the document.

2          Now, you have to leave the copy that Ms. Kuehn

3 gave to you here at the deposition, so she didn't give

4 you an extra copy that you could take with you.  So

5 you'll have to get this mailed to you again and then

6 you'll have a chance the look at it.  Okay?

7 A.       Okay.

8 Q.       No one is asking you to make any decisions

9 about this today in a hurry like Ms. Kuehn was

10 suggesting you do.  Okay?

11 A.       Okay.

12 Q.       You can take the time to review it at your

13 leisure in your home.  You can talk to a lawyer about it

14 if you want to.  You can do whatever you need to do to

15 make sure that you're making a fully informed decision

16 about this form.  Okay?

17 A.       Okay.

18 Q.       That's we want you to do.

19          MR. EMANUEL:  I'm going to make an objection.

20 That's a statement, not a question.  Unless you want to

21 get sworn in.

22 Q.       BY MR. VANDALL:  Now, we talked a lot about

23 supervising from your office.  Do you remember that

24 discussion you just had with Ms. Kuehn?

25 A.       Yes.

287

# EXHIBIT C

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CRUZ

--oOo--

RANDY SMITH,

       Plaintiff,

                                No. CISCV160473

vs.

DOLLAR TREE STORES, INC., a
Virginia Corporation, HAYIM
GANNON, an individual, and
DOES 1-50, inclusive,

       Defendants.
_____/


DEPOSITION OF

TAMI HUNTSMAN

Monday, October 5, 2009


Reported by:
THOMAS J. LANGE, CSR No. 4689
Registered Merit Reporter
Job No.:  ***

1  Q.        You met Molly Kuehn earlier today; is that

2  right?

3  A.        Yes.

4  Q.        You never spoken with her before?

5  A.        No.

6  Q.        Have you ever heard of the law firm Scott Cole

7  & Associates before today?

8  A.        No.

9  Q.        Never spoken with anyone from that office?

10 A.        No.

11 Q.        You have never met Mr. Alvarez before today,

12 correct?

13 A.        No.

14 Q.        Have you ever met Jerry Emanuel?

15 A.        No.

16 Q.        Do you know who he is?

17 A.        No, I don't.

18 Q.        Did you receive a letter or a notification

19 regarding a class action lawsuit involving Dollar Tree?

20 A.        Not about this, no.

21 Q.        About a different case, a class action lawsuit

22 relating to store managers and overtime?

23 A.        No, not to my knowledge.  I've received a

24 couple of papers through the mail over the years that

25 I've worked for Dollar Tree in the past nine years about

13

T. Huntsman (Rough Draft), Volume 1                    10/7/2009

1  people suing Dollar Tree and whatnot giving me the

2  information, but to my knowledge, no.

3  Q.        What about in the last few months, have you

4  received anything?

5  A.        No, I didn't receive anything.

6  Q.        Does Dollar Tree have your current address?

7  A.        Yes.

8  Q.        Do you check your mail regularly?

9  A.        I have problems with our mail.  We have a

10 locked mail box where we live which has been completely

11 vandalized over and over.  So we get our mail about

12 once, twice a month only right now through the owner of

13 the property because he lives out of town.  So he comes

14 to distribute our mail to us.  The post office holds it

15 for him.  That might be why I haven't received anything

16 lately but...

17 Q.        You're not sure one way or the other whether

18 you're receiving mail regularly?

19 A.        Right.  I'm not receiving mail regularly right

20 now.

21 Q.        You have no way to know whether your mailbox

22 has been vandalized recently?

23 A.        It has.  We don't have an actual one on our

24 property right now.  They are trying to put in a new one

25 that can be installed that we all have key access to

                                                        14

1 that can't be vandalized so we're able to obtain our own

2 mail.

3 Q.       Well, we may have to address that issue today

4 as well.

5           Are you aware that there is a class action

6 lawsuit involving store managers against Dollar Tree?

7 A.       I am now, since I have received this subpoena,

8 yes.

9 Q.       Okay.  Well, the subpoena is not dealing with

10 the class action lawsuit.  But there is an attorney here

11 representing that interest.  The subpoena deals with an

12 individual claim filed by Randy Smith.  There is a

13 difference between that.  I don't ask you to need to

14 know what that is, but I'm asking you whether you have

15 awareness that there's the class action lawsuit as

16 opposed to Mr. Smith's lawsuit.

17 A.       Yes.

18 Q.       What is your understanding on the class action

19 lawsuit?

20 A.       About wages and hours for store managers that

21 work for Dollar Tree.

22 Q.       Okay.  Where did you learn about that?

23 A.       Speaking with Molly.

24 Q.       Just this morning?

25 A.       Yes.

                                                        15

1  Q.        More than ten?

2  A.        In the course of a year, yes.

3  Q.        What sorts of reasons -- well, strike that.

4            Why have you been called at home?

5  A.        Once our freezer unit went down.  The assistant

6  wasn't exactly sure who to contact or what to do.

