1   Scott Edward Cole, Esq. (S.B. #160744)
    Molly A. Kuehn, Esq. (S.B. #230763)
2   **SCOTT COLE & ASSOCIATES, APC**
    1970 Broadway, Ninth Floor
3   Oakland, California 94612
    Telephone: (510) 891-9800
4   Facsimile: (510) 891-7030
    web:    www.scalaw.com
5   email:  scole@scalaw.com
    email:  mkuehn@scalaw.com
6
    Attorneys for Representative Plaintiffs
7   and the Plaintiff Class

8

9                  **UNITED STATES DISTRICT COURT**

10   **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11

12   MIGUEL A. CRUZ and JOHN D.           )   **Case No.: C-07-02050 SC**
     HANSEN, individually, and on behalf  )
13   of all others similarly situated,    )   <u>**CLASS**</u> <u>**ACTION**</u>
                                          )
14                    Plaintiffs,         )   **PLAINTIFFS' OPPOSITION TO**
                                          )   **DEFENDANT'S MOTION TO DECERTIFY**
15   vs.                                  )   **THE CLASS; MEMORANDUM OF POINTS**
                                          )   **AND AUTHORITIES**
16   DOLLAR TREE STORES, INC.,            )
                                          )
17                    Defendants.         )
     _____  )
18                                        )
     ROBERT RUNNINGS, individually,       )   **Case No.: C-07-4012 SC** (*Consolidated Action*)
19   and on behalf of all others similarly )
     situated,                            )   <u>**CLASS**</u> <u>**ACTION**</u>
20                                        )
                      Plaintiffs,         )
21                                        )
     vs.                                  )
22                                        )
     DOLLAR TREE STORES, INC.,            )   **Date:  July 23, 2010**
23                                        )   **Time: 10:00 a.m.**
                      Defendants.         )   **Dept.: Crtrm. 1, 17th Floor**
24   _____  )   **Judge: Hon. Samuel Conti**

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

**TABLE OF CONTENTS**                                            Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF FACTS/PROCEDURAL HISTORY ....................................................... 3

   A.   UNIFORMITY IN THE SM POSITION IS EXPECTED ......................................... 3

   B.   DOLLAR TREE VERIFIED THAT ALL SMs DID THE SAME JOB ........................... 5

   C.   THERE IS NO NEED TO RE-EXAMINE CLASS CERTIFICATION........................... 6

II.    ARGUMENT ........................................................................................................ 8

   A.   STANDARD FOR CLASS CERTIFICATION .................................................... 8

   B.   THE PREDOMINANCE TEST EXAMINES THE SIGNIFICANCE, NOT JUST
      THE QUANTITY, OF COMMON AND INDIVIDUAL  ISSUES ............................... 12

     1.   All Class Claims Share the Same Questions of Law .................................... 14

     2.   Common Questions of Fact Predominate ................................................. 14

     3.   How Much Time Managers Spend on Any Work Task Is Presently Irrelevant .......... 18

     4.   The Motion Fails to Observe Overwhelming Evidence of Commonality ................... 19

   C.   A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATING THESE
      WAGE AND HOUR CLAIMS ...................................................................... 21

   D.   CLASS CERTIFICATION PERMITS USE OF A STREAMLINED TRIAL PLAN ..... 22

     1.   Plaintiffs Have Repeatedly Proposed A Consistent Trial Plan ....................... 23

     2.   The Trial Plan Outlined in the Class Certification Motion (and Elsewhere) is
       Workable........................................................................................ 24

III.   CONCLUSION................................................................................................... 27

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

**TABLE OF AUTHORITIES**

**Cases**

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
   191 Cal.App.3d 1341 (1987) ................................................................... 24

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................. 24

*Brinker v. Superior Court*,
   165 Cal.App.4th 25 (2008) ...................................................................... 25

*Brinkley v. Public Storage, Inc.*,
   84 Cal.Rptr.3d 873 (2008), *review granted,* 87 Cal.Rptr.3d 674 (Jan. 14, 2009) .................. 25

*Bufil v. Dollar Financial Group, In*c.,
   162 Cal.App.4th 1193 (2008) .............................................................. 13, 26

*Butler v. Home Depot, Inc.*,
   1997 WL 605754 (ND Cal. Aug. 29, 1997) ..................................................... 9

*Chavez v. IBP, Inc.*,
    2005 WL 6304840 (ED Wash. May 16, 2005) .................................................. 9

*Cruz v. Dollar Tree Stores, Inc.*,
   2009 WL 1458032 (ND Cal. May 26, 2009) ................................................... 12

*Day v. NLO*,
   851 F.Supp. 869 (S.D. Ohio 1994) ........................................................... 26

*Domingo v. New England Fish Co.*,
   727 F.2d 1429 (9th Cir. 1984) ............................................................... 24

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) (*on rehearing en banc*) .......................................... 8

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ................................................................ 8

*EEOC v. O & G Spring & Wire Forms Spec. Co.*,
   38 F.3d 872 (7th Cir. 1994) ................................................................. 24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................... 9

*Employment Dev. Dept. v. Superior Court*,
   30 Cal.3d 256 (1981) ......................................................................... 24

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)........................................................................... 9

*Gentry v. Superior Court*,
   42 Cal.4th 443 (2007) ..................................................................... 21, 22

*Ghazaryan v. Diva Limousine, Ltd.*,
   169 Cal.App.4th 1524 (2008) .............................................................. 13, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (1998)......................................................................... 12

*Harper v. 24 Hour Fitness, Inc.*,
   167 Cal.App.4th 966 (2008) ................................................................. 26

*Hernandez v. United Auto Credit Corp.*,
   2010 WL 1337702 (ND Cal. Apr. 2, 2010) ..................................................... 11

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Plaintiffs' Opposition to Defendant's Motion to Decertify Class Action; Memorandum of Points and Authorities

*Hilao v. Estate of Marcos,*
103 F.3d 767 (9th Cir. 1996) ...................................................................................... 24

*Howard v. Gap, Inc.,*
2009 WL 3571984 (ND Cal. 2009) .............................................................................. 11

*Hynix Semiconductor, Inc. v. Rambus, Inc.,*
2008 Lexis 11765 (ND Cal. Feb. 2, 2008) .................................................................. 17

*In re Joint E & S Dist. Asbestos Litig.,*
129 Bankr 710 (E & SDNY 1991) ............................................................................... 22

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d Cir. 2001) ........................................................................................ 27

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*
2010 WL 174329 (ND Cal. Jan. 13, 2010) ........................................................... 10, 11

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*
571 F.3d 953 (9th Cir. 2009) .............................................................. 6, 9, 10, 26

*Jaimez v. DAIOHS USA, Inc.,*
181 Cal.App.4th 1286 (2010) ..................................................................................... 13

*Jenkins v. Raymark Indus.,*
782 F.2d 468 (5th Cir. 1986) ........................................................................................ 8

*Johnson v. Big Lots Stores, Inc.,*
561 F.Supp.2d 567 (ED La. 2008) ............................................................................... 8

*Jordan v. County of Los Angeles,*
669 F.2d 1311 (9th Cir. 1982) ...................................................................................... 9

*Marlo v. United Parcel Service, Inc.,*
251 F.R.D. 476 (CD Cal. 2008) .................................................................................... 8

*Medrazo v. Honda of North Hollywood,*
166 Cal.App.4th 89 (2008) .......................................................................................... 12

*Mendoza v. Home Depot, U.S.A. Inc.,*
2010 WL 424679 (CD Cal. 2010) ..................................................................... 11, 12, 19

*Moore v. Hughes Helicopters, Inc.,*
708 F.2d 475 (9th Cir. 1983) ................................................................................... 9, 21

*Morgan v. Family Dollar,*
551 F.3d 1233 (11th Cir. 2008) ................................................................................... 11

*Mullen v Treasure Chest Casino, LLC,*
186 F.3d 620 (5th Cir. 1999) ...................................................................................... 12

*O'Connor v. Boeing North American, Inc.,*
97 F.R.D. 404 (CD Cal. 2000) ..................................................................................... 8

*Pablo v. Servicemaster Global Holdings, Inc.,*
2009 WL 2524478 (ND Cal. Aug. 17, 2009) .............................................................. 11

*Prince v. CLS Transportation, Inc.,*
118 Cal.App.4th 1320 (2004) ..................................................................................... 13

*Ramirez v. Yosemite Water Co., Inc.,*
20 Cal.4th 785 (1999) ................................................................................................ 25

*Reyes v. San Diego County Bd. of Supervisors,*
196 Cal.App.3d 1263 (1987) ........................................................................................ 8

*Rose v. City of Hayward,*
126 Cal.App.3d 926 (1981) ......................................................................................... 13

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Plaintiffs' Opposition to Defendant's Motion to Decertify Class Action; Memorandum of Points and Authorities

*Sav-On Drug Stores, Inc. v. Superior Court*,
  34 Cal.4th 319 (2004) ............................................................................ *passim*
*Staton v. Boeing Company*,
  327 F.3d 938 (9th Cir. 2003) ................................................................ 9
*Stewart v. General Motors Corp.*,
  542 F.2d 445 (7th Cir. 1976) ................................................................ 24
*Sullivan v. Kelly Services, Inc.*,
  2010 WL 1729174 (ND Cal. Apr. 27, 2010) ........................................ 11
*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ............................................................ 9, 10
*Wang v. Chinese Daily News, Inc.*,
  231 F.R.D. 602 (CD Cal. 2002) .......................................................... 7, 12
*Weigele v. FedEx Ground Package System, Inc.*,
  2010 WL 1337031 (SD Cal. Apr. 5, 2010) ............................................ 11
*Whiteway v. FedEx Kinko's Office and Print Services, Inc.*,
  2006 WL 2642528 (Sept. 14, 2006) .................................................... 13
*Whiteway v. FedEx Office and Print Svcs., Inc.*,
  Case No. 05-CV-02320 (ND Cal. Oct. 2, 2009) .................................. 12

