United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIGUEL A. CRUZ, and JOHN D. HANSEN, individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

DOLLAR TREE STORES, INC.,

        Defendant.

Case Nos. 07-2050 SC
        07-4012 SC

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DECERTIFY

ROBERT RUNNINGS, individually, and on behalf of all others similarly situated,

        Plaintiffs,

    v.

DOLLAR TREE STORES, INC.,

        Defendant.

## I.   INTRODUCTION

This matter comes before the Court on the Motion to Decertify filed by Defendant Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree"). ECF No. 188.[1] Plaintiffs Robert Runnings, Miguel Cruz, and John Hansen (collectively "Plaintiffs") filed an Opposition, and Defendant submitted a Reply. ECF Nos. 212, 218. For the following reasons, the Court GRANTS IN PART and DENIES IN

---

[1] Cruz v. Dollar Tree, Case No. 07-2050 ("Cruz Action"), and Runnings v. Dollar Tree, Case No. 07-4012 ("Runnings Action"), have been consolidated. Unless otherwise noted, all docket numbers in this Order refer to docket entries in the Cruz Action.

1   PART the Motion to Decertify.

2

3   **II.   BACKGROUND**

4        The Court assumes the parties are familiar with the

5   procedural and factual background of this dispute, which the Court

6   set out in its Order Granting the Amended Motion for Class

7   Certification.  ECF No. 107 ("May 26, 2009 Order").  Plaintiffs

8   allege they were improperly classified as exempt employees.  See

9   Runnings Action, ECF No. 1 ("Runnings Compl."); Cruz Action ECF

10  No. 23 ("Cruz Am. Compl.").  As a result, Plaintiffs allege that

11  Dollar Tree failed to pay them overtime compensation and failed to

12  provide meal and rest breaks, in violation of California law.  Id.

13  The class is currently defined as "[a]ll persons who were employed

14  by Dollar Tree Stores, Inc. as Calfornia retail Store Managers at

15  any time on or after December 12, 2004, and on or before May 26,

16  2009." ECF No. 113 ("July 2, 2009") at 5.  Starting the class

17  period at December 12, 2004 ensures that any eventual awards to

18  Dollar Tree Store Managers ("SMs") will not overlap with the

19  awards that resulted from a previous settlement.  See May 26, 2009

20  Order.  The class consists of 718 SMs who worked in 273 retail

21  locations in California.  Mot. at 1.

22        As explained in the order certifying the class, Dollar Tree

23  requires its SMs to certify that they spend more than fifty

24  percent of their actual work time each week performing the

25  following duties and responsibilities:

26              1.   Supervision of associates.
              2.   Oversee daily store activities, including opening
27                   and closing store.

28                                    2

United States District Court
For the Northern District of California

3.   Ensure customer and associate safety.
4.   Protect all company assets, including store cash, merchandise and equipment.
5.   Maintain proper sales, banking, inventory, accounting, productivity, payroll and time records.
6.   Responsible for adequate staffing of store. Recruit, interview, hire, employ, and train sales associates.  Train associates to properly use all equipment and technology as well as provide thorough merchandise display training.
7.   Schedule and assign work to store personnel. Evaluate, motivate, counsel, develop, discipline and discharge sales associates appropriately. Maintain production reports to evaluate job performance of sales associates.
8.   Provide leadership and direction to store personnel.
9.   Communicate company policies to sales associates. Ensure associates comply with company policies and procedures, including safety guidelines and human resources policies.
10.  Analyze sales, expenses, and profit, review reports, analyze competition, determine customer preferences, manage sales forecasting, meet sales and profit objectives and goals, determine product mix, determine most effective placement of product and ensure standards for merchandise presentation, displays and signage to maximize sales.  Assist in developing promotions and advertisements as appropriate.
11.  Control inventory. Supervise ordering, receiving, stocking and pricing of goods.  Ensure goods are properly marked and mark downs are properly recorded.
12.  Responsible for overall cleanliness and appearance of store.
13.  Ensure highest level of customer service.  Handle customer complaints and problems.
14.  Ensure accident reports and damage reports are completed in timely and accurate manner.
15.  Complete management reports in a timely and accurate manner.
16.  Ensure compliance with applicable laws and regulations.
17.  Communicate professionally and effectively with customers, subordinates and supervisors.