7  Sometimes they will call me if an employee has a family

8  emergency and needs to change a schedule, let me know

9  they are changing the schedule, things to that nature.

10 If an assistant manager has called in sick, to make me

11 aware of that situation.

12 Q.        How do they -- have you told your assistant

13 managers that it's okay for them to call you at home?

14 A.        Yes.

15 Q.        Why did you do that?

16 A.        So that they would have my number in case

17 anything ever happened, they weren't able to contact

18 anyone else.

19 Q.        Do you have any problems with the fact that

20 they have called you at home?

21 A.        No.

22 Q.        Do you feel like they are intruding on your

23 personal life in any way?

24 A.        No.

25 Q.        Do you think Dollar Tree should compensate you

                                                               86

1  for the fact that you handled a few telephone calls at

2  home?

3  A.        No.

4          MS. KUEHN:   Objection, mischaracterizes the

5  testimony.

6          MR. ALVAREZ:   I join that objection.

7  Q.        BY MR. VANDALL:   Do you work the same -- at the

8  same time as your assistant managers at the Salinas

9  store?

10 A.        Same schedule?

11 Q.        Right.

12 A.        No, not always.  Sometimes when I'm there,

13 there will be an assistant scheduled pretty close to the

14 same time, but not always.

15 Q.        Do you purposely schedule assistant managers to

16 be working at the same time or at different times than

17 you?

18 A.        Yes.

19 Q.        Why do you do that?

20 A.        So they can run the store while I'm doing what

21 I need to do for the store.

22 Q.        Is that a requirement, a Dollar Tree

23 requirement?

24 A.        No.

25 Q.        You choose to make that decision as a store

                                                              87

1   A.        Correct.

2   Q.        Which is what Dollar Tree wants you to do?

3   A.        Correct.

4             MR. VANDALL:   That's it.

5             Go ahead.

6             MS. KUEHN:   Okay.

7                   EXAMINATION BY MS. KUEHN

8   Q.        Okay.   I think earlier Mr. Vandall had asked

9   you whether you had received the notice of the class

10  action against Dollar Tree, which is based on some

11  similar claims that Mr. Smith has, the wage and hour

12  violations.   Do you remember that?

13  A.        Correct.

14  Q.        And you said that you hadn't received it but

15  that you're having trouble with your mail; is that

16  right?

17  A.        Right.

18  Q.        Okay.   So it's safe to assume that at this

19  point you have not opted out of the class for that

20  particular class action lawsuit, right?

21  A.        Correct.

22  Q.        Do you understand what the claims are in the

23  wage and hour class action suit against Dollar Tree?

24  A.        I believe it's because people want to be paid

25  more for overtime or hourly, things they should --

                                                      265

1 believe they should be paid more for hourly than salary.

2 Q.      Do you understand which law the plaintiffs are

3 claiming Dollar Tree violated in that case?

4 A.      Not exactly.

5 Q.      Okay.  If I told you that the plaintiffs are

6 alleging that Dollar Tree misclassified their store

7 managers as exempt employees, would you understand

8 that -- what I mean by that?

9 A.      Meaning we're exempt from getting overtime?

10 Q.      Right.

11 A.      Yes.

12 Q.      You do understand that you're currently

13 classified by Dollar Tree as an exempt employee and

14 you're not entitled to overtime under that

15 classification, correct?

16 A.      Correct.

17 Q.      Okay.  I'm not asking you to commit one way or

18 the other today whether or not you want to be a part of

19 the class action lawsuit.  But right now sitting here,

20 knowing what the lawsuit is about, do you plan to

21 exclude yourself from the lawsuit or continue to

22 participate?

23      MR. VANDALL:  Objection, the witness has

24 testified that she didn't receive the notice.  There is

25 a procedure for notifying each potential class member

266

1          MR. VANDALL:   Shall we go back on the record?

2          MR. ALVAREZ:   I have a question to ask while

3    she's doing that.

4              FURTHER EXAMINATION BY MR. ALVAREZ

5    Q.        Ms. Huntsman, it's true, isn't it, that you

6    never observed my client working as a store manager at

7    any time?

8          MR. VANDALL:   Objection.   Outside the scope of

9    the exam.   You already closed your exam.   You already

10   asked the question.

11         MR. ALVAREZ:   No, I didn't close my exam.

12         MR. VANDALL:   Yes, you said you had no more

13   questions.

14         MR. ALVAREZ:   I have the same right to reopen

15   questions just like you do.

16         MR. VANDALL:   No, you don't.

17         MR. ALVAREZ:   I certainly do.

18   Q.        I'm asking you that it's true that you did not

19   observe my client working for Dollar Tree as a store

20   manager at any time, correct?