### Federal Statutes

Fed. R. Civ. P. 23 .................................................................................... *passim*
Fed. R. Civ. P. 23 (b)(3) .............................................................. 11, 12, 24
Fed. R. Evid. 602 .................................................................................... 17

### State Statutes

Cal. Bus. & Prof. Code § 17200 *et. seq.* ................................................ 14, 25
Cal. Civ. Proc. Code § 1021.5 ................................................................ 14
Cal. Lab. Code § 201 .............................................................................. 14
Cal. Lab. Code § 202 .............................................................................. 14
Cal. Lab. Code § 203 .............................................................................. 14, 25
Cal. Lab. Code § 226 .............................................................................. 14
Cal. Lab. Code § 226.7 ........................................................................... 14, 25
Cal. Lab. Code § 512 .............................................................................. 14, 25
Cal. Lab. Code § 1174 ............................................................................ 14, 25
Cal. Lab. Code § 1194 ............................................................................ 14

### Newberg

1 *Newberg* § 1:1 .................................................................................... 22
1 *Newberg* § 1:6 .................................................................................... 22
2 *Newberg* § 4:25 ................................................................................ 7, 12
4 *Newberg* § 9:63 .................................................................................. 24
5 *Newberg* § 16:2 .................................................................................. 1
5 *Newberg* § 16:3 .................................................................................. 1

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Despite Defendant's promise to demonstrate a [relevant] "change" in the law and facts of this case,[1] – a promise that resulted in Defendant obtaining permission to conduct roughly 50 depositions of class members and serve over 14,000 discovery requests on these otherwise passive participants[2] – the landscape is no different today than it was back in May 2009 when the Court carefully considered and then granted certification of this worker class. Indeed, Defendant was given wide latitude this past year to develop a record showing how the adjudication of common questions would not result in the efficiencies this Court observed in its May 26, 2009 class certification Order[3] and/or how the law now prevents class-wide treatment of these claims. As Plaintiffs predicted, Defendant's decertification motion ("Motion") falls short of its promise, particularly since (1) this Court already conducted the same legal analysis referenced in the recent legal opinions cited in the Motion, and (2) any facts discovered since the certification Order cannot, by definition, constitute "changed" circumstances since the Court capped the class period as of the date of the Class Certification Order.[4]

Unsurprisingly, the Motion, while acknowledging that courts must weigh the significance of common issues against individual ones, does not spend much time talking about the common issues, or about why trying those common issues once, for over 700 people, would not result in enormous efficiencies. Instead, page after page of the Motion cites to myriad distinctions between Dollar Tree's Store Managers ("class members" or "SMs"), ranging from the stores they work in and the staff they

---

[1]     In explaining the rationale for Dollar Tree's intended discovery campaign, Dollar Tree's attorney stated as follows: "[MISS MC CLAIN: SO, THE LAW HAS CHANGED. AND WE WISH TO PRESENT THAT TO THE COURT IN A DECERTIFICATION MOTION. THE FACTUAL RECORD HAS ALSO CHANGED."]. Jud.Ntc. Ex. 1, p. 17:12-14. All evidentiary citations preceded by "Jud.Ntc. Ex." are exhibited to Plaintiffs' Request for Judicial Notice, filed herewith. All evidentiary citations preceded by "MAK Ex." are exhibits attached to the Declaration of Molly Kuehn, Esq., also filed herewith.

[2]     5 *Newberg on Class Actions* (4th Ed. 2002) § 16:2, 16:3

[3]     Notably, at class certification, the Court did not take the job of balancing all common and individual issues lightly; the Court conducted a "rigorous analysis" of the arguments contained in comprehensive briefing, examined a multitude of declarations from corporate representatives, Store Managers and even one store customer, as well as various deposition excerpts, and considered an otherwise extraordinarily well-developed factual record. Jud.Ntc. Ex. 2, at pp. 9:8-12 (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158-61 (1982)); *see, generally, Runnings Dckt. Nos.* 124-168.

[4]     *See Cruz Dckt No.* 113 (ending the class period on May 26, 2009).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Plaintiffs' Memo. of Points and Authorities in Opposition to Defendant's Mtn. to Decertify the Class

work with to their own preferences and management styles. Also unsurprisingly, Defendant's retained expert[5] agrees with Defendant that no two SMs are alike, which he takes to mean that no single SM can speak with precision about the entirety of any other SM's "experience." This, we are told, is why the class must be decertified.

Fatal to the Motion, however, are several keys points this Court should consider:

- The Court applied the proper Rule 23 analysis during last year's certification process and, in doing so, did not rely on any one fact to the "near exclusion" of others. Notably, Defendant chose not to seek an appeal of that ruling;

- No "change" in the facts does or even *could* have occurred since class certification since the class period *closed* as of the date of that Order;

- The alleged "managerial" (versus "exempt") nature of SM work and the amount of time SMs spend on the mix of common work duties are "unwelcome [liability] distraction[s]"[6] at this juncture;

- Dollar Tree and its expert concede that variations in the mix of duties SMs perform (for whatever reasons) do not change the common list of duties SMs perform (i.e., the Certification Form's list of 17 so-called "managerial" tasks, plus the Form's clearly non-managerial tasks). Nothing has changed there and, in fact, Dollar Tree *still* uses/endorses the certification process today;[7]

- Despite trivial variations therein, Dollar Tree admits that SMs are shaped uniformly through common training, common directives (e.g., policies, procedures, merchandising "plan-o-grams"), common job duties, common expectations, and a common evaluation process. These commonalities should be examined just once, not 700 times;

- Dollar Tree's and Plaintiffs' experts *agree* that the exempt/non-exempt nature of SM job duties can be adjudicated on a class-wide basis (*see* Plaintiffs' phased trial plan, *infra*);

---

[5]    Defendant's expert, Robert Crandall, mistakenly yet repeatedly opines that the work being done by SMs is "exempt" and that the Certification process reveals exempt-natured work. *See Dckt. No.* 190, pp. 16:10, 17:2, 22:20. Not only is this liability evaluation irrelevant to class certification, but Mr. Crandall himself admitted during deposition examination that he has no legal training (MAK Ex. 1, p. 69:1-3) and that he should have just said that the work was "managerial" – a far cry from it being "exempt." (MAK Ex. 1 , pp. 70:7-14, 70:20-71:6).

[6]    Jud.Ntc. Ex. 4-L, p. 12:2.

[7]    MAK Ex. 1 , pp. 170:1-16; 172: 14-20 (there have been no factual changes since class certification); pp. 91:2-13; 119:3-120:12 (tasks SMs perform are enumerated in the Certification Form); MAK Ex. 2.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

- A trial plan that allows SMs to identify the percentage of time spent on each of the Certification tasks *eliminates* the sampling concerns identified by Mr. Crandall, is closely akin to the 2002-2003 survey ***Mr. Crandall designed <u>and</u> stands by***, and even allows for the use of common tools to adjudicate individual issues.

Given the availability of deposition and declaration testimony of so many SMs, it is not surprising that the Motion can point to myriad rationales why SMs spend differing amounts of time on their [singular] mix of work duties, yet these liability and class member-focused arguments are not what class certification is about. Also not persuasive are Defendant's arguments that some SMs failed to understand what the Certification Form was asking and/or checked "no" for some weeks in response thereto. As the Form explains, a "no" answer simply means that the SM spent more time on the non-managerial vs. managerial tasks listed therein (again, a liability issue); a failure to understand the terms used in Dollar Tree's self-manufactured Certification Form says nothing about whether this minority of hand-picked SMs performed work that was fundamentally different than another SM. In the end, while Defendant has put forth some impressive charts and summaries of the testimony of many people, SM individualities have not become any more "predominate" simply by virtue of the number of SMs that have been deposed or the method of presenting their experiences to the Court. As such, Defendant has not met its heightened burden to decertify the class.

## II.    STATEMENT OF FACTS/PROCEDURAL HISTORY[8]

### A.    <u>UNIFORMITY IN THE SM POSITION IS EXPECTED</u>

Dollar Tree is a chain retailer. From its Chesapeake, Virginia home office, it operates thousands of discount stores nationwide offering merchandise at the fixed price of $1.00. Jud.Ntc.

---

[8]    This Court has already considered the common nature of SM orientation, training, operational and human resource hierarchy, policies and procedures and the potential impact those common issues have on what job duties SMs perform and how they yield common triable issues as to the exempt/non-exempt nature of that work. Moreover, upon that consideration, the Court agreed that these common issues outweighed any individual ones. As such, there seems little need to regurgitate the extremely detailed evidence of that commonality – most of which having already been exhibited in class counsel's declarations and referenced in the class certification motion itself (Jud.Ntc. Ex. 5, fns. 4-51). Plaintiffs, therefore, refer to that evidentiary record to the extent necessary to show the regimented nature of SMs' work. Notably, the citations in these footnotes are taken *entirely* from testimony of Dollar Tree representatives and/or documents generated by the company.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Ex. 3A. Maintaining a low-cost operational structure is essential to its success, a feat that could only be accomplished with an incredibly-efficient and centrally-controlled business model created at the corporate level. Maintaining a predictable shopping experience is also critical to its success, something that runs afoul of Dollar Tree's current claims that its SMs are given great discretion to make truly "executive" level decisions.