Kuehn Decl. Ex. 2 ("Weekly Payroll Certification").[2]  The certification form states that SMs "may not spend more than a total of 35% of his/her actual work time each week receiving product, distributing and storing product, stocking product and cashiering."  Id.  A SM must certify "yes" if he or she spent the majority of his or her time performing the seventeen duties, and "no" if he or she did not.  See id.  If the SM responds no, "s/he must immediately provide an explanation to both Payroll and Human Resources.  No salary or wage will be withheld because of non-compliance."  Id.  The form provides a space for SMs to write in their explanation.  See id.

Dollar Tree's expert, Robert Crandall, MBA ("Crandall"), analyzed certification responses comprising 29,431 workweeks during the class period.  ECF No. 190 ("Crandall Decl.") ¶ 15.  His analysis show that approximately 62 percent of SMs always certified that they spent the majority of their workweeks on the seventeen managerial tasks, 2.5 percent reported that they never spent most of their time performing these tasks, and about 35 percent of SMs fall somewhere in between.[3]  Id. ¶¶ 22-23, Ex. 2

---

[2] Molly A. Kuehn, attorney for Plaintiffs, filed a Declaration in Support of Plaintiffs' Opposition to Defendant's Motion to Decertify the Class.  ECF No. 214.

[3] Plaintiffs filed evidentiary objections to statements in Crandall's declaration.  ECF No. 213.  The Court notes that Crandall tends to treat the terms "managerial" and "exempt" as synonymous, when in fact there has been no determination yet as to whether SMs who spend a majority of their time performing the seventeen tasks listed on the weekly payroll certifications are properly classified as exempt.  The Court does not rely on any statement by Crandall that SMs engaged in exempt tasks.  Plaintiffs also object that these statements go to liability issues rather than class certification issues, but as explained below, see Part

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   ("Summary of Managers' Weekly Responses").  As explained in Part

2   IV(E), _infra_, the Court regards the weekly payroll certifications

3   as a reliable source of information concerning how SMs were

4   spending their time at Dollar Tree.

5

6   **III.  LEGAL STANDARD**

7       The district court has discretion to certify a class under

8   Federal Rule of Civil Procedure 23.  <u>Dukes v. Wal-Mart Stores,</u>

9   <u>Inc.</u>, 603 F.3d 571, 579 (9th Cir. 2010).  Rule 23(a) requires that

10  the plaintiff demonstrate (1) numerosity, (2) commonality, (3)

11  typicality, and (4) fair and adequate representation of the class

12  interest.  Fed. R. Civ. P. 23(a).  In addition to meeting

13  these requirements, the plaintiff must also show that the lawsuit

14  qualifies for class action status under one of the three criteria

15  found in Rule 23(b).  <u>See</u> <u>Dukes</u>, 603 F.3d at 592-93.  Here, the

16  Court previously ruled that Plaintiff had satisfied Rule 23(a) and

17  certified the class under Rule 23(b)(3), which requires that

18  "questions of law or fact common to the members of the class

19  predominate over any questions affecting only individual members,

20  and that a class action is superior to other available methods for

21  the fair and efficient adjudication of the controversy."  Fed. R.

22  Civ. P. 23(b)(3).

23      A previously certified class is subject to modification at

24  the Court's discretion.  <u>See</u> <u>General Tel. Co. of the Southwest v.</u>

25  <u>Falcon</u>, 457 U.S. 147, 160 (1982) (noting that even after a class

26  _____

27  IV.D, the two sets of issues cannot be kept entirely separate.
    The Court OVERRULES Plaintiffs' objections.

28                                 5

**United States District Court**
For the Northern District of California

1   is certified, the district court "remains free to modify it in the

2   light of subsequent developments in the litigation."); Fed. R.