21         MR. VANDALL:   Same objection, and asked and

22   answered.

23         THE WITNESS:   Correct.   And you did ask me that

24   earlier.

25         MR. ALVAREZ:   Okay.   I just wanted to make sure

                                                            268

1  that we got that on there.

2       I think you ought to go back to depo school, my

3  friend.

4       MR. VANDALL:  I think you should educate

5  yourself about the case before you ask questions.

6       MR. ALVAREZ:  You are way off on your

7  objections.

8       MR. VANDALL:  I think you should consult the

9  Evidence Code.

10       MS. KUEHN:  So, Matt, can you give me your

11  e-mail real quick so I don't have to look it up?

12       MR. VANDALL:  Mvandall@littler.com.

13       MS. KUEHN:  I'm sending you the same fax.

14       (Off of the record.)

15       (Exhibit 7 was marked for identification.)

16       MR. VANDALL:  Back on the record?

17       MS. KUEHN:  Yes, back on the record.

18       FURTHER EXAMINATION BY MS. KUEHN

19  Q.    Ms. Huntsman, if you could take a look at what

20  is marked as Exhibit 7 and read through the notice which

21  is attached at the back.  At the top of the page it says

22  page 8 of 11 and it goes from page 8 through page 11.

23  If you could read those four pages, please.

24       MR. ALVAREZ:  You got two sets of pagination.

25  That's what threw me off.

269

# EXHIBIT D

**Molly A. Kuehn**

| | |
|---|---|
| **From:** | Herzfeld, Camden [cherzfeld@rustconsulting.com] |
| **Sent:** | Wednesday, October 07, 2009 2:28 PM |
| **To:** | 'Johnson, Krista Stevenson' |
| **Cc:** | Molly A. Kuehn |
| **Subject:** | RE: Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009 |

Krista,

I checked our records and confirm that the initial notices went to the addresses you provided below for each individual.

Is there any further information I can provide to you at this time?

Thanks,

Camden

---

**From:** Johnson, Krista Stevenson [mailto:KJohnson@littler.com]
**Sent:** Wednesday, October 07, 2009 1:34 PM
**To:** Herzfeld, Camden
**Cc:** Molly A. Kuehn
**Subject:** FW: Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009

Camden,
Will you please confirm that Eloise Buitron and Tami Huntsman's initial notices (before we asked you to remail) went to the addresses provided by Dollar Tree on the class list?  The addresses are as follows:

Eloise Buitron
476 Sherwood Ct,
Watsonville, CA

Tami Huntsman
50 Fremont Street, #1
Salinas, CA

Thank you for your attention to this.

Krista Johnson
**Krista Stevenson Johnson,** Shareholder
415.677.3164 direct  415.269.6357 mobile  415.743.6674 fax  KJohnson@littler.com
650 California Street, 20th Floor | San Francisco, CA 94108-2693

**Littler Mendelson** | littler.com
Employment & Labor Law Solutions Worldwide

---

**From:** Johnson, Krista Stevenson
**Sent:** Tuesday, October 06, 2009 9:14 AM
**To:** Herzfeld, Camden; Molly A. Kuehn
**Cc:** Attys 1; McClain, Maureen E.
**Subject:** RE: Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009

Thank you Camden,

Can you advise me whether Chris Schneider's Notice was returned undeliverable.  I have just been informed that he/she did not receive a Notice.

10/13/2009

Krista

**From:** Herzfeld, Camden [mailto:cherzfeld@rustconsulting.com]
**Sent:** Tuesday, October 06, 2009 7:25 AM
**To:** Johnson, Krista Stevenson; Molly A. Kuehn
**Cc:** Attys 1; McClain, Maureen E.
**Subject:** RE: Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009

Good Morning Krista,

I confirm that we are conducting trace and remails for all Notices that are returned as undeliverable, per the court's Order. I have attached a revised status report that displays this information, please let me know if you have any questions about the report.

I have updated Ms. Huntsman's address in our database and we will remail her a new Notice and Opt-Out Form today.

Also, both Eloisa Buitron and Tami Huntsman's original Notices were not returned as undeliverable.

I am happy to answer any other questions, please feel free to contact me should you need more information.

Regards,

Camden

**From:** Johnson, Krista Stevenson [mailto:KJohnson@littler.com]
**Sent:** Monday, October 05, 2009 8:06 PM
**To:** Herzfeld, Camden; Molly A. Kuehn
**Cc:** Attys 1; McClain, Maureen E.
**Subject:** RE: Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009

Camden,

Will you please confirm that you are remailing Notices to the Class Members whose notices are returned as undeliverable as required by the Court's Order.  The Status Report does not contain this information.