As for Dollar Tree's customers, they can be sure that substantially the same $1.00 items will be available for in-store purchase and will be displayed in almost exactly the same manner as they are in every other store in the chain; the mix and price of products is also consistent, as is the level of service customers can expect. To help realize that goal, Dollar Tree goes to great effort to homogenize its store layouts, operational standards and workforce, which includes the use of SMs who are expected to obediently implement company directives at the retail level. Dollar Tree maintains this degree of consistency by issuing uniform policies and practices, completely uniform training and training-related materials, computer applications and a host of other tools and directives, all of which are guaranteed to reach and impact Dollar Tree's retail staff *vis-a-vis* an identical retail staffing hierarchy (including managers and various part-time personnel, the number assigned to each store being dictated by the payroll budget handed down to SMs[9]) and a trickle-down dissemination of those directives from the Virginia corporate office to Zone Vice-Presidents, Regional Directors, District Managers, and the stores themselves.[10] Through this reporting structure, Dollar Tree can disseminate and then verify compliance with its directives at the retail store level from its home office thousands of miles away.

---

[9]     *See* Jud.Ntc. Ex. 5, fn. 6; Jud.Ntc. Ex. 3 (payroll hours are set according to a strict formula based upon a percentage of Sales Per Employee Hour; the hours are set at the regional level or above).

[10]     Not only do SMs have access to people in each of these positions, these upper management members are also closely watching the stores through an advanced information technology system which permits the monitoring and control of a multitude of daily retail operations including point-of-sale data, inventory replenishment, employee scheduling, breaks and time punches. *See* Jud.Ntc. Ex. 5, p. 11; Jud.Ntc. Ex. 3.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

### B.   DOLLAR TREE VERIFIED THAT ALL SMs DID THE SAME JOB

In order to take the "guess-work" out of SMs' work, Dollar Tree developed a "Certification process" whereby SMs are expected to complete, each week, a Certification Form.[11] In that process, SMs are to respond "yes" or "no" to whether they spend more than 50% of their time on a set of 17 enumerated "managerial" duties (versus the shorter list of seemingly non-managerial tasks located at the *bottom* of the Form). A "yes" answer means that they believe they spent most of their time that week on the tasks in the "managerial" section. Although the Motion references countless *reasons* why SMs may spend different amounts of time on the managerial duties (so much so that some SMs answered both "yes" *and* "no" at different times throughout their Dollar Tree careers as Store Managers), there is no legitimate argument that the SM job is any different than what is set forth in the Certification, an expected fact insofar as the Certification set out to *mirror* the SM job description[12] and, according to Mr. Crandall (Dollar Tree's expert), the Certification Form has been used to capture information – without any apparent need for modification – for 29,431 SM workweeks thus far. *See Dckt. No.* 190, p. 10:19-20. Given Defendant's heavy reliance on the Certification process, it is also not surprising that Mr. Crandall admits that the Certification process is a scientifically "valid" and "reliable" surveying tool.[13]

Indeed, if there ever was a statement demonstrating homogeneity among SMs (and utility in using class action procedures), the weekly Certification process is it: it is each SM's statement that s/he, in fact, performs the same job, every week, as every other SM. The fact that Dollar Tree designed the Form and obtained these certifications every week explains its comfortability in, and endorsement of, categorically (i.e., without the "individual analysis" its lawyers now claim is mandatory) exempting every class member from overtime pay based upon SMs' binary responses.

---

[11]     MAK Ex. 2; s*ee also* Jud.Ntc. Ex. 2, pp. 4-5.
[12]     *See* Jud.Ntc. Ex. 5, fn. 50; Jud.Ntc. Ex. 3.
[13]     *See Dckt. No.* 190, p. 11:11-16 (explaining that the Certification Form is scientifically "valid" (i.e., that it "produces accurate measures of what it intends to measure") and that it is scientifically "reliable" insofar as it provides consistently accurate responses). *See also Dckt. No.* 190, pp. 20:22-23, 21:7-8, 21:20-22; MAK Ex. 1, p. 81:12-18. Indeed, these admissions by Dollar Tree's own expert endorse a survey approach for determining liability, just as the Certification process has now validly and reliably surveyed class members 29,431 times to determine whether they were performing their expected job duties.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1   Certainly, while the Court must now look at all common issues of law and fact (i.e. none to the "near

2   exclusion" of others) it is realities like the Certification process that speak volumes about whether

3   the claims of SMs can be adjudicated together using common tools and common proof.[14, 15]

4

5         **C.**      **THERE IS NO NEED TO RE-EXAMINE CLASS CERTIFICATION**

6         Dollar Tree makes little or no mention of the fact that this Court already conducted the

7   requisite "rigorous analysis" of a monstrous volume of evidence and, based thereupon, granted class

8   certification. Notably, it did so pursuant to the same Rule 23 standard that has existed since 1938,

9   and did not, as Dollar Tree suggests, rely on any one item of proof to the "near exclusion" of others.

10  Indeed, the Court's Certification Order itself explains how this Court carefully examined SMs' job

11  duties (*Cruz Dckt. No.* 107, pp. 4-5), Dollar Tree's "standardized policies and procedures" (*Cruz*

12  *Dckt. No.* 107, p. 16:11),[16] common training and tools and, most telling of all, its own job duty

13  Certification process, (*Cruz Dckt. No.* 107, p. 16:12-21:7). This was not an example of a Court

14  _____

15  [14]    Dollar Tree contends that commonality of job duties (as detailed in the Certification Form) is
16  of little consequence because what tasks SMs do does not answer the ultimate question of whether
    anyone is exempt or non-exempt. What this ignores, of course, is that no exemption analysis can
17  begin until the job duties to be tested are determined, making discovery of the SM task list a very
    important first step. Moreover, to suggest a standard wherein all SMs must fall on the same side of
18  the exemption test **and** that we must know that this will occur right now, would doom class
    certification in every case since it would require liability determinations before or at the time of class
19  certification. Rule 23 requires that common questions exist not necessarily common answers, does
    not allow liability considerations, and does not envision that the answers to the initial common
20  questions will constitute a "soup to nuts" adjudication of the claims of every class member. Indeed,
    Dollar Tree offers no persuasive authority for either (1) its suggestion that everyone must fall on
21  only one side of the exemption test, or (2) that a trial plan that seeks to determine *eligibility* to
22  recover overtime pay somehow fails to promote judicial economy.
    [15]    Since the time of class certification, class counsel have received 101 sworn declarations from
23  class members, all speaking to the commonality of the SM position. *See* MAK Exs. 7-108. While
    Dollar Tree will surely complain that these declarations appear "cookie cutter" in that they recite the
24  same job duties being performed in near identical fashion, this is not a *flaw* in the declarations; the
25  declarations tell near identical stories *because Dollar Tree made the job nearly identical*.
    [16]    Oddly, Dollar Tree suggests that *In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
26  571 F.3d 953 (9th Cir. 2009) denounces consideration of a defendant's standardized policies and
    procedures at class certification. Motion, pp. 2:15-3:9. The *Wells Fargo* court said no such thing. In
27  fact, that Court explained that "uniform corporate policies will often bear heavily on questions of
    predominance and superiority … [and] carry great weight for certification purposes. *Id.* at 958. At
28  most, *Wells Fargo* explained that trial courts should do exactly what the present Court already did a
    year ago – look at all of the evidence.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  rubber-stamping a certification Order merely in reaction to a defendant's blanket exemption of all

2  class members from overtime laws. Given this Court's attention to all the evidence, Dollar Tree's

3  contention that recent legal authority disapproves of trial courts relying on any one common factual

4  question to the "near exclusion of other factors" (i.e., the Motion's criticism of *Wang v. Chinese*

5  *Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2002) (Motion, p. 7)) is a red herring: while still an

6  important *factor*, this Court did not <u>rely</u> on *Wang* or on any item of evidence to the near exclusion of

7  another. As such, Dollar Tree's suggestion that this Court used the wrong standard is insupportable.

8       Finally, Dollar Tree has failed to show that its admittedly standardized training program and

9  materials, common work tools and applications, operational systems (e.g., ordering processes, plan-

10  o-gram merchandising protocols), check-listing procedures and other common tools have changed

11  since the time of class certification, despite its promise to do so. Indeed, while much ado is made

12  today about *how much time* is spent on tasks such as training (e.g., some SMs finish the program in

13  the anticipated eight weeks, while others learn faster), ordering (e.g., some SMs order more often

14  than others because of store size, sales levels, etc.) and/or how SMs used the tools provided (e.g.,

15  some SMs got the plan-o-grams and read them right away, while others copied them and read them

16  later), *nothing* in this evidence demonstrates that SMs are not charged with performing the same

17  retail functions, learning the same set of retailing skills, receiving and using the same tools or

18  anything else that would adversely affect Plaintiffs' ability to rely on a set of core facts, policies,

19  procedures and the SM job description to adjudicate, for all class members, the exempt/non-exempt

20  nature of their work. Since each SM will make the same legal allegations and rely on the same core

21  information and call upon the same witnesses (e.g., experts, corporate representatives) and

22  documents, this case remains ideal for certification. *Sav-On Drug Stores, Inc. v. Superior Court*, 34

23  Cal.4th 319, 340 (2004).

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

## II.      ARGUMENT

### A.      STANDARD FOR CLASS CERTIFICATION

#### 1.      Defendant Cannot Overcome Its Decertification Hurdle

While Federal Civil Procedure Rule 23 "provides district courts with broad discretion to … revisit … certification throughout the legal proceedings before the court"[17] *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) and *see Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010) (*on rehearing en banc*), and while strictly speaking, the decertification "standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met" *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (CD Cal. 2008), only "'developments in the litigation, such as the discovery of new facts or changes in the parties or in the substantive or procedural law, will necessitate reconsideration of the earlier order and the granting or denial of certification or redefinition of the class.'" *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 410 (CD Cal. 2000). Even so, while changes in the law can sometimes warrant decertification, the gravamen of authority addressing decertification focuses on discovery of new facts following an initial order certifying a class. *See*, *e.g.*, *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 574 (ED La. 2008).