3   Civ. P. 23(c)(1)(C) ("An order that grants or denies class

4   certification may be altered or amended before final judgment.");

5   Officers for Justice v. Civil Service Comm'n of City and County of

6   San Francisco, 688 F.2d 615, 633 (9th Cir. 1982) ("before entry of

7   final judgment on the merits, a district court's order respecting

8   class status is not final or irrevocable, but rather, it is

9   inherently tentative"); see also Marlo v. United Parcel Service,

10  Inc., 251 F.R.D. 476, 488 (C.D. Cal. 2008) (decertifying class

11  after subsequent discovery, motion practice, and trial

12  preparations revealed that requirement of predominance of common

13  issues was not satisfied).  The standard applied by the courts in

14  reviewing a motion to decertify is the same as the standard used

15  in evaluating a motion to certify; namely, whether the

16  requirements of Rule 23 are met.  O'Connor v. Boeing N. Am., Inc.,

17  197 F.R.D. 404, 410 (C.D. Cal. 2000).

18

19  **IV.   DISCUSSION**

20       The central issue in this case is whether Dollar Tree

21  misclassified its SMs as exempt.  Dollar Tree contends the class

22  should be decertified based on changes in the law since class

23  certification and based on its continued development of facts

24  showing that individual issues predominate over common issues.

25  The Court begins by reviewing some of the applicable statutes,

26  regulations, and cases.

27  ///

28
                                    6

United States District Court
For the Northern District of California

### A.   **Overtime Pay and the Executive Exemption**

Section 510(a) of the California Labor Code provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Cal. Lab. Code § 510(a).  Title 8, Section 11040 of the California Code of Regulations prohibits employees from working more than eight hours per workday or forty hours per workweek unless they are paid overtime for all extra hours worked.  Cal. Code Regs. tit. 8, § 11040(3)(A)(1).

Under California law, this requirement to pay overtime compensation does not apply to "exempt" employees.  <u>See</u> Cal. Lab. Code § 515; Cal. Code Regs. tit. 8 § 11040.  The executive exemption is set forth in Industrial Welfare Commission Wage ("ICW") Order 7-2001, Cal. Code Regs., tit. 8, § 11070.  To qualify as exempt, the employee must: (1) manage the enterprise, a customarily recognized department, or subdivision thereof; (2) direct the work of two or more other employees; (3) have the authority to hire or fire, or have their recommendations to hire, fire, or promote given weight; (4) exercise discretion and independent judgment; (5) be primarily engaged in exempt activity more than fifty percent of the time; and (6) earn a monthly salary equal to twice the state minimum wage for full-time employment.  Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(a)-(f).

"[T]he assertion of an exemption from the overtime laws is

7

considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 794-95 (1999). The employer must establish that it realistically expected managers to spend at least half their time on exempt tasks. Id. at 802.   In Ramirez, the court rejected the notion that an employee's exempt status could be determined solely by looking to the employer's job description or by examining the employee's actual activities.   Id. at 802.   The Court explained:

> On the one hand, if hours worked on [an exempt activity] were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality.  On the other hand, an employee who is supposed to be engaged in [an exempt activity] during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption.

Id.  In assessing the propriety of an exemption, the trial court "must steer clear of these two pitfalls by inquiring into the realistic requirements of the job."   Id.  In making that determination,

> the court should consider, first and foremost, how the employee actually spends his or her time.  But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual requirements of the job.

Id.

///

8

**United States District Court**
For the Northern District of California

1

**B.   Ninth Circuit Decisions in Vinole and Wells Fargo**

2       Subsequent to this Court's certification order, the Ninth

3  Circuit issued two opinions clarifying how a district court's

4  certification analysis should proceed in cases where an employer

5  asserts an exemption.   In Vinole v. Countrywide Home Loans, Inc.,

6  the Ninth Circuit held that relying on a uniform exemption policy

7  to the near exclusion of other factors is insufficient to meet the

8  predominance requirement of Rule 23(b)(3).  571 F.3d 935, 946 (9th

9  Cir. 2009).  The district court must consider "all factors that

10  militate in favor of, or against, class certification," and the

11  overarching focus remains "whether trial by class representation

12  would further the goals of efficiency and judicial economy."   Id.