Also, another deponent, Tami Huntsman, testified today that she did not receive her Class Notice.  Because of issues (about which she testified) relating to vandalism of her mailbox, we would like to have her notice remailed to the store that she manages:  Dollar Tree Stores, Inc.., Store No. 1389, 1441 North Main Street, Salinas, CA  93906-2403 (831) 442-5538.

Finally, can you tell me whether Eloisa Buitron and/or Tami Huntsman's initial notices were returned as undeliverable?

Please advise if you have any questions.

Sincerely, Krista

**Krista Stevenson Johnson,** Shareholder
415.677.3164 direct   415.269.6357 mobile   415.743.6674 fax   KJohnson@littler.com
650 California Street, 20th Floor | San Francisco, CA 94108-2693

**Littler Mendelson** | littler.com
Employment & Labor Law Solutions Worldwide

10/13/2009

**From:** Herzfeld, Camden [mailto:cherzfeld@rustconsulting.com]
**Sent:** Monday, October 05, 2009 2:31 PM
**To:** Johnson, Krista Stevenson; 'Molly A. Kuehn'
**Cc:** 'Attys 1'; McClain, Maureen E.
**Subject:** Runnings v. Dollar Tree - Status Report for the Week Ending October 2, 2009

Good Afternoon,

Attached please find the weekly status report for the Runnings v. Dollar Tree class certification.  Please feel free to contact me with any questions regarding the report.

We received no additional opt-out forms this past week, therefore the total number received remains at 10.

Thanks,

Camden

Camden Herzfeld
Project Manager
Rust Consulting Inc.
625 Marquette Avenue, Suite 880
Minneapolis, MN 55402
612.359.2894 direct
612.359.2050 fax
cherzfeld@rustconsulting.com

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.RustConsulting.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the

intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

**Molly A. Kuehn**

| | |
|---|---|
| **From:** | Herzfeld, Camden [cherzfeld@rustconsulting.com] |
| **Sent:** | Wednesday, September 30, 2009 1:13 PM |
| **To:** | 'Johnson, Krista Stevenson'; Molly A. Kuehn |
| **Cc:** | McClain, Maureen E.; Kawase, Anne E. |
| **Subject:** | RE: Runnings v. Dollar Tree Class notice |

Krista,

We have updated her address in our database and will remail her the Class Notice today.

Regards,

Camden

---

**From:** Johnson, Krista Stevenson [mailto:KJohnson@littler.com]
**Sent:** Wednesday, September 30, 2009 2:21 PM
**To:** Herzfeld, Camden; Damlo, Kim; mkuehn@scalaw.com
**Cc:** McClain, Maureen E.; Kawase, Anne E.
**Subject:** Runnings v. Dollar Tree Class notice

Camden,

At a deposition in another matter last week, potential class member Eloisa Buitron testified that she has not received a Class Notice, and that she has recently moved. Her current address is 411 California Street, Watsonville, CA 95076. We would like to have a Class Notice mailed to her at the new address. Please confirm that you will do so.

Sincerely, Krista Johnson

**Krista Stevenson Johnson,** Shareholder
415.677.3164 direct   415.269.6357 mobile   415.743.6674 fax   KJohnson@littler.com
650 California Street, 20th Floor | San Francisco, CA 94108-2693

**Littler Mendelson** | littler.com
Employment & Labor Law Solutions Worldwide
----

```
To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com
```

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.RustConsulting.com

# EXHIBIT E

100609-schneider-draft.TXT

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                  COUNTY OF Santa Cruz

 3                        --oOo--

 4    RANDY SMITH,

 5          Plaintiff,
                                    No. CISCV160473
 6    vs.

 7    DOLLAR TREE STORES, INC., a
      Virginia Corporation, HAYIM
 8    GANNON, an individual, and
      DOES 1-50, inclusive,
 9
            Defendants.
10    _____/