Presumably recognizing such legal authority, Defendant claims to have unearthed new facts (or law) sufficient to unravel the propriety of certification.[18] However, all of these so-called new facts are just the same facts (albeit more of them) that were available and cited in connection with Dollar Tree's opposition to class certification. Even if they were not, they merely speak to the issue of "eligibility for recovery" (i.e., any particular SMs' exempt-ness),[19] not to whether SMs' job duties

---

[17]    Although numerous and substantial common issues do exist here, "[e]ven if the common questions do not predominate over the individual questions ... Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." 2 *Newberg* § 4:25 at 174; *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986).

[18]    Numerosity, ascertainability, adequacy and typicality are apparently conceded.

[19]    "[T]he necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate. In fact, under these circumstances, it is firmly established that 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages.'" *Reyes v. San Diego County Bd. of Supervisors*, 196 Cal.App.3d 1263 (1987) (citations omitted).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

have changed. Those kinds of facts are not helpful here since it has long since been held that "[a] motion for class certification (or decertification) is not an occasion for examination of the merits of the case." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1332 (9th Cir. 1982) (*certiorari granted, judgment vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982) ("The judgment is vacated and the case is remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)."). "There is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action ..." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157 (1974). Instead, to evaluate this motion, the Court need only determine if it satisfies Rule 23, not weigh competing evidence. *See generally Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003). "[T]he "variable" activities noted by the Defendants stem from requirements imposed upon the employees, any remaining discrepancy in liability … does not warrant decertification" in the wage and hour context. *Chavez v. IBP, Inc.*, 2005 WL 6304840, *3 (ED Wash. May 16, 2005); *see also Butler v. Home Depot, Inc.*, 1997 WL 605754, *17 (ND Cal. Aug. 29, 1997); (denying decertification where the defendant "both argues the merits of plaintiffs' case and raises arguments previously considered and rejected by this Court"). While Dollar Tree's Motion does an impressive job of pointing out all the *reasons* why some SMs may be exempt while others may not be, such evidence and argument, even if it were "new" (and it is not) entirely miss the point; whether any SM is exempt or non-exempt is an eligibility for recovery (i.e., a liability) question for trial, whereas class certification is merely about determining whether there common questions exist, *not common answers*.

   2.   **The Law Has Not Changed in Any Manner that Impacts This Court's Certification Order**

   The Motion contends that a variety of recent opinions (most notably *Vinole v. Countrywide Home Loans, Inc.* and *Wells Fargo*) have impacted the predominance analysis in exemption cases.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL. (510) 891-9800

1    However, while these cases do speak to the Rule 23 standard, they hardly constitute "new" law, nor

2    do they suggest that this Court erred in granting class certification.

3            First, Defendant suggests a new standard arose out of *Vinole*, 571 F.3d 935 (9th Cir. 2009)

4    yet it is clear that *Vinole* merely adopted "an approach that takes into consideration all factors that

5    militate in favor of, or against, class certification." *Vinole*, 571 F.3d at 946. As *Vinole* further

6    explained, "[a] district court abuses its discretion in relying on an internal uniform exemption policy

7    to the near exclusion of other factors relevant to the predominance inquiry." *Id.* at 946. What

8    Defendant fails to point out, however, is that this has always been the Ninth Circuit's standard and is

9    the same standard that the present Court applied when it relied on all the evidence, made evidentiary

10   findings on all the evidence and performed a comprehensive Rule 23 analysis.[20]

11           Similarly, Dollar Tree's reference to *Wells Fargo* is not helpful, insofar as that court, just like

12   the *Vinole* court, merely "caution[ed] against placing too much weight on an internal policy of

13   classifying all members of a particular class of employees as exempt"[21] – again, nothing different

14   than what this Court already did in last year's certification Order.[22] Nonetheless, as its own citation

15   to *Wells Fargo* reveals, uniform corporate policies carry "great weight" in the predominance and

16   superiority analysis. *Wells Fargo* at 958; *see also* fn. 16, *supra*.  Moreover, on remand, Judge Patel

17   confronted a situation in *Wells Fargo* where representative testimony could be not permitted to

18   facilitate exemption determinations, a direct result of the fact that *Wells Fargo* involved the "outside

19   salesperson" exemption and the workers' job duties and the location where those duties were

20   performed was never established. *See In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 2010

21   WL 174329 (ND Cal. Jan. 13, 2010). In this case, any given SM can speak in a "representative"

22   _____

23   [20]    *See* fn. 3, *supra*; Jud.Ntc. Ex. 2, pp. 16:10-15; Jud.Ntc. Ex. 3.

24   [21]    Notably, neither *Vinole* nor *Wells Fargo* prohibit trial courts from considering internal
     policies, instead holding that they should not necessarily weigh them more heavily than other

25   evidence. Indeed, if *Vinole* or *Wells Fargo* did ban evaluation of a defendant's internal policies, then
     those opinions would be bad law, since the Rule 23 standard has *always* been to examine the totality

26   of all common and individual factual and legal issues.

27   [22]    The Motion also suggests that the common S.O.P.s Dollar Tree maintains should not be
     considered in evaluating class certification. However, as its own citation to *Wells Fargo* reveals,

28   uniform corporate policies carry "great weight" in the predominance and superiority analysis. *Wells
     Fargo*, 571 F.3d. at 958*; see also* fn. 16, p. 7, *supra*.

capacity about the uniform job duties which were all performed in Dollar Tree retail stores and Plaintiffs' trial plan addresses any variations in SMs' allocations of work time. *Id.* at *7-8. Finally, it is instructive to note that on remand, *Wells Fargo* relied heavily on *Morgan v. Family Dollar*, 551 F.3d 1233 (11th Cir. 2008) (an executive exemption case) to support the proposition that representative testimony is only allowed in certain contexts, the "executive" exemption being one of them:

> We reject Family Dollar's argument that the executive exemption defense is so individualized that the testifying Plaintiffs did not fairly represent the non-testifying Plaintiffs. For the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representatives of one another." *Morgan*, 551 F.3d at 1280.

Finally, Dollar Tree cites to the trial court decisions in *Sullivan*, *Hernandez*, *Howard*, *Weigele*, *Pablo*, *Whiteway* and *Mendoza* for support, yet mischaracterizes them as challenging the present Court's analysis. Each of these court's rulings, however, merely reiterated the long-standing rule that predominance cannot be based *solely* on an employer's blanket exemption policy and/or that factual patterns in which standardized practices and procedures do not exist substantially undermine commonality:

•   *Sullivan v. Kelly Services, Inc.*, 2010 WL 1729174, *7 (ND Cal. April 27, 2010) (holding that "predominance cannot be based solely on an employer's blanket exemption policy but that other uniform corporate policies could satisfy Rule 23(b)(3)");

•   *Hernandez v. United Auto Credit Corp.*, 2010 WL 1337702, *5 (ND Cal. Apr. 2, 2010) (holding that courts should not place "too much weight on an internal policy of classifying all members of a particular class of employees as exempt");

•   *Howard v. Gap, Inc.*, Slip Copy, 2009 WL 3571984, *5 (ND Cal. 2009) (holding that compelling employees to use wages to purchase Gap clothing as a condition of employment, without the benefit of a written policy, would likely require individualized inquiries into what each class member was instructed to do);

•   *Weigele v. FedEx Ground Package System, Inc.*, 2010 WL 1337031 (SD Cal. Apr. 5, 2010) (not published) (holding merely that individual issues outweighed common ones);

•   *Pablo v. Servicemaster Global Holdings, Inc*., 2009 WL 2524478 (ND Cal. Aug. 17, 2009), at *5-6 (holding that employees' discretion in setting their work schedules and in conducting home inspections required an individual determination as to whether the outside salesperson exemption applied);

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

• *Whiteway v. FedEx Office and Print Svcs., Inc*., Case No. 05-CV-02320 (ND Cal. Oct. 2, 2009) (holding decertification proper where court over-relied on *Wang* decision in original certification order).

Perhaps the most perplexing inclusion in Dollar Tree's Motion is to Judge Otero's opinion in *Mendoza v. Home Depot, U.S.A. Inc.*, 2010 WL 424679 (CD Cal. 2010) insofar as *Mendoza* specifically referenced this (*Cruz*) Court's certification Order and already expressly distinguished the evidence presented in Cruz from the evidence submitted in *Mendoza*. As that Court noted:

• "Accordingly, this Training Guide is different than those formal policies at issue in the cases relied upon by Plaintiffs. *See Cruz v. Dollar Tree Stores, Inc.*, 2009 WL 1458032, *8 (N.D.Cal. May 26, 2009) (defendant's uniform policy required employees to certify what they had spent most of their time on each week)." *Mendoza*, 2010 WL 424679 at *8;

• "[Class certification is denied] because there is no uniform policy or standard operating procedure upon which all ASMs and training ASMs rely, [and] it is likely that each ASM's and training ASM's experience is unique." *Id.*; and

• "…Plaintiffs have offered no compelling evidence to suggest that the SOPs provide uniformity for the ASMs. Instead, Plaintiffs have *only submitted a table of contents from an SOP*, which is insufficient to show a comprehensive uniform policy" *Id.*

Since each of the cases that Dollar Tree cites relied on factual predicates very different than the evidentiary record available here, this Court's prior certification analysis and ruling should stand.