13       In Vinole, the Ninth Circuit discussed the types of common

14  proof that could suffice to establish the predominance of common

15  issues.   While an employer's "uniform application of an exemption

16  to employees" is one factor, district courts should also consider

17  "whether the employer exercised some level of centralized control

18  in the form of standardized hierarchy, standardized corporate

19  policies and procedures governing employees, uniform training

20  programs, and other factors susceptible to common proof."   Id.

21  The Ninth Circuit cited the existence of "company-wide policies

22  governing how employees spend their time, or [] uniformity in work

23  duties and experiences" as the type of proof that tends to

24  "diminish the need for individualized inquiry."   Id. at 947.   In

25  contrast, "in cases where exempt status depends upon an

26  individualized determination of an employee's work, and where

27  plaintiffs allege no standard policy governing how employees spend

28

their time, common issues of law and fact may not predominate."

Id. at 946-47 (citation and quotation marks omitted).

On the same day, the Ninth Circuit also issued its decision in In re Wells Fargo Home Mortgage Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009)("Wells Fargo I"). This case provides further guidance on how the Court should conduct its certification analysis. The Ninth Circuit expressly rejected the rule followed in Wang v. Chinese Daily News, 241 F.R.D. 601 (C.D. Cal. 2005), which "essentially creates a presumption that class certification is proper when an employer's internal exemption policies are applied uniformly to the employees." Wells Fargo I, 571 F.3d at 958. The Court noted that a "blanket exemption policy does nothing to facilitate common proof on the otherwise individualized issues." Id. In the context of discussing the outside salesperson exemption, the Ninth Circuit noted that the exemption often militates against certification because it requires a fact-intensive inquiry into each potential plaintiff's employment situation. Id. On the other hand,

> A centralized policy requiring employees to be at their desks for 80% of their workday would change this individual issue into a common one. Therefore, such a corporate policy would be highly relevant to the predominance analysis. A uniform exemption policy, however, has no such transformative power. Whether such a policy is in place or not, courts must still ask where the individual employees actually spent their time.

Id. at 959. The main concern in the predominance inquiry is "the balance between individual and common issues." Id.

///

United States District Court

For the Northern District of California

C.   **District Court Reactions to Vinole and Wells Fargo I**

On remand in the Wells Fargo case, Judge Patel in the Northern District of California decertified the class, noting that "when an employer asserts an exemption as a defense . . . the resolution of which depends on how employees spend their time at work, unless plaintiff proposes some form of common proof, such as a standard policy governing how and where employees perform their jobs, common issues of law or fact are unlikely to predominate." In re Wells Fargo Home Mortg. Overtime Pay Litig., No. 06-1770, 2010 WL 174329, *7 (N.D. Cal. Jan. 13, 2010)("Wells Fargo II"). She decertified the case because Plaintiffs could not come forward with "common proof that would absolve this court from inquiring into how each [manager] spent their working day." Id.

Similarly, after the Ninth Circuit's decisions in Vinole and Well Fargo I, Judge Armstrong in the Northern District of California decertified a case where managers alleged they had been misclassified as executive-exempt employees. Whiteway v. FedEx Kinkos Office and Print Servs., Inc., No. 05-2320 (N.D. Cal. Sept. 29, 2009). The order stated:

> The Court is no longer persuaded that common questions of fact or law will predominate over questions affecting individual class members. Though Plaintiff alleges that Defendant has a policy of classifying Center Managers as exempt, he has not pointed to any policy or common practice demonstrating that these employees *as a class* are required or expected to allocate the majority of their time to non-exempt tasks.

Id. at 5.