11

12              ROUGH DRAFT DEPOSITION OF

13              CHRISTOPHER SCHNEIDER

14              Tuesday, October 6, 2009

15

16

17

18

19

20    Reported by:
      THOMAS J. LANGE, CSR No. 4689
21    Registered Merit Reporter
      Job No.:   ***
22

23

24

25
```

1

                                                    1

```
 1                    APPEARANCES

 2
```

100609-schneider-draft.TXT
20    necessarily by me.  I could delegate that task.

21    Q.      BY MR. VANDALL:  Which little, minute tasks are

22    we referring to?

23    A.      I think we were talking about placing window

24    posters, changing items of the week, setting up the wow

25    table.

169

1     Q.      Are there any other tasks that you consider to

2     be little, minute tasks that you perform during the

3     week?

4     A.      The reason I'm classifying them as minute tasks

5     is because of their simplicity, not because of their

6     less importance.  But, yeah, there's several tasks that

7     you have to complete throughout the week that are just

8     mandated that you do.

9     Q.      That you perform as the store manager.

10    A.      Not that --

11    Q.      That's what I'm talking about.

12    A.      -- I perform.

13    Q.      We are here trying to understand what you're

14    performing, what you're actually doing as the store

15    manager.  And you have described for me a typical Sunday

16    in which you've engaged in little, minute tasks because

17    your hours don't count.  I'm trying to understand what

18    you mean by that.

19            And you have described placing a window poster,

20    setting a wow table as examples, changing line items of

21    the week.  That's three examples of the little, minute

22    tasks you have to perform because your hours don't

23    count, in your words.

100609-schneider-draft.TXT

24   Are there any other little, minute tasks that

25  you have to perform because you believe your hours don't

                   170

1  count?

2  A.  No, I don't think any tasks are minute.

3  Q.  So you would like us to strike that

4  phraseology?

5      MR. ALVAREZ:  Objection.

6      MS. KUEHN:  Objection.

7      MR. ALVAREZ:  That's already deposition

8  testimony, Counsel.

9      THE WITNESS:  No.

10     MR. ALVAREZ:  That's going to stay on the

11  record.

12     MR. VANDALL:  It may, but if he doesn't agree

13  with his own word choice --

14     MR. ALVAREZ:  That is ridiculous.  I've never

15  heard of a deponent being able to strike his own

16  testimony.

17     MR. VANDALL:  This is ridiculous.  Stop

18  interrupting my deposition.

19     MR. ALVAREZ:  You are ridiculous.

20     MR. VANDALL:  Stop interrupting the deposition.

21  You're totally unprofessional.  You don't even know

22  what --

23     MR. ALVAREZ:  Really?

24     MR. VANDALL:  Yes.  This is completely

25  unprofessional.  State your objection and move on.

                   171

100609-schneider-draft.TXT

```
 1            MR. ALVAREZ:  I have already stated my
 2   objection.
 3            MR. VANDALL:  You are trying to obstruct the
 4   deposition, it's very clear.
 5            MR. ALVAREZ:  If you have the right to speak, I
 6   do too.
 7            MR. VANDALL:  You need to learn to let me
 8   finish my sentence so the court reporter can get down
 9   everything I say and everything you say, so that there
10   is a clear record when we need to move on this, if we
11   do.
12            MR. ALVAREZ:  Totally agree.
13            MS. KUEHN:  I also object that it's entirely
14   improper to ask a witness to strike his own testimony.
15   Q.     BY MR. VANDALL:  Do you agree that you -- that
16   there are no other little, minute tasks that you perform
17   because your hours don't count --
18            MR. ALVAREZ:  Objection.
19   Q.     BY MR. VANDALL:  Other than --
20            MR. ALVAREZ:  I'm sorry.
21            MR. VANDALL:  Do you mind?
22            MR. ALVAREZ:  No, I don't.  It's just --
23            MR. VANDALL:  Because I do.
24            MR. ALVAREZ:  -- I can't tell when you stop.
25            MR. VANDALL:  And it needs to stop.
```

172