## B.    THE PREDOMINANCE TEST EXAMINES THE SIGNIFICANCE, NOT JUST THE QUANTITY, OF COMMON AND INDIVIDUAL ISSUES

Rule 23(b)(3) "focuses on the relationship between the common and individual issues" (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (1998)) and requires that common issues predominate. However, "predominance" is determined not by counting the number of common issues, but by weighing their significance. *Mullen v Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999), *Medrazo v. Honda of North Hollywood*, 166 Cal.App.4th 89, 99-100 (2008). What's more, class certification does not require or even expect an absence of individual issues. As explained in Professor Newberg's treatise:

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

The test was not meant to require that the common issues will be dispositive of the controversy or even be determinative of the liability issues involved. ... In addition, the predominance requirement is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale. A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions. 2 *Newberg* § 4:25.

Despite Defendant's suggestion, in the overtime exemption context, the predominance of common issues has been frequently expressed. In such cases, where the "predominant issue in dispute is how the various tasks in which [class members] actually engaged should be classified as exempt or nonexempt," "common questions" are likely to predominate. *Sav-On*, 34 Cal.4th at 330. In determining whether sufficient common questions of law or fact exist, inquiry is directed toward a review of "what type of questions - common or individual - are likely to arise in the action" in considering "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." *Sav-On*, 34 Cal.4th at 327.

Given the *Sav-On* test, "it is no accident that 'wage and hour disputes...routinely proceed as class actions.'" *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal.App.4th 1524, 1538 (2008) (*citing Prince v. CLS Transportation, Inc.*, 118 Cal.App.4th 1320, 1328 (2004)); *see also Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1301 (2010); *Sav-On*, 34 Cal.4th at 340; *Whiteway v. FedEx Kinko's Office and Print Services, Inc.*, 2006 WL 2642528, *11 (ND Cal. Sept. 14, 2006) ("A class action is superior to multiple individual lawsuits. The needless expenditure of additional time, effort and money that would be attendant to numerous individual suits is greatly reduced, and the potential for differing outcomes is avoided as well."). In wage and hour class actions, "the issues slated for contest are primarily common issues involving common evidence." *Bufil v. Dollar Financial Group, In*c., 162 Cal.App.4th 1193, 1208 (2008); *accord Sav-On*, 34 Cal.4th at 332-33 (noting that the facts were well-suited for class treatment where the "class-wide policy does not vary from store to store, or employee to employee" and evidence existed of "centralized practices" which showed "common behavior towards similarly situated" employees); *see generally Rose v. City of Hayward*, 126 Cal.App.3d 926 (1981) (noting that class certification is particularly appropriate to determine issues related to employee compensation).

**1. All Class Claims Share the Same Questions of Law**

Class members here do not simply share some common legal issues; they share them all - a point proven at class certification and never since challenged. All SMs will participate, in one way or another,[23] to recover under identical legal theories, and will seek identical forms of damages and penalties.[24] Moreover, depending on the specific trial plan ultimately adopted by this Court, all SMs will look to the same trial tools to make a claim for liability and damages and will rely on the same expert testimony and/or other documents for support. The absence of any individual legal issues strongly supports denial of the Motion.

**2. Common Questions of Fact Predominate**

In evaluating the utility of class treatment, the Court may also examine whether questions of fact common to class members predominate over questions affecting only individual members. Here, the "one size fits all"[25] nature of the SM job literally begs for class treatment of these workers' claims. Once looking past the admittedly countless nuances that make any two people holding any one job position appear distinct (i.e., the focus of the Motion), the SM position is easy to dissect – a fact that permits adjudication of the common duties on a class-wide basis.

Dollar Tree goes to great lengths to bombard SMs with communications concerning the routinization of their job duties. Unlike other chain retailers that simply adopt uniform policies and procedures and then hope that they are followed, Dollar Tree also insists that SMs certify every week

---

[23]     Dollar Tree takes issue with the fact that a trial plan has yet to be approved. However, as this Court knows, Plaintiffs filed a Motion for Interim Case Management Order on February 9, 2010 seeking approval of a trial plan. *Cruz Dckt. No.* 138. The Court denied that Motion as "unnecessary" and set a Case Management Conference instead. *Cruz Dckt. No.* 141. Since then, all efforts have been toward decertification. As such, suggesting that no trial plan is available is plainly insupportable.

[24]     *See, e.g., Dckt. No.* 1; Complaint, ¶ 1 (alleging claims under Cal. Lab. Code §§ 201-203, 226, 226.7, 512, 1174 and 1194, as well as Cal. Civ. Proc. Code § 1021.5 and Cal. Bus. & Prof. Code §§ 17200 *et. seq.* 17208.

[25]     While Plaintiffs have never suggested that SMs' work time be identically allocated from day to day or even between SMs, there is significant commonality with regard to what tasks SMs perform, the resources they use, the environment within which they work, and the directives received from Dollar Tree's corporate office; the fact that a SM may primarily perform "ordering" functions one day, yet primarily "receiving" duties the next, is of no consequence. *All* SMs "order" and "receive" product in varying degrees, and the impact that this has on liability (i.e., how *often* they do these tasks) is a question that need be asked at trial.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

that the expected tasks are being performed. Since Dollar Tree cannot directly observe California SMs from its corporate vantage point in Virginia, it must rely on strict compliance with common policies and procedures and the homogeneity of SMs to ensure a trademark "look and feel" (and, thus, profitability)[26] of every store.[27] Dollar Tree ensures this, in large part, through its own Certification process – a process that Defendant has never questioned until it became more advantageous to do so (i.e., to challenge class certification).

Saying that the Certification process is calculated to ensure uniformity is not just advocacy; Dollar Tree admits it. To begin with, Dollar Tree intended for the Certification Form's language to track that of the job description. Moreover, if a SM fails to submit a Certification Form for a given week, Dollar Tree's Human Resources department makes contact to find out why.[28] If the report of any SM's work deviates from the norm (i.e., a "no" response), steps are taken to get his/her work back on track. To suggest now that SM's work is unpredictable or that the Certification is not indicative of the work that SMs perform defies credibility.

Despite suggestions to the contrary, the Motion is careful not to expressly claim that the Certification Form tasks differ from those SMs perform; rather, Dollar Tree merely points to examples of (1) SMs who appear confused about what the Certification language (which Dollar Tree drafted) meant or, at least, about the process, or (2) out of context statements by class counsel (which are, *as a matter of law*, not evidence) and/or their expert – all points that are fleshed out in detail below. Given that this Motion turns on whether the *duties* of SMs can be determined by looking to a finite task list (which can later be adjudicated as to its overall exempt-ness), it is a glaring fact that

---

[26]   With 2008 revenues of $4.2 billion, the nexus between centralized control and profitability can almost be presumed. *See* Jud.Ntc. Ex. 3A.

[27]   *See* Jud.Ntc. Ex. 5, fn. 63; Jud.Ntc. Ex. 3 (SMs' duties/responsibilities are nearly identical in all states); *see also* MAK Ex. 1, p. 44:10-22 (even out-of-state SMs work under the same job description and with the same tools); p. 91:2-13 (a list of SM duties was collected for a prior survey which Mr. Crandall designed and for Dollar Tree's certification process).

[28]   *See Dckt. No.* 124, fn. 65; Jud.Ntc. Ex. 3. It does not matter whether SMs check "yes" or "no" on the Certification Form. SMs are not paid overtime in either case because Dollar Tree already knows what SMs are doing and it does not expect their jobs to change. This truth shows that Dollar Tree endorses not only the use of surveys generally, but also the class-wide treatment of SMs without the need for an "individual inquiry" into the nature of their work. Defendant cannot now argue that the same information upon which it decided to exempt SMs (and which is still endorses today) are suddenly inadequate.

1   the Motion *never affirmatively states* that the Certification Form is non-representative of SMs' job

2   duties. Given that Defendant has used this certification process for years (with no indication of

3   changing it now), and that its *own expert admits* that the Certification Form is both scientifically

4   "valid" and "reliable," this Court should accept that the SMs perform the common tasks listed

5   therein.

6

7        a.        **SMs Perform the Same Job Whether or Not They**
                   **Understood Dollar Tree's Certification "Process"**

8

9        One suggestion that SMs do not share a common task list is the Motion's reference (p. 10:23-

10   26) to the testimony of six SMs who either did not carefully consider and/or sometimes

11   misunderstood the certification process. Thereupon, Dollar Tree leaps to the conclusion that these

12   individuals did not perform the same work as the remaining class members. This is an irrational

13   argument, particularly when considering that even a "no" response on the Certification Form simply

14   means that the SM spent less than 50% of his/her time on the so-called managerial portion (the top

15   portion) of the Certification Form.[29] When considering that the SMs <u>also</u> perform tasks that Dollar

16   Tree admits are **<u>non</u>**-managerial (i.e., those tasks listed in the bottom portion of the Certification

17   Form), either a "yes" or "no" response is consistent with the notion that the Certification Form

18   provides a complete list of SM duties (i.e., that SM duties are easily ascertainable for trial purposes),

19   a fact that weighs heavily in favor of class certification.