In Weigele v. FedEx Ground Package System, Inc., the District

United States District Court
For the Northern District of California

Court decertified a case where FedEx managers alleged they were improperly classified as exempt.  267 F.R.D. 614, 622 (S.D. Cal. 2010).  The court found that common issues did not predominate because of the "massive number of tasks" performed by Dock Service Managers and the variability in the amount of time they spent on these tasks, and the Court noted that FedEx's common processes and training "would provide no help to the Court in determining the actual work mix performed by the Plaintiffs."  Id.

**D.   <u>Modifying the Class Definition</u>**

Dollar Tree contends that these recent developments compel decertification.  <u>See</u> Mot. at 5-7.  Plaintiffs contend there is no need for the Court to re-examine its previous order certifying the class.  Opp'n at 6-7.  The Court agrees partially with Dollar Tree and partially with Plaintiffs.

In this case, unlike in <u>Wells Fargo II</u>, <u>Whiteway</u>, and <u>Weigele</u>, Plaintiffs have common proof of how SMs were actually spending their time.  Plaintiffs can rely on the certification forms that SMs signed every week to, in the words of the Ninth Circuit, transform what would otherwise be an individual issue into a common one.  <u>See Wells Fargo I</u>, 571 F.3d at 959.  However, the Ninth Circuit's reasoning in <u>Vinole</u> and <u>Wells Fargo I</u> persuades the Court of the need to narrow the class definition to include only SMs who responded "no" on their certification forms during the class period.  Narrowing the class in this way ensures that common issues will predominate over individual ones, and significantly lessens the risk that the class consists of both injured and uninjured parties.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

In this case, Plaintiffs "must show that it is more likely than not that [Dollar Tree's] exemption as applied to [SMs] was a policy or practice of misclassification." <u>Marlo</u>, 251 F.R.D. at 483. In order to make this showing, Plaintiffs can point to common evidence including Dollar Tree's decision to uniformly classify SMs as exempt, Dollar Tree's employment hierarchy and structure, its standardized policies and training procedures for SMs, the common tools it requires SMs to utilize, and, most importantly of all, the fact that SMs often certified on a weekly basis that they were <u>not</u> spending most of their time on managerial tasks. Dollar Tree's common policy of having SMs fill out weekly certifications obviates the need for much individual testimony from SMs concerning how they spent their time.

The Court is persuaded that common issues will predominate over individual ones only if it narrows the class to SMs who responded "no" at least once on the weekly payroll certification forms. According to Dollar Tree's analysis of certification forms comprising 29,431 workweeks, approximately 62 percent of SMs always certified that they spent a majority of their time performing managerial tasks. Crandall Decl. ¶¶ 15, 22-23. If the class were to continue to include SMs who always certified "yes," then Plaintiffs would be required to show that these SMs were not always being truthful, and this issue could not be resolved without resorting to individualized inquiries that would quickly overwhelm the common issues in this case.

No such individualized inquiries are necessary if the Court focuses its attention on SMs who certified "no." Dollar Tree

13

United States District Court

For the Northern District of California

classified this group of employees as exempt, yet they certified at least once that they were spending most of their time during particular workweeks performing non-managerial tasks. With regard to this group of employees, Plaintiffs can use the weekly payroll certifications and the other evidence of Dollar Tree's standardized practices and procedures in their attempt to convince the jury that "misclassification was the rule rather than the exception" at Dollar Tree. See Sav-On Drugs Stores, Inc. v. Super. Ct., 34 Cal. 4th 319, 330 (2004).

Plaintiffs may object that by narrowing the class to SMs who responded "no," the Court is weighing the merits of Plaintiffs' underlying claims. Indeed, Plaintiffs' Opposition repeatedly suggests that merits-based or liability issues can be neatly separated for questions relating to class certification. See Opp'n. However, according to the Ninth Circuit, "[t]he district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis." Vinole, 571 F.3d at 947 n. 15 (citing Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983)); see also Dukes, 603 F.3d at 590 ("A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met. . . .."). As stated by the Third Circuit,

> Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.

14

United States District Court

For the Northern District of California

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d
Cir. 2008) (citations and internal quotation marks omitted).