```
 1            MR. ALVAREZ:  I can't tell when you're going to
 2   stop.
```

100609-schneider-draft.TXT

6   A.      I would assume I had.

7   Q.      Did you explain in any way during any of those

8   weeks that you were having difficulty certifying that

9   you were not spending 35 percent of your time --

10          MR. ALVAREZ:  Objection, misstates --

11  Q.      BY MR. VANDALL:  -- on those tasks?

12  A.      No.

13          MR. ALVAREZ:  Objection, misstates the

14  witness's testimony.  I don't ever recall him saying he

15  was having difficulty.

16          MS. KUEHN:  I'll join.

17  Q.      BY MR. VANDALL:  Did you understand my

18  question?

19  A.      Yeah.  I answered no.

20  Q.      It didn't come up on the transcript.

21          MR. VANDALL:  Oh, it did.  My mistake.

22          I'm going to take a two-minute break.

23          (Recess.)

24          MR. VANDALL:  All right.  Back on the record.

25  Q.      What tasks are involved in receiving product?

183

1   A.      You have to check the seal on the truck, make

2   sure it matches the one on the manifest.  Physically

3   pick up the product off the belt, stack it on the

4   U-boats or on pallets, direct where it goes.  Then it

5   gets prestaged where it's supposed to be on the floor.

6   Then gets opened, put on the shelf.  The cardboard gets

7   broken down, put into the baler.  That's pretty much the

8   process in a nutshell.

9   Q.      Is there anything else involved in the task of

100609-schneider-draft.TXT

10    beams coming out of the walls and floods going on, or I

11    could spend no hours on it if I had my freight crew

12    picking up all their cardboard off the floor.  So all of

13    these are completely relative.

14    Q.      It's hard to quantify as a general rule what's

15    going on?

16    A.      Yes.

17    Q.      Wouldn't you agree that the certifications you

18    complete on a week-by-week basis are the only way for us

19    to know whether you were performing your job in

20    accordance with Dollar Tree's expectations?

21            MR. ALVAREZ:  Objection, leading.

22            MS. KUEHN:  Leading.  Join.

23            THE WITNESS:  Yes, the question on the

24    certification of duties says have you spent 50 percent

25    of your time engaged in the 17 activities.

211

1     Q.      BY MR. VANDALL:  More than 50 percent.

2     A.      More than 50 percent of your time engaged in

3     these activities.

4     Q.      Yes.

5     A.      Just looking at this, in a broad spectrum I

6     would say yes.  I said it before, I've spent at least 50

7     percent of my time on the activities.

8     Q.      Well, but you were trying to describe the

9     activities in a relative manner and you said it would be

10    difficult because you could spend 50 to 60 hours on

11    ensuring customer and associate safety one week and zero

12    hours another week?

100609-schneider-draft.TXT

24    you have to get your floor recovered, you have to get
25    the bathrooms, cleaned, you have to get the store

215

1    vacuumed, you have to pull the carts in from outside,
2    you have to pull all that product in from outside that I
3    was just talking about, how much of that are you
4    actually going to do versus your one other person?
5    You're going to delegate some of it to them but you're
6    going to end up doing some of these tasks.
7    Q.      So is this all encompassed within the 15
8    minutes that you described earlier with respect to
9    moving merchandise?
10    A.      To moving -- in respect to moving the
11    merchandise into the -- inside, yes.  But your question
12    was how much of it was how much of it was -- could I
13    have delegated as far as cleaning bathrooms and dusting
14    fixtures.  And if -- my answer is if you have two
15    people, you're going to end up picking up some of the
16    slack.
17    Q.      How many times have you cleaned a bathroom as a
18    store manager at Dollar Tree?
19    A.      In 18 months?  Shoot, I don't know.  Four or
20    five times a week.
21    Q.      You have done it four or five times a week
22    yourself?
23    A.      Yes.
24    Q.      Why don't you have a store associate do that
25    task?

216

100609-schneider-draft.TXT

```
1              MR. ALVAREZ:  Objection, argumentative.
2              MS. KUEHN:  Join.
3              THE WITNESS:  I just explained that.  I could
4    have a store associate do that but then I would have to
5    do the other tasks that I delegated to them.  It becomes
6    a time frame issue, as you have a certain amount of time
7    to get a number of tasks done.
8    Q.      BY MR. VANDALL:  How much are you paid by
9    Dollar Tree?
10   A.      We went over that.
11             MS. KUEHN:  Asked and answered, objection.
12             MR. ALVAREZ:  Join.
13             THE WITNESS:  57 plus bonus.
14   Q.      BY MR. VANDALL:  Do you think Dollar Tree wants
15   you to clean toilets when they are paying you $57,000 a
16   year?
17             MS. KUEHN:  Objection, argumentative.
18             MR. ALVAREZ:  Objection, argumentative.
19             THE WITNESS:  No.
20   Q.      BY MR. VANDALL:  You don't think that is an
21   expectation that Dollar Tree has for you at all, right?
22             MR. ALVAREZ:  Objection, argumentative
23             MS. KUEHN:  Asked and answered.
24             THE WITNESS:  I think Dollar Tree has the
25   expectation that I make sure that the bathrooms are
```

217

```
1    clean.
2    Q.      BY MR. VANDALL:  Without doing it yourself,
```

# EXHIBIT F

1          REALTIME ROUGH DRAFT

2          THIS REALTIME ROUGH DRAFT TRANSCRIPT IS BEING

3    PROVIDED TO COUNSEL PURSUANT TO CODE OF CIVIL PROCEDURE

4    SECTION 2025.540(b), WHICH PROVIDES AS FOLLOWS:

5          "WHEN PREPARED AS A ROUGH DRAFT TRANSCRIPT,

6    THE TRANSCRIPT OF THE DEPOSITION MAY NOT BE CERTIFIED

7    AND MAY NOT BE USED, CITED, OR TRANSCRIBED AS THE

8    CERTIFIED TRANSCRIPT OF THE DEPOSITION PROCEEDINGS.

9    THE ROUGH DRAFT TRANSCRIPT MAY NOT BE CITED OR USED IN

10   ANY WAY OR AT ANY TIME TO REBUT OR CONTRADICT THE

11   CERTIFIED TRANSCRIPT OF DEPOSITION PROCEEDINGS AS

12   PROVIDED BY THE DEPOSITION OFFICER."

13         IT IS AGREED BY ALL PARTIES RECEIVING A COPY

14   OF THE REALTIME ROUGH DRAFT TRANSCRIPT TO USE IT ONLY

15   FOR THE PURPOSE OF AUGMENTING YOUR NOTES AND NOT TO USE

16   OR CITE IT IN ANY COURT PROCEEDING OR TO DISTRIBUTE IT

17   IN ANY FORM TO ANY PERSON OR PARTY OUTSIDE OF THIS

18   LITIGATION WITHOUT THE APPROVAL OF THE CERTIFIED

19   SHORTHAND REPORTER.

20    REALTIME ROUGH DRAFT TRANSCRIPT OF THE DEPOSITION OF:

21              Sharon Holland, Vol. 1

22          October 8, 2009 (Pages 1 - 338)

23   REPORTED BY:  LEIGH ANN OROZCO, RPR, CSR #7607

24

25