20        Furthermore, it would be unjust to fault any SM for being unclear about the certification

21   process. Dollar Tree offers no evidence that it gave SMs any training about what tasks are deemed

22   "managerial" and no evidence that any SM (1) participated in drafting the Certification Form or (2)

23   was consulted regarding the phraseology of the tasks listed therein. Finally, merely being *confused*

24   about either the terms contained in the Certification Form or the purpose of the process is not

25   evidence that SMs do fundamentally different tasks.[30]

26   _____

27   [29]   MAK Ex. 2.

28   [30]   Dollar Tree misstates the testimony of some SMs (Motion, p. 10: 25-26) who filled out the
        Certification Form incorrectly (e.g., SM Sanders explained, in his deposition at p. 85:16-18, that he
        was directed to record a Certification Form response for weeks when he was not the manager; SM

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

b.   **Citations to Class Counsel's Discovery Objections and Courtroom Advocacy are not Evidence**

In complete disregard of its own expert, its own corporate representatives, and the use of the Certification Form over 29,000 times now, Dollar Tree suggests that the SM job is *different* than what the Form portrays, and for alleged proof of that, cites to statements of class counsel and its expert. (Motion, pp. 8:12-9:11.)  Like the *ad nauseum* liability arguments, this evidence is as unpersuasive as it is inadmissible. Indeed, statements by counsel carry no evidentiary weight.  *See*, *e.g.*, *Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. CV-00-20905 RMW, No. C-05-00334 RMW, No. C-06-00244 RMW, 2008 Lexis 11765, *20 (ND Cal. Feb. 2, 2008). Also inadmissible are statements by persons lacking firsthand knowledge of the facts. Fed. R. Evid. 602.

First, class counsel do not purport to be subject matter experts regarding Dollar Tree's operations. Moreover, statements by class counsel taken out of context are not proof that the SM position is any different than the true evidence demonstrates. As explained in the declarations of class counsel: (1) the exempt-ness of SMs' duties is a *trial* question that class counsel should not address (much less attempt to answer) at this juncture, (2) class counsel's objection that Dollar Tree's Requests for Admissions were overbroad was not an opinion that the job *duties* were overbroad but, rather, a reaction to the use of certain *descriptors* (i.e., 48 different duties) that *Dollar Tree's counsel* unilaterally infused into the discovery process, and (3) the reference to a workweek

Hawley explains, in his deposition at p. 26:16-21, that his responses were accurate). Defendant's allegations that a few SMs were dishonest (Motion, pp. 10:27-11:5) – which flies in the face of Defendant's own expert, who assures us that *we can rely* on what SMs certify (*see* fn. 13, *supra*) – either overstates what those SMs actually said and/or fails to reveal what other, more-compelling facts demonstrate (e.g., SM Armstrong explained, in his deposition at p. 27:7-18, that he was coerced to sign "yes" for fear of losing his job; SM Ayala explains, in his deposition at p. 135:10-12, that he was specifically instructed only to answer "yes"; SM Dougherty explained, in her deposition at p. 69:3-4, that she was in fear of losing her job; SM Lugo explained, in her deposition at p. 25:23-25, that she was threatened). *See also* Martinez depo., p. 52:3-15; Penunuri depo., p. 38:24-25; Walton depo., p. 42:5-7; Whitton depo., p. 24:8-9 (all pages cited here are included in deposition excerpts filed by Dollar Tree).

Rationales for these actions aside, even if there remain questions as to the credibility of some SMs, this is merely an unfortunate reality of litigation (*United States v. Scheffer*, 523 U.S. 303, 313 (1998) which, although not condoned by anyone, does not render this case any more or less appropriate for class certification than another. Fortunately, Plaintiffs' trial plan would be implemented under the watch and protection of the Court to avoid any pressure related to retaliation and to otherwise achieve accurate responses.

by workweek analysis of SMs' time allocations was nothing more than class counsel's legal argument that Defendant, theoretically, could be held to a legal burden of establishing exemption on a weekly basis.[31] *See* MAK Decl., ¶¶ 3-6; Cole Decl., ¶¶ 3, 4.

Second, why the Motion (p. 9:6-7) cites to Dr. Lewin's deposition response that the duties were "overly broad" is a mystery. As Mr. Lewin has made clear, he has no firsthand knowledge of the elements of the SM position, and was not retained to perform and, thus, did not perform, any primary research into what SMs do. MAK Ex. 3, ¶¶ 8, 10; MAK Ex. 4, ¶¶ 3, 9, 10, 17.[32] Without direct knowledge of what SMs do, his opinion about whether the Certification Form is either broader or narrower than what SMs *actually* do is inadmissible. Ironically, the sole expert who claims to know details of what SMs do is Dollar Tree's expert, and he says (just like Defendant's corporate representatives have said)[33] that the Certification Form *does* represent what SMs do.[34] The citations to counsel's advocacy and inadmissible deposition statements of Plaintiffs' expert do not support the Motion.

### 3. How Much Time Managers Spend on Any Work Task Is Presently Irrelevant

In this Opposition, Plaintiffs do not seek a liability determination or to challenge Defendant's likely argument that variations exist in the mix of actual work activities undertaken by individual class members or the *amount of time* spent from one day to the next on these tasks. Indeed, it is of no consequence to say that some degree of uniqueness exists between any two people holding any singular job position.[35] Certification of a worker class does not demand complete uniformity at levels of minutia – only that the common issues *predominate* in their importance to the overall dispute.

---

[31]     *Bell v. Farmers Ins. Exchange*, 115 Cal. App.4th 715 (2004). Although class counsel never said that a trial plan must proceed on a *per workweek* basis, the ongoing use of a <u>weekly</u> Certification Form reveals that the exemption *could* be examined in this frequency.

[32]     *See also* MAK Ex. 5, p. 53:6-20.

[33]     *See* Jud.Ntc. Ex. 5, fns. 30 and 50; Jud.Ntc. Ex. 3.

[34]     MAK Ex. 1, pp. 91:2-13; 119:3-120:12 (SM tasks are enumerated in Certification Form).

[35]     "[N]either variation in the mix of actual work activities undertaken during the class period by individual [class members], nor differences in the total unpaid overtime compensation owed each class member, bar class certification as a matter of law." *Sav-On*, 34 Cal.4th at 335. Dollar Tree

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

**4.      The Motion Fails to Observe Overwhelming Evidence of Commonality**

As noted above, Defendant has failed to keep its promise to demonstrate a factual change since entry of last year's certification Order. Indeed, the factual predicate for this Court's Order still exists in its entirety today. Although Plaintiffs' class certification motion discusses many factual commonalities, a few of them are refuted in the Motion and, thus, warrant a reply:

| Plaintiffs' Class Certification Motion Evidence: | Defendant's "New" Evidence and Plaintiffs' Response |
|---|---|
| SMs are molded through a uniform training experience, including completion of a comprehensive training program, standardized as to substance, instruction protocol, length, oversight and materials utilized, even before a SM is assigned to a store. Dollar Tree policy favors promotion to the SM position of individuals who are already employees. Thus, before an employee becomes a SM, s/he will oftentimes have already been thoroughly steeped in the Dollar Tree culture and be intimately familiar with its retail operations, sometimes through assignment to numerous retail locations.[36] | The Motion claims that training is not standardized because (1) employees promoted from within underwent an abbreviated version of MIT training called "Career Path" training whereas outside hires underwent the full MIT program, and (2) because some SMs were trained while working at the stores. However, this says nothing about the training tools/materials they used, the skills they were taught, or the comprehensiveness of what they learned. Just because a SM promoted from within the company already has basic Dollar Tree retailing skills (and, thus, does not need to learn the particular modules of the MIT program) does not mean s/he takes on the SM position with any more or less training as an outside hire who undergoes all eight weeks. Trivial distinctions aside, the company's goal is to offer consistent SM training.[37] |
| Irrespective of the store, SMs are given and told to use common tools such as myriad written and electronically accessible documents, computer | The Motion cites minor variations in how often certain SMs used (or could remember using) the "Playbook," "Seasonal Planner" and/or |

cannot legitimately reject this notion insofar as Dollar Tree itself endorsed class wide treatment of its SMs as exempt based on common representational evidence.

[36]    *See* Jud.Ntc. Ex. 5, pp. 6-7 and fns. 19-24; Jud.Ntc. Ex. 3. The company's goal is to be as consistent as possible with the SM training program. Training uniformity is ensured through the use of Regional Training Managers and checklists, among other things.

[37]    The existence of uniform training makes the instant case easily distinguishable from *Mendoza* where there were no standard operating procedures for training.

| Plaintiffs' Class Certification Motion Evidence: | Defendant's "New" Evidence and Plaintiffs' Response |
|---|---|
| applications, bulletins and planners which direct SMs how to merchandise their stores. [38] | conducted "Store walks." The frequency of these activities and use of these tools speaks to liability (whether more than 50% of any SM's time is spent on exempt tasks), not certifiability of the class. *Everyone* is expected to use these tools and perform these tasks. [39] |
| Stores are primarily subject to an ASR [Automatic Stock Replenishment] system which performs ordering for SMs; beyond that, SMs are directed by the home office regarding what products to carry, how much to order, what price to charge, and where, when and how to display those products. [40] | Evidence of how every SM has a different "ordering experience" falls short of proving that ordering is not part of the SM job task list; it merely addresses the varying amounts of time SMs spend ordering. |

As the Court can see, as with the remainder of the Motion, Dollar Tree's references to how SMs approach these common tasks are trivial variances at best. To the extent they significantly impact SMs' work, that impact only goes to the amount of time needed to perform the tasks – a

---

[38]     *See* Jud.Ntc. Ex. 5, fn. 33; Jud.Ntc. Ex. 3 (There is no change in how SMs fulfilled their duties. Neither new products nor new tools affect SMs' job duties. SMs receive promotional materials, newsletters, Freight Flow standards, merchandise display standards, a voluminous Forms & Procedures Manual, "COMPASS" employee schedules, daily planners, monthly planners, weekly merchandise bulletins and plan-o-grams. Daily Planners require the SM to perform certain tasks throughout the day. Monthly Planners dictate floor schematics. SMs receive a "Playbook," where they are to keep the designs for end caps and planning instructions for moving freight to the floor). Evidence such as this supports the fact that all SMs perform the same work (in part, because they are <u>directed</u> to use the same tools, programs and promotional guides).