Here, the Court expresses no opinion on the merits of
Plaintiffs' claims.  The Court simply seeks to fulfil its
obligation to ensure that common issues predominate.  The SMs who
responded "no" on the certification forms are the ones whose
grievance against Dollar Tree can be adjudicated on a class-wide
basis.  Plaintiffs' counsel would not be able to advocate in this
case on behalf of those who always responded "yes" without
resorting to individualized testimony to explain why they filled
out the weekly certification forms inaccurately.  This testimony
from individual SMs would overwhelm the common issues.

Narrowing the class to include only SMs who certified "no"
avoids a second problem.  Courts have expressed concern about
overbroad classes that include both injured and uninjured parties.
See Wells Fargo II, 2010 WL 174329 at *8; see also In re Neurontin
Mktg. and Sale Practices Litig., 244 F.R.D. 89, 114 (D. Mass.
2007) (finding plaintiff's inability to propose method for
separating injured from uninjured precluded class certification).
Here, one clear group of potentially injured parties are SMs who
certified that they were not spending the majority of their time
on managerial tasks, and therefore the Court narrows the class
definition accordingly.

Nonetheless, the Court recognizes that some SMs may have
always certified "yes" even though they were not spending most of
their time on managerial tasks.  The Court does not want to
preclude these SMs from pursuing their misclassification claims on

United States District Court

For the Northern District of California

an individual basis.  The Court is willing to entertain a motion
to equitably toll the statute of limitations on their
misclassification claims so as to preserve their right to pursue
individual claims against Dollar Tree.  See Marlo, 251 F.R.D. at
476, 488 (after decertification of case, inviting parties to brief
question of whether statute of limitations on plaintiff's
individual claims should be tolled).

### E.    The Weekly Payroll Certifications

In their Opposition, Plaintiffs seek to rely on the weekly
payroll certifications to show homogenity among SMs.  See Opp'n at
5 ("it is each SM's statement that s/he, in fact, performs the
same job, every week, as every other, SM").  But Plaintiffs eschew
reliance on the weekly payroll certifications when it comes to
determining liability, presumably because most SMs respond "yes"
on the forms.  Instead, Plaintiffs propose that Dollar Tree's
liability should be determined based on "a survey of class members
regarding the amount of time spent on their work duties."  Id.
However, the Court sees no need for such a survey because the
weekly payroll certifications already provide a week-by-week
measure of how SMs were spending their time.

The Court anticipates that Plaintiffs may be concerned that
SMs who responded "no" may have been spending more weeks
performing non-managerial tasks than is indicated by their weekly
certifications.  In response, the Court notes that if this case
proceeds to trial, the Court is likely to divide the trial into a
liability and damages phase.  If there is a finding of liability,
then the Court is likely to appoint a special master to handle the

16

**United States District Court**
For the Northern District of California

particular damages claims of class members.  While the weekly
payroll certifications provide one measure of how many weeks
individual SMs spent the majority of their time engaged in non-
managerial tasks, there may be more scope for individual testimony
from class members at the damages phase of the litigation.  The
Court does note, however, that having relied on the weekly payroll
certifications to get this case certified, it may be difficult for
Plaintiffs to challenge the overall accuracy of those
certifications at later stages of this case.

The certifications can be regarded as a source of common
proof because Dollar Tree's expert declares that they provide
valid measures of weeks when SMs were not spending more than fifty
percent of their time performing managerial duties.  Crandall
Decl. ¶ 16; see also ECF No. 191 ("Rebuttal Decl. of Crandall") ¶
2 ("the weekly Certification Forms produce valid measures of
potentially non-exempt weeks").  Crandall supports this opinion by
pointing to statistically significant relationships between SM
responses and operational factors that were occurring in the store
during the week in question.  Crandall Decl. ¶ 16.  While Dollar
Tree points to the testimony of ten SMs who stated that they were
not truthful when they submitted their certifications, Mot. at 10-
11, the analysis performed by Dollar Tree's own expert indicates
that overall the certifications can be treated as a reliable
source of information concerning how SMs spent their time.