```
 1                    REALTIME ROUGH DRAFT
 2    inherent comment by Mr. Ferguson constitutes
 3    a expression of --
 4              MR. RUMBERGER:  Objection, speculation.
 5              MR. ALVAREZ:  Also vague and misleading.
 6    Q.      BY MR. VANDALL:  Do you think that a jovial
 7    agreement -- I'm sorry, can you read my last question
 8    back.
 9              (Reporter interruption.)
10              MR. ALVAREZ:  Maybe this is a good time to do
11    it because I have noticed that we kind of have a
12    tendency to talk over each other.  If you will take a
13    few seconds before you answer it will give us a chance
14    to enter our objections and she won't have that
15    problem.
16              THE WITNESS:  That is hard with my
17    personality type but I'll try.
18              MR. VANDALL:  The question I had ask you is
19    about whether you had expressed a concern about going
20    from an hourly position to a salaried position and you
21    mentioned to me that Mr. Ferguson made a comment to you
22    about making less money and you characterized that as a
23    jovial comment, yes?
24    A.      I did characterize it that way, yes.
25    Q.      BY MR. VANDALL:  Did your exchange with
```

09:29:00  5
09:29:28  10
09:29:44  15
09:29:58  20
09:30:17  25

23

REALTIME ROUGH DRAFT

1

2    Q.        Were there any other differences in their

3    management style?

4    A.        Just personalities.

11:03:20  5    Q.        Were those personality differences

6    significant to you?

7              MR. RUMBERGER:  Objection, vague and

8    ambiguous, significant in what way?

9              MR. ALVAREZ:  I join in that.

11:03:35  10              THE WITNESS:  I'll enjoin that.

11    Q.        BY MR. VANDALL:  Okay.  Is there something

12    confusing about the word significant to you?

13    A.        Go back to the original question, please.

14    Q.        Sure.  Were there personality differences

11:03:47  15    significant to you?

16              MR. ALVAREZ:  Same objections.

17              THE WITNESS:  I guess I would say that based

18    upon my personality style and my previous employer of

19    30 plus years I prefer to have as much aTony and

11:04:22  20    freedom as I can I felt I have a little bit more in

21    Gary's -- Gary Ferguson's district than I do in James'

22    and some of it may have just been the time of year and

23    the fact that Gary knew he sort of threw me into that

24    situation in early December and that we had a

11:04:48  25    relationship of sorts in that you know he was

```
                        REALTIME ROUGH DRAFT
```

1
2   expectation that store managers managers in balls out
3   unloading trucks; is that correct?
4          MR. ALVAREZ:  Objection leading.
01:30:19  5          THE WITNESS:  I think depending on the
6   situation I mean.
7              ()James made that statement in that same
8   meeting that I am referring to several times here.
9   Because we were talking about how am I going to get the
01:30:37  10  hours for freight he is like okay you have two people
11  unloading the truck, and it was like you could have two
12  runners and you could be one of those two people
13  unloading the truck while you are still keeping track
14  of everybody who is every where else and making sure
01:30:55  15  that they are doing things right.
16  Q.       BY MR. VANDALL:  When did that conversation
17  take place?
18  A.       A couple of weeks ago that same one that I
19  referred to with the recovery scheduling.
01:31:07  20  Q.       Has anybody instructed you in a similar
21  fashion any other occasion?
22  A.       No.
23  Q.       Have you ever engaged in the task of
24  cashiering?
01:31:25  25  A.       Yes.

                                                              144
```

REALTIME ROUGH DRAFT

certification of duties and that I had not been doing

it and then a few weeks ago was instructed by James as

part of a conference call to make sure we were all

doing it and for those stores that had open entries

when they were not at the store because I went through

and took care of all the times that the weeks that I

had been there, and there was like a years' worth of

ones that had been not replied to from before my time

there.

          So I went through and did all those, input

previous store manager no longer here, and checked off

all of those.  So I know that it is expected that we

will do that function weekly.  That's all I have to

say.

Q.       Okay.  Have you ever -- has anyone from

Dollar Tree ever told you one way or the other how they

want you to complete that certification?

A.       Other than the reference that I just

described in terms of get these remedial ones done, the

only other reference was during my training time.

Q.       Okay.  Budget these certifications done, I'm

not understanding that to be an indication that you

should complete it one way or the other just that you

should complete it?