[39]     *See* Jud.Ntc. Ex. 5, fn. 13; Jud.Ntc. Ex. 3 (SMs are expected to follow policies and procedures). In fact, in the only instance where the Motion cites to a SM (SM Gore) not having walked the store, it, like many of its references, misrepresents witness testimony. SM Gore clearly states that he did not understand the term "store walk" but that he commonly surveyed the store. MAK Ex. 6, pp. 65:18-25, 73:15-22.

[40]     *See* Jud.Ntc. Ex. 5, pp. 8-9; Jud.Ntc. Ex. 3 (ASR tracks cashier sales and, when a product reaches a pre-defined quantity, it is automatically re-ordered. "Checklisting" requires each SM to ensure that every SKU in the Order Book is represented in the store in the correct quantity; exceptions must be approved by upper management. Weekly Merchandise Bulletins, sent from Virginia, instruct SMs on specific displays to build, when and how seasonal merchandise should be brought to the floor, stockroom organization, and other processes. SMs are expected to follow merchandise display standards. SMs are given "Routine & Guidelines" which dictate what they should do throughout the day with task checklists. The "Daily and Weekly Store Routine" also sets SM routine.).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

liability determination addressed in Plaintiffs' trial plan.[41] Nothing about how SMs allocate their time speaks to the utility of adjudicating common issues for all SMs in one trial.

## C.    A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATING THESE WAGE AND HOUR CLAIMS

California courts have pointed out the many public policy considerations that favor the use of the class action mechanism in wage and hour cases in particular. First, individual awards in these types of cases tend to be modest such that the availability of a class action claim plays "an important function in enforcing overtime laws by permitting employees who are subject to the same unlawful payment practices a relatively inexpensive way to resolve their disputes." *Gentry*, 42 Cal.4th 443, 459 (2007); *see also Ghazaryan*, 169 Cal.App.4th at 1538 ("We see no advantage to either party to resolution of this question on a piecemeal basis and agree with [plaintiff] such a prospect would jeopardize the ability of employees to find competent representation if restricted to their own individual claims.").[42] Second, the class action vehicle allows many employees, who may not otherwise file an individual suit due to fear of retaliation from their current and/or future employers, to safely have their day in court as a member of the class. *See Gentry*, 42 Cal.4th at 459. Finally, class actions serve to inform and protect employees who (but for a lawsuit such as this) may not otherwise become aware that their rights are even being violated. *Id.* at 461. As the Gentry court concluded, "absent effective enforcement" of wage and hour matters in class actions, "the

---

[41]    *See*, *e.g.*, Motion, p. 15:17-27 (explaining, for example, that SM Buitron spent 50% of her time supervising while SMs Faria and Patrick spent 80%, and that SM Moore supervised "properly"). Such variances do not undermine the preponderance of common issues.

[42]    It would be far more costly and time consuming for each class member, separately, to initiate litigation against Dollar Tree, seek and compel discovery of its policies and procedures, take multiple depositions, retain experts and try the numerous issues present in this case on their own, rather than participating (as a class member) in the adjudication of the claims within the already pending action. Moreover, separate lawsuits would require a multitude of courts and juries to analyze the same core evidence, thereby placing needless costs and burdens on the judicial system. Finally, the disparity in resources between class members, on the one hand, and an extraordinarily large private employer such as Dollar Tree on the other could easily intimidate and dissuade potential plaintiffs from proceeding individually.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying overtime." *Id.* at 462.[43]

Without a doubt, Defendant will continue to vigorously contest liability, meaning that, without certification, the multiplicity of trials will result in an enormous waste of judicial and party resources. In the end, as a practical matter, the only alternative to maintaining certification of this class is to force over 700 SMs to file individual actions or abandon their rights altogether.[44]

### D.   CLASS CERTIFICATION PERMITS USE OF A STREAMLINED TRIAL PLAN

At its core, class action procedures are expected to achieve significant judicial economies,[45] such as the resolution of over-arching common issues (e.g., whether Dollar Tree's expectations for the SM job, the exempt-ness of job tasks, damage/penalty entitlements) and avoidance of seriatim trials for each class member. Ultimately, determining the level of economy gained through certifying a class requires consideration of a *variety* of factors, ranging from the time and resources saved in conducting discovery for an entire class at one time, to the potential collateral estoppel effect of Defendant's admissions, to the availability of "innovative procedural tools"[46] for trial. Class certification here allows for tremendous and varied forms of efficiency, despite Defendant's singular focus on *trial* efficiency.

---

[43]   *Gentry*, 42 Cal.4th at 460 (noting that justification sometimes exists for class certification *even in close call cases* where certain statutory requirements are "otherwise questionable").
[44]   "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." 1 *Newberg* § 1:6 at 26.
[45]   1 *Newberg* § 1:1, pp. 2-3 (citing *In re Joint E & S Dist. Asbestos Litig.*, 129 Bankr 710, 802 (E & SDNY 1991) (recognizing the flexibility of the class action tool for meeting procedural barriers to justice, and noting that the major advantage of class actions are the promotion of judicial economy and efficiency).
[46]   *Sav-On*, 34 Cal.4th at 339.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1. **Plaintiffs Have Repeatedly Proposed A Consistent Trial Plan**

Despite Dollar Tree's labelling of Plaintiffs' trial plan efforts as "scattershot," nothing about that plan is unfocused or has ever changed. This court saw the trial plan outlined in Plaintiffs' class certification motion, and it is the same phased approach as set forth here. Indeed, despite what Dollar Tree thinks class counsel has said, it has always been Plaintiffs' proposal to adjudicate each of the SM duties as to their exempt-ness.[47]

On February 9, 2010, Plaintiffs filed a Motion for Case Management Order No. 1, which, inter alia, proposed this phased trial approach to adjudication of common, and then individual, issues. *Cruz Dckt. No.* 138. Therein, they requested that this Court enter its "first post-certification Case Management Order (CMO) so that discovery and other pre-trial activity [could] begin in a prompt but efficient manner." *Cruz Dckt. No.* 138, p. 3:6-7. In that motion, rather than presuppose what this Court had in mind for managing the trial proceedings before it, Plaintiffs sought a determination as to "(1) how many class members will ultimately testify and (2) who those exemplar trial plaintiffs [would] be." *Cruz Dckt. No.* 138, p. 3:16-17. The following day, this Court entered an Order denying "Plaintiffs' Motion as unnecessary" (*Cruz Dckt. No.* 141 at 2:4-5) on the basis that "the issues raised in the Motion can be addressed at the March 5, 2010 Case Management Conference." *Cruz Dckt. No.* 141. p. 2:2-4. Before those issues could be addressed at the Conference, Dollar Tree obtained permission to file the present Motion. As such, the lack of a trial plan has nothing to do with a lack of trying on class counsel's part.

---

[47] Since the list of 48 tasks was <u>Dollar Tree's counsel's</u> invention, <u>not</u> class counsel's, Defendant's citations to statements by class counsel are misleading. Motion, p. 24:23-24. Class counsel was contesting the fact that Plaintiffs did not accept a list that contained 48 tasks, and/or that every SM would describe their job identically. *See also* Motion, p. 24:25-26, but class counsel was referring to the fact that complete passages from deposition testimony of one SM may not be reflective of how every other SM would describe the tasks s/he performed. Class counsel never said that SMs do not all do the same tasks, only that the descriptors for those tasks might vary. *See* Cole Decl., ¶¶ 3, 4.

Plaintiffs' Memo. of Points and Authorities in Opposition to Defendant's Mtn. to Decertify the Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## 2.   The Trial Plan Outlined in the Class Certification Motion (and Elsewhere) is Workable

Without trial manageability, the adjudication of common issues can be overwhelmed by the adjudication of the individual ones, which is why a "preponderance" analysis is at the heart of Rule 23(b)(3). Here, efficiency will be promoted by a phased trial plan that adjudicates the answers to several preliminary common questions,[48] as well as the exempt/non-exempt nature of SMs' already-established work duties, followed by a survey of class members regarding the amount of time spent on their work duties (as set forth in the Certification Form's task list, or a list closely resembling it). Should liability be determined against Dollar Tree, any number of techniques for determining damages could then be employed.[49]

Such an approach has been endorsed by the *Sav-On* court and other appellate and trial courts, as well as by the experts retained for this litigation. To start with, the *Sav-On* Court explained that, for decades the California Supreme Court "has urged trial courts to be procedurally innovative" in

---

[48]    This trial plan incorporates an initial adjudication that even Dollar Tree must admit is a worthwhile endeavor on a class-wide basis, namely, whether the company had a "realistic expectation" that its SMs would be primarily performing exempt work. *See Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785 (1999) (discussing 50% "quantitative" test under California exemption law, and explaining that the employer's expectations concerning whether the class was primarily performing exempt work (so as to avoid liability) must be "realistic". Here, since its expectations would naturally have been communicated equally, through orientation, training, operational protocols and policies and procedures to its entire workforce, all questions about the reasonableness thereof are also necessarily common trial issues.