Crandall compares certification responses with fixed store-
level attributes, such as the number of full-time employees and
the level of customer flow per associate.  Id. ¶ 36.  Crandall

**United States District Court**
For the Northern District of California

finds that managers with a higher percentage of full-time employees are less likely to certify "no." Id. ¶ 38. According to Crandall, this finding makes sense, as SMs with experienced employees would be able to devote more of their time to managerial tasks. Id.

Crandall finds that SMs who oversaw stores with high volume sales and high customer flow per associate were more likely to report that they spent a majority of their time on non-managerial tasks. Id. ¶ 40. Crandall attributes this statistically significant relationship to the fact that SMs in such stores "may have a tendency to compensate by assisting with certain non-managerial functions." Id. ¶ 39. Overall, these fixed store-level attributes "exhibit clear statistical relationships with SMs' responses provided on the Certification Forms." Id. ¶ 41.

Crandall also compares changes in SMs' weekly certification reports to store-level attributes that varied from week to week. Id. ¶ 35. Crandall finds that SMs were more likely to certify "no" during weeks when they were understaffed, during weeks with below-average staff hours, and during weeks when a store lost an employee. Id. ¶¶ 43, 44. Again, it makes sense to the Court that SMs may have spent more time on non-managerial tasks, such as "receiving product, distributing and storing product, stocking product and cashiering" during such workweeks. Based on these comparisons, Crandall concludes that "the certifications have a strong tendency to reflect actual in-store conditions and are likely to accurately represent the activities performed by each manager during the week." Id. ¶ 35.

United States District Court
For the Northern District of California

Plaintiffs' expert, David Lewin, Ph.D. ("Lewin"), contends that "the Certification Forms do not provide any information about the work activities that SMs performed or the amount of time they spent performing such activities." Vandall Decl. Ex. JJ ("Lewin Resp. to Crandall Decl.") ¶ 10.[4] While the weekly payroll certifications do not provided a detailed, task-by-task breakdown of the amount of time that SMs were spending performing specific activities, they do provide the Court with the kind of information it needs to allow this case to continue as a class action; namely, information concerning weeks during which SMs were not spending most of the time performing managerial tasks.

Lewin also faults Crandall for failing to provide "sufficient statistical evidence for the correlations between SMs' Certification Form responses and manager-specific/store-specific relationships." Id. ¶ 10. He points out that Crandall failed to conduct "either multivariate (regression) analysis or correlation analysis of these relationships." Id. However, Plaintiffs' expert appears to have conducted no studies of his own related to the weekly payroll certifications.

The Court finds that Crandall's evidence of statistically significant relationships is sufficient to determine that the certifications are reliable overall, and that they can be relied upon to provide what was missing in cases like Wells Fargo II, Whiteway, and Weigele; namely, evidence of how managers were

---

[4] Matthew P. Vandall ("Vandall"), attorney for Defendant, filed a Declaration in Support of Defendant's Motion to Decertify. ECF No. 189.

19

spending their time and therefore a source of common proof that transforms what would otherwise be an individual issue into a common one.   The Court is not bound by these determinations as the litigation progresses.   See Dukes, 603 F.3d at 594.   If persuaded by the parties to do so, the Court can revise its determination concerning the overall reliability of the certifications. However, if Plaintiffs intend to argue that the certifications do not provide a reliable measure of weeks when SMs were not spending most of their time performing managerial tasks, then it is not clear to the Court how this case can proceed as a class action.