235

REALTIME ROUGH DRAFT

1
2   manager in frozen foods and such and more real estate
3   to cover.  When you are back at the bailer and you've
4   got a check on day or change call you got a lot more
04:32:27   5   square footage to get up there to do that task and then
6   he has got more volume so he has got an offsetting
7   advantage of having more people on staff to manage and
8   he can probably do more managing than I can do.  You
9   know that is just the nature of the beast of different
04:32:44   10   volume levels.
11   Q.      BY MR. VANDALL:  You would agree that based
12   on your observation of Mr. Maldonado performing his job
13   that your job experience as a store manager is
14   different than his based on the size of your store
04:32:54   15   relative to his?
16       MR. ALVAREZ:   Objection, leading, misstates
17   testimony.
18       THE WITNESS:   I would say there are some
19   differences.
04:32:59   20   Q.      BY MR. VANDALL:  Are they significant
21   differences?
22       MR. ALVAREZ:   Objection.
23       THE WITNESS:   Tell me how you define that.
24       MR. ALVAREZ:   Speculation.
04:33:05   25   Q.      BY MR. VANDALL:  I'm asking you if you would

269

REALTIME ROUGH DRAFT

A.          I don't think it was this complete.

Q.          If you turn back a little further the last
four pages, after the judge's signature here do you
recall a document that maybe looked like that
(indicating) I'm referring to what is marked as page
number one entitled notice of wage and hour lawsuit?

A.          Honestly I don't recall one way or the other.
What I can visualize is something that was 8 1/2 by 11.
I would have thought it was more like one or two pages
and there was a stamped post card in with it that I
still have attached.  My memory of it is if I wanted to
opt out I had to send the post card in by a deadline
and if I wanted to stay in I would do nothing.

Q.          Okay.  So just picking up on that last
comment that you made there.  The top of page 2 where
it reads if you wish to join the lawsuit you do not
need to take any action at this time.  That is your
understanding and was your understanding before you
came here, correct?

A.          Yes.

Q.          To the extent that there may be a settlement
providing is it your intention to opt out of that
settlement or you want tube included?

            MR. VANDALL:  Objection, the question is

317

```
         1              REALTIME ROUGH DRAFT
         2    completely improper in this context to require the
         3    witness to make a decision now on the record.
         4              MR. RUMBERGER:  I asked her intention not her
05:42:39 5    decision.
         6              MR. VANDALL:  Is improper.  You can answer if
         7    you like.
         8              THE WITNESS:  I don't have an -- I mean
         9    truly --
05:42:45 10             MR. RUMBERGER:  If you don't have an
        11    intention that's the answer.
        12             THE WITNESS:  It's -- it's not in the
        13    forefront of my mind and I didn't know that being here
        14    today was related to that.  And I don't know.  I mean
05:43:07 15   today will you know put some energy on the issue I
        16    guess and I'll go back an read whatever I have there
        17    and read it a little bit more.  I haven't really
        18    thought about it at all.
        19    Q.        BY MR. RUMBERGER:  Okay.  Do you understand
05:43:19 20   that by not opting out you are saying that you spend
        21    more than half of your time doing exempt tasks in other
        22    words not stocking, not inventorying, not cashiering,
        23    not recovery, not freight?
        24             MR. VANDALL:  Objection, it's an outrageous
05:43:42 25   mischaracterizes of the notice, the judge's orders in
```

```
                       REALTIME ROUGH DRAFT
  1
  2    this case.  It's coercive --
  3           MR. ALVAREZ:  Counsel, that is a speaking
  4    objection.
  5           MR. VANDALL:  Let me finish my objection.
  6           MR. ALVAREZ:  I don't think that --
  7           MR. VANDALL:  I will finish my objection,
  8    sir.  It's an outrageous characterization of the notice
  9    the judge's order in this case it's coercive and wholly
 10    improper and will be the subject of a summary motion
 11    that we are filing tomorrow.
 12           MR. ALVAREZ:  Counsel, you are totally out of
 13    line and out of order and improperly stating an
 14    objection.
 15           MR. VANDALL:  I need to preserve my
 16    objections sir.
 17    Q.      BY MR. RUMBERGER:  What is your understanding
 18    of not opting out or don't you have one at this time?
 19    A.      My fuzzy understanding of it is that if I
 20    chose to opt out I would not participate in any
 21    potential settlement and I could bring my own lawsuit.
 22    If I opt in I would I guess participate in any
 23    decision.  My -- pretty much my experience with class
 24    action lawsuits is of a consumer nature and you end up
 25    getting $7.13 and I haven't put any energy on this
```

Timestamps: 05:43:50 (line 5), 05:44:00 (line 10), 05:44:12 (line 15), 05:44:31 (line 20), 05:44:58 (line 25)