[49]    Individual issues requiring that each class member individually establish his/her eligibility to make a claim or his/her specific damages do not render class treatment inappropriate as long as these issues may be effectively managed. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Sav-On*, 34 Cal.4th at 334-35; *Employment Dev. Dept. v. Superior Court*, 30 Cal.3d 256, 266 (1981), *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal.App.3d 1341, 1354 (1987) (the appropriate method to determine class members' damages "need not be resolved until the class-wide issues have been determined"). Moreover, individual damages can be determined through well-established and easily managed procedures, including the use of questionnaires, surveys or representative sampling and testimony. *See, e.g., Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715, 750 (2004) (approving use of statistical sampling in a class action stating that it "does not dispense with proof of damages but rather offers a different method of proof"). Not only do individual issues regarding each class member's specific amount of damages not render class treatment inappropriate, the correct formula for determining wages due presents yet another class-wide issue for determination. Such formulaic distributions of back pay have been found particularly useful where, as here, Defendant's lack of adequate records would make any attempt at reconstructing the precise number of hours worked by affected employees a cumbersome process. *See, e.g., Stewart v. General Motors Corp.*, 542 F.2d 445, 452-53 (7th Cir. 1976); *EEOC v. O & G Spring & Wire Forms Spec. Co.*, 38 F.3d 872, 876 (7th Cir. 1994); *Hilao v. Estate of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1444-45 (9th Cir. 1984); 4 *Newberg* § 9:63 at 451.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

managing class actions, and "the trial court has an obligation to consider the use of ... innovative procedural tools proposed by a party to certify a manageable class." *Sav-On*, 34 Cal.4th at 339. Such "innovative procedural tools" can take on many appearances and, obviously, a trial plan specifically tailored toward the particular litigation has the best chance of achieving the desired effect. Here, since the SM duties are already known, Plaintiffs propose a trial to adjudicate common questions such as Dollar Tree's expectations about what SMs *should* be doing (i.e., the "*Ramirez*" defense) and which SM duties are legally exempt under California law. Plaintiffs request a trial by jury of those issues, although, as Mr. Crandall observed, some of these questions may be handled through motion practice. Also relevant for adjudication in this first phase are common questions such as (1) what steps Defendant has taken to re-examine its blanket exemption classification (and whether those steps absolve it of penalties under California Labor Code § 203), (2) whether Defendant violated California Labor Code §§ 226.7 and/or 512 by failing to adopt a policy concerning meal and rest breaks,[50] (3) whether, as a matter of law, punitive damages are recoverable, (4) whether Dollar Tree engaged in an unfair business practice under California Business & Professions Code § 17200, (5) whether Dollar Tree failed to record and maintain SM hours of work in violation of California Labor Code § 1174, and (6) what form of survey is proper to poll the class as to how their time is allocated. Clearly, there are enormous efficiencies in answering, just once, common questions such as these.

Once the exempt/nonexempt nature of SMs duties is determined, and the Court determines the proper trial tool to poll the class, Plaintiffs propose that all class members be surveyed to determine how they allocated their work time between the enumerated work tasks.[51] Obviously, the

---

[50] Dollar Tree boldly claims that meal/rest claims are not certifiable and cites *Brinker v. Superior Court*, 165 Cal.App.4th 25 (2008) and *Brinkley v. Public Storage, Inc.*, 84 Cal.Rptr.3d 873 (2008), *review granted*, 87 Cal.Rptr.3d 674 (Jan. 14, 2009). Notably, while these companion cases are currently on review by the California Supreme Court, no California court has categorically said meal and rest claims are non-certifiable, including the lower court opinions in *Brinker* and *Brinkley*. Also notable is that the relevant pending appellate issue in *Brinker/Brinkley* is the extent to which employers must govern the taking of employee meal periods (Dollar Tree also misstates the rest period standard which is merely to "authorize and permit" those breaks; *see* Cal. Lab. Code §226.7). No party in *Brinker/Brinkley* ever contested that an employer must, at least, tell its employees they are entitled to meal and rest breaks and, since Dollar Tree failed to do even that, whatever decision the Supreme Court may hand down regarding the meal period law's definition of "provide" could have no impact on the instant case.

[51] Individualized showings as to "eligibility for recovery" do not render class treatment inappropriate. *Sav-On*, 34 Cal.4th at 333; *see also Harper v. 24 Hour Fitness, Inc.*, 167 Cal.App.4th

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

results of Phase 1 would not be available to the class members being polled since that could bias them as to how they report their time allocations. During this phase, one predictable issue will require determination by the Court, namely, how to address those class members who fail to report altogether. Whether the Court permits other evidence (e.g., the Certification Forms completed thereby, expert testimony or the admission of other records) to supplant a direct response by an otherwise non-responsive class member need not be addressed now and, indeed, may never be addressed should Phase 1 not result favorably for Plaintiffs.

In any event, this phased approach allows for common issues to be resolved first; it also accounts for any possible variations between SM experiences due to varying store sizes, sales volume and the multitude of other factors cited in the Motion that make every human being unique, in that *the result of those variances*[52] *is how they allocate their time* (again, the principal purpose of conducting Phase 2).[53] In the end, if liability is found against Dollar Tree, the parties would progress to a damages phase.

As explained by the California Supreme Court on facts very much like those here, "the fact is the tasks discussed in both defendant's and plaintiffs' submissions comprise a reasonably definite and finite list. ... This [issue of whether the work tasks are "exempt" or "nonexempt" can be] easily

---

966 (2008); *Bufil*, 162 Cal.App.4th at 1208; *Bell*, 115 Cal.App.4th at 744 (most class actions contemplate the eventual individual proof of damages, which impliedly entails the potential that some class members will have none). As such, whether some SMs may, ultimately, be found exempt is not relevant now, so long as manageability tools exist or can be designed with which to adjudicate that issue later.

[52] Any variances in SMs' work merely impact the amount of time spent on certain tasks, not the task list itself; Phase 2's approach addresses these variances. *See Day v. NLO*, 851 F.Supp. 869, 876 (S.D. Ohio 1994) (explaining that such devices permit defendants to "present their opposition, and to raise certain affirmative defenses."); *Sav-On*, 34 Cal.4th at 339-40. Moreover, even if it were relevant to Plaintiffs' trial plan, Defendant's argument that class action trials, in general, cannot proceed through "representative" testimony is preposterous and its citation to cases such as *Wells Fargo* are distinguishable in that the job duties of the "outside salespersons" in that case were not known as they are in the instant case. *See* § II.A.2., *supra*.

[53] Phase 2 permits the reasons why SMs may spend more or less time on exempt work to merge with their answers to the survey; in the end, whatever store circumstances (e.g., differing staff levels) may have led them there, each SM will be permitted to identify, with particularity, whether s/he is performing primarily exempt or nonexempt work, without the need for the extrapolation discussed in Mr. Crandall's report. Again, however, this is just one possible trial approach. Class counsel has consistently represented that the proper trial management approach should be discussed with the Court and/or, to the extent possible, negotiated between counsel.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  be resolved on a class-wide basis by assigning each task to one side of the 'ledger' and makes the

2  manageability of the case not the daunting task Defendant has sought to portray." *Sav-On*, 34 Cal.4th

3  at 331. Particularly given Mr. Crandall's concerns about extrapolating time allocation testimony

4  from a sample of SMs to the entire class population, the feasibility of such a model reveals that a

5  class-wide trial need not be the daunting task suggested by Dollar Tree.[54]

6

7  **III.      CONCLUSION**

8       Given agreement as to what tasks SMs perform, agreement that those tasks can be

9  adjudicated as to their exempt-ness on a class-wide basis, the irrefutable existence of numerous other

10 common questions, and the availability of a trial plan that resolves, for everyone at once, significant

11 common questions, while allowing for individual questions to be handled through the use of yet

12 another (and admittedly "valid" and "reliable") common tool, decertifying this class makes no sense.

13 Since Dollar Tree has not made good on its promise to demonstrate changed circumstances, and

14 since the efficiencies of employing class action procedures in this case are overwhelming, Plaintiffs

15 respectfully request that this Court deny the Motion.

16

17 Dated: July 2, 2010                        **SCOTT COLE & ASSOCIATES, APC**

18

19                                    By:    /s/Scott Edward Cole

20                                            Scott Edward Cole, Esq.
                                            Attorneys for the Representative Plaintiffs
21                                            and the Plaintiff Class

22

23 _____

24 [54]      MAK Ex. 1 , pp. 69:4-13; 103:1-11; 154:9-155:1 (Mr. Crandall agrees that the Court *could*
   make class-wide finding as to the exempt-ness of the 17 tasks); *see also* MAK Ex. 3, ¶ 10; MAK Ex.
25 4, ¶ 17 (endorsing class-wide adjudication of Certification Form tasks and subsequent use of a
   survey to poll class members as to allocation of time between those tasks). Finally, the Court should
26 note that, to whatever extent the parties' experts *have not agreed* on how best to determine liability
   questions (further noting that, again, Plaintiffs' plan heretofore is merely one proposed approach),
27 such disputes need not be determined now. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124, 134-135 (2d Cir. 2001) (class certification is not the place to resolve disputes between
28 experts).

Plaintiffs' Memo. of Points and Authorities in Opposition to Defendant's Mtn. to Decertify the Class