The Court does not rely exclusively on these certifications to determine that this case can continue to be adjudicated on a class-wide basis.   Plaintiffs also intend to rely on Dollar Tree's "common training, common directives (e.g. policies, procedures, merchandising 'plan-o-grams'), common job duties, common expectations, and a common evaluation process" to establish that SMs were misclassified as exempt.   See Opp'n at 2.   Plaintiffs intend to show the "one size fits all" nature of the SM job based on the "tasks SMs perform, the resources they use, the environment within which they work, and the directives received from Dollar Tree's corporate office."   Opp'n at 14 n.14.   Based on the standardized nature of the SM position, Plaintiffs intend to argue that SMs should not have been classified as managers, a position that should be reserved for employees who exercise discretion and independent judgment.   Whether employees who spent a majority of their time performing the seventeen tasks on the weekly payroll certifications were engaged in exempt work is also a question that

1    can be answered on a class-wide basis.[5]

2         Dollar Tree points to evidence of variability in the

3    experiences of SMs based on such factors as store size, management

4    style of District Managers, SM training, and management tools.

5    Mot. at 11-18. Dollar Tree also contends that SMs had varying

6    approaches to ordering and displaying merchandise and that they

7    had varying experiences with human resources functions, such as

8    their duty to hire and fire. Mot. at 18-21. Even though the

9    Court has relied on Crandall's analysis to support the overall

10   accuracy of the weekly payroll certifications, the Court also

11   notes Crandall's finding of wide variability in SMs' experiences.

12   See Crandall Decl.

13        Defendants can rely on this evidence to contest Plaintiffs'

14   contention that SMs at Dollar Tree occupied a "one size fits all"

15   position, and to support the company's contention that it

16

17        [5] The Court expresses no opinion on whether this last question
18   can be answered in motion practice or only at trial. In Sav-On
     Drug Stores, the California Supreme Court stated that "task
19   classification is a mixed question of law and fact." 34 Cal. 4th
     at 330. The Court also is not opposed, in principle, to the
20   parties' use of representative testimony. While Judge Patel
     questioned the use of such testimony in a case dealing with the
21   outside salesperson exemption, see Wells Fargo II, 2010 WL 174329,
     at *8, in such cases employees act without supervision and with
22   unfettered autonomy, which is precisely why representative
     testimony concerning where and how such employees were spending
23   their time is problematic. Here, the Court is not dealing with the
     outside salesperson exemption. Plaintiffs contend that Dollar Tree
24   SMs had little discretion and followed standardized company-wide
     directives, and representative testimony seems appropriate as part
25   of Plaintiffs' case-in-chief. Defendant, of course, can attempt to
     counter the suggestion that Dollar Tree SMs exercised little or no
26   discretion with SM testimony of its own. If this case goes to
     trial, however, the Court does not anticipate allowing each side to
27   call more than a handful of SMs as witnesses as part of the
     liability phase of the trial.

28

realistically expected SMs to spend most of their time performing

exempt work.  In short, Dollar Tree's evidence of variability is

not a reason to decertify the class in its entirety, but it is

evidence that Dollar Tree can use to defend its classification of

SMs as exempt in later stages of these proceedings or at trial.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

22

**United States District Court**
For the Northern District of California

1    **V.    CONCLUSION**

2          For the reasons stated above, the Court GRANTS IN PART and

3    DENIES IN PART the Motion to Decertify filed by Dollar Tree

4    Stores, Inc.  The Court redefines the class as:  All persons who

5    were employed by Dollar Tree Stores, Inc. as California retail

6    Store Managers at any time on or after December 12, 2004, and on

7    or before May 26, 2009, and who responded "no" at least once on

8    Dollar Tree's weekly payroll certifications.

9          In light of this new definition of the class, it is not clear

10   to the Court if Robert Runnings, Miguel Cruz, and John Hansen can

11   continue as Class Representatives.  The Court invites Class

12   Counsel to file a motion to equitably toll the statute of

13   limitations on the misclassification claims of current or former

14   Dollar Tree Store Managers who are no longer part of the class to

15   preserve their right to pursue individual claims against Dollar

16   Tree.  The Court encourages the parties to resolve this issue by

17   stipulation.

18

19         IT IS SO ORDERED.

20

21         Dated: September 9, 2010

22                                        _Samuel Conti_
                                          _____
23                                        UNITED STATES DISTRICT JUDGE

24

25

26

27

28
                                    23