IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. CRUZ, and JOHN D. HANSEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>DOLLAR TREE STORES, INC.,<br><br>    Defendant. | Case Nos. 07-2050 SC<br>           07-4012 SC<br><br><u>ORDER DECERTIFYING CLASS</u> |
| ROBERT RUNNINGS, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>DOLLAR TREE STORES, INC.,<br><br>    Defendant. | |

## I. INTRODUCTION

This is a certified class action brought by Plaintiffs Robert Runnings ("Runnings"), Miguel Cruz ("Cruz"), and John Hansen ("Hansen") (collectively, "Plaintiffs"), who allege that they and other current and former store managers at Defendant Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree") were misclassified as executive-exempt employees and thereby denied overtime pay and meal and rest breaks in violation of California law. On May 27, 2011, the Court conducted a hearing on the trial plans submitted by

Plaintiffs and Defendant. At the conclusion of the hearing, the Court expressed concern over the continued propriety of class treatment in this case and ordered the parties to submit briefs addressing whether continued class treatment was appropriate. The parties have submitted briefs in response to the Court's order. ECF Nos. 314 ("Def.'s Br."), 317 ("Pls.' Br.").[1] After reviewing these briefs, and many other papers submitted by the parties over the course of this litigation, the Court finds that continued class treatment is inappropriate and DECERTIFIES the class for the following reasons.

## II. BACKGROUND

The Court assumes the parties are familiar with the procedural and factual background of this case, which the Court set out in its May 26, 2009 Order Granting the Amended Motion for Class Certification. ECF No. 107 ("Orig. Cert. Order"). Accordingly, the Court provides a truncated version here.

Plaintiffs are former Dollar Tree employees who held the position of store manager. On April 11, 2007, Cruz and Hansen filed suit ("the Cruz action") on behalf of themselves and all others similarly situated against Dollar Tree, alleging that Dollar Tree improperly categorizes its store managers as executive-exempt employees under California and federal labor laws. ECF No. 1 ("Compl."). In August 2007, Runnings filed a similar action in state court (the "Runnings action"), which was subsequently removed

---

[1] Cruz v. Dollar Tree, Case No. 07-2050 ("Cruz action"), and Runnings v. Dollar Tree, Case No. 07-4012 ("Runnings action"), have been consolidated. Unless otherwise noted, all docket numbers in this Order refer to docket entries in the Cruz action.

2

and consolidated with the Cruz action. See ECF No. 45.

On May 26, 2009, the Court certified a class of "all persons who were employed by Dollar Tree Stores, Inc. as California retail Store Managers at any time on or after December 12, 2004, and on or before May 26, 2009," and appointed Plaintiffs as class representatives. See Orig. Cert. Order. The class consisted of 718 store managers ("SMs") who worked in 273 retail locations. Id.

On June 18, 2010, in the wake of two Ninth Circuit decisions regarding employment class actions -- In re Wells Fargo Home Mortgage Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009) ("Wells Fargo I"), and Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th Cir. 2009) -- Dollar Tree moved for decertification, arguing that changes in the law made continued class treatment inappropriate. ECF No. 188. On September 9, 2010, the Court granted in part and denied in part Dollar Tree's motion for decertification. ECF No. 232 ("Part. Decert. Order").

As explained in the Original Certification Order and the Partial Decertification Order, Dollar Tree requires its SMs to complete weekly payroll certifications indicating whether they spent more than fifty percent of their actual work time each week performing seventeen listed duties that Dollar Tree believes to be "managerial" in nature. See Part. Decert. Order at 2. The certification form states that SMs "may not spend more than a total of 35% of his/her actual work time each week receiving product, distributing and storing product, stocking product and cashiering." Id. Each SM must certify "yes" if he or she spent the majority of his or her time performing the seventeen duties and "no" if he or she did not. Id. The payroll certification form further states

that if the SM responds no, "s/he must immediately provide an explanation to both Payroll and Human Resources. No salary or wage will be withheld because of non-compliance." Id. The form provides a space for SMs to write an explanation. Id.

In its Partial Decertification Order, after reviewing the Ninth Circuit's decisions in Wells Fargo I and Vinole and examining subsequent district court reactions, the Court decided that, with a modification of the class definition, this case could proceed as a class action. The Court held that Dollar Tree's payroll certifications provided common proof of how SMs were spending their time. Part. Decert. Order at 12-13. The Court reasoned that this common proof -- which was lacking in other cases[2] where classes were decertified after Vinole and Wells Fargo I -- would obviate the need for much individual testimony from SMs concerning how they spent their time. Id. However, the Court narrowed the class to include only those SMs who certified "no" on a payroll certification form at least once during the class period. The Court reasoned that, in order to prove liability with regard to the SMs who always certified "yes," Plaintiffs would need to show that these SMs were not truthful when completing their payroll certifications. Id. Such credibility determinations would require individualized inquiries that would overwhelm the common issues in the case. Id. By narrowing the class, the Court sought to avoid this problem.

The Partial Decertification Order resulted in a class

---

[2] See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig., 268 F.R.D. 604, 611 (N.D. Cal. Jan. 13, 2010) ("Wells Fargo II")(denying class certification because plaintiffs could not produce "common proof that would absolve this court from inquiring into how each [manager] spent their working day").

4

consisting of 273 members and defined as "all persons who were employed by Dollar Tree Stores, Inc. as California retail store managers at any time on or after December 12, 2004, and on or before May 26, 2009, and who responded 'no' at least once on Dollar Tree's weekly payroll certifications." Id. at 23. The class definition has not been altered further.[3]

The Court subsequently reviewed motions from Plaintiffs and Defendant addressing trial management issues, reviewed and denied a motion for reconsideration of the Partial Decertification Order filed by Plaintiffs, and held a May 27, 2011 hearing to discuss trial management issues. See ECF Nos. 277 ("Def.'s Trial Plan"), 290 ("Pls.' Trial Plan"), 301 ("Mot. for Recon."). These developments, along with the Ninth Circuit's decision in Marlo v. United Parcel Serv., Inc., No. 09-56196, 2011 U.S. App. LEXIS 8664 (9th Cir. Apr. 28, 2011) ("Marlo II"), made the Court increasingly concerned that individualized issues will predominate over class-wide issues if this case proceeds to trial as a class action. The Court thus decided to entertain further briefing from the parties regarding the propriety of continued class treatment. The Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, No. 10-277, 2011 U.S. LEXIS 4567 (June 20, 2011), has since heightened the Court's concerns. Having considered the parties' briefings, recent

---

[3] On March 8, 2011, the Court granted in part Dollar Tree's Motion to Dismiss Claims of Class Members Who Failed to Respond to Discovery Requests. ECF No. 282 ("Mar. 8, 2011 Order"). The Court dismissed the claims of eighty-nine class members who failed to respond to limited discovery authorized by the Court despite multiple warnings that failure to respond might result in dismissal. Id. The Court declined to dismiss twenty class members who did not receive the final warning letter sent by Plaintiffs' counsel. The March 8, 2011 Order reduced the class to its current size of 184 members.

developments in the case, and recent developments in the law of class actions, the Court finds that decertification of the class is warranted.

### III. **LEGAL STANDARD**

The district court has the discretion to certify a class under Federal Rule of Civil Procedure 23. See Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003). Rule 23(a) requires that the plaintiff demonstrate (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class interest. Fed. R. Civ. P. 23(a). In addition to meeting these requirements, the plaintiff must also show that the lawsuit qualifies for class action status under one of the three criteria found in Rule 23(b). Dukes, 2011 U.S. LEXIS 4567, at *12.

A district court's order to grant class certification is subject to later modification, including class decertification. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "If evidence not available at the time of certification disproves plaintiffs' contentions that common issues predominate, the district court has the authority to modify or even decertify the class." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 579 (9th Cir. 2010), rev'd on other grounds, No. 10-277, 2011 U.S. LEXIS 4567 (June 20, 2011).

In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met. O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000). "Although

1  certification decisions are not to focus on the merits of a
2  plaintiff's claim, a district court reevaluating the basis for
3  certification may consider its previous substantive rulings in the
4  context of the history of the case, and may consider the nature and
5  range of proof necessary to establish the class-wide allegations."
6  Marlo v. United Parcel Serv., Inc., 251 F.R.D. 476, 479 (N.D. Cal.
7  2008) ("Marlo I") (internal citations omitted).

**IV.  DISCUSSION**

The central issue in this case is whether Dollar Tree misclassified its SMs as exempt.  Here, the Court previously ruled that Plaintiff had satisfied Rule 23(a) and certified the class under Rule 23(b)(3).  See Orig. Cert. Order.  Dollar Tree argues that continued certification under Rule 23(b)(3) is improper because Plaintiffs have failed to provide common proof of misclassification, and that therefore individual inquiries will predominate at trial.[4]  Def.'s Br. at 1.  Plaintiffs argue that there have been no new developments in the facts of this case or in the law that compel decertification. Pls.' Br. at 4.  The Court agrees with Dollar Tree.

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Among

---

[4] Dollar Tree also argues that Plaintiffs fail to satisfy the commonality requirement of Rule 23(a).  Because the Court finds that the predominance requirement is not met, it does not address whether Rule 23(a) is satisfied.

7

the issues central to the predominance inquiry is whether the case, if tried, would present intractable management problems. Fed. R. Civ. P. 23(b)(3)(D).

Developments in this case and in the case law since the Court issued its Partial Decertification Order in September 2010 have persuaded the Court that individual issues predominate in this case and trial as a class action would present unmanageable difficulties. In particular, the basis for continued certification of the present class in the Court's Partial Decertification Order -- the determination that the payroll certification forms could serve as reliable common proof of how SMs were spending their time -- is no longer tenable. <u>Both</u> parties have repeatedly attacked the reliability of the certification forms. Additionally, it has become clear to the Court that "the crux" of Plaintiffs' proof at trial will be representative testimony from a handful of class members. <u>See</u> ECF No. 290 ("Pls.' Mot. for Pre-Trial Order") at 6. The appropriateness of such a trial plan was a questionable proposition under this circuit's case law at the time of the Court's Partial Decertification Order.[5] It is now untenable in light of the Ninth Circuit's decision in <u>Marlo II</u> and the Supreme Court's decision in <u>Dukes</u>.

The Court begins by briefly reviewing the California labor law

---

[5] <u>See, e.g.</u>, <u>Wells Fargo II</u>, 268 F.R.D. at 612 ("[T]he court has been unable to locate any case in which a court permitted a plaintiff to establish the non-exempt status of class members, especially with respect to the outside sales exemption, through statistical evidence or representative testimony."); <u>Beauperthuy v. 24 Hour Fitness USA, Inc.</u>, 2011 U.S. Dist. LEXIS 24768, *59-60 (N.D. Cal. 2011) (rejecting the use of representative testimony where deposition testimony "show[ed] that for every manager who says one thing about his or her job duties and responsibilities, another says just the opposite.").

1 at issue in this case and then proceeds to explain why continued
2 class treatment is no longer appropriate.

### A. California's Executive Exemption in Class Actions

California law requires that all employees receive overtime compensation and authorizes civil actions for the recovery of unpaid compensation. Cal. Lab. Code §§ 510, 1194. However, the law recognizes an exemption for "executive" employees who meet six criteria. To qualify as executive-exempt, an employee must: (1) manage the enterprise, a customarily recognized department, or subdivision thereof; (2) direct the work of two or more other employees; (3) have the authority to hire or fire, or have their recommendations to hire, fire, or promote given weight; (4) exercise discretion and independent judgment; (5) be "primarily engaged" in exempt duties; and (6) earn a monthly salary equal to twice the state minimum wage for full-time employment. Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(a)-(f).

The "primarily engaged" prong of the exemption inquiry requires a week-by-week analysis of how each employee spent his or her time. Marlo II, 2011 U.S. App. LEXIS 8664, at *14. The applicable regulations state that in determining whether an employee is "primarily engaged" in exempt work, "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work . . . shall be considered." Cal. Code Regs. tit. 8, § 11090(1)(A)(1)(e). California courts have construed this requirement to mean that "the Court must determine whether any given class members (or all the class members) spend more than 51% of their time on managerial tasks in

any given workweek." Dunbar v. Albertson's, Inc., 47 Cal. Rptr. 3d 83, 86 (Ct. App. 2006) (emphasis added).

In order to satisfy Rule 23(b)(3), Plaintiffs must provide common proof that "misclassification was the rule rather than the exception." Marlo II, 2011 U.S. App. LEXIS 8664, at *12. Thus, Plaintiffs must provide common proof that, among other things, class members were spending more than fifty-one percent of their time on managerial tasks in any given workweek. In its Partial Decertification Order, the Court held that the payroll certification forms could provide this proof. Subsequent developments have demonstrated that the certification forms cannot serve as reliable common proof and that Plaintiffs instead intend to rely on individual testimony by exemplar class members at trial.

**B. Changes in the Legal Landscape Favor Decertification**

Two developments in the law of employment class actions since the Court issued its Partial Decertification Order bear heavily on the Court's decision that class treatment in this case is no longer proper.

First, the Ninth Circuit's recent decision in Marlo II affirms the impropriety of relying on representative testimony where plaintiffs have provided no reliable means of extrapolating that testimony to the class as a whole. In Marlo II, the Ninth Circuit affirmed the decision of this district court decertifying a class of employees who alleged they were misclassified as executive-exempt. 2011 U.S. App. LEXIS 8664, at *17. The district court found that the plaintiffs had failed to satisfy Rule 23(b)(3)'s predominance requirement because they had failed to provide common evidence of misclassification that would obviate the need for

10

individualized inquiries. Marlo I, 251 F.R.D. at 485. The court explained that the plaintiffs' primary evidence at trial would be the testimony of individual class members. Id. at 486. The court concluded:

> Without more than this individual testimony, the Court cannot conceive how the overtime exemption will be presented to the jury as a common issue for class-wide adjudication, as opposed to a number of individualized inquiries. There is a significant risk that the trial would become an unmanageable set of mini-trials on the particular individuals presented as witnesses.

Id. In affirming the district court's decision, the Ninth Circuit held that the plaintiffs' evidence did not support predominance, and that the district court did not abuse its discretion by holding that representative testimony did not support a class-wide determination. Marlo II, 2011 U.S. App. LEXIS 8664, at *15-17. As explained below, given that the payroll certification forms in the instant case can no longer be considered reliable proof, Plaintiffs' evidence in this case closely parallels that in Marlo II and fails to establish predominance for the same reasons.

Second, the United States Supreme Court's recent decision in Dukes provides a forceful affirmation of a class action plaintiff's obligation to produce common proof of class-wide liability in order to justify class certification. In Dukes, the Court reversed certification of a class of current and former female Wal-Mart employees who alleged that Wal-Mart discriminated against them on the basis of their sex by denying them equal pay and promotions in violation of Title VII of the Civil Rights Act of 1964. 2011 U.S. LEXIS 4567, at *37-38. The Court found that the plaintiffs had failed to satisfy the commonality requirement of Rule 23(a). Id.

11

The Court emphasized that it was not enough to pose common questions; rather, those questions must be subject to common resolution. Id. at *19. The evidence of commonality the plaintiffs offered -- consisting of statistical evidence of pay and promotion disparities, anecdotes from class members, and the testimony of a sociologist who opined that Wal-Mart had a culture of sex discrimination -- failed to provide the "glue" necessary to render all class members' claims subject to common resolution. Id. at *27-34. Similarly here, as explained below, Plaintiffs have failed to provide common proof to serve as the "glue" that would allow a class-wide determination of how class members spent their time on a weekly basis. In the absence of such proof, the commonality threshold, let alone the predominance inquiry of Rule 23(b)(3), has not been met.

Also of importance to this case, Dukes rejected a "Trial by Formula" approach to damages akin to that which Plaintiffs have proposed here. Id. at *48-51. The Dukes plaintiffs intended to determine each class member's damages using a formulaic model approved by the Ninth Circuit in Hilao v. Estate of Marcos, 103 F.3d 767, 782-87 (9th Cir. 1996). Id. In Hilao, compensatory damages for 9,541 class members were calculated by selecting 137 claims at random, referring those claims to a special master for valuation, and then extrapolating the validity and value of the untested claims from the sample set. See Dukes, 603 F.3d at 625-26. The Ninth Circuit in Dukes concluded that a similar procedure could be used by allowing Wal-Mart "to present individual defenses in the randomly selected sample cases, thus revealing the approximate percentage of class members whose unequal pay or

12

nonpromotion was due to something other than gender discrimination." <u>Id.</u> at 627 n.5. The Supreme Court rejected this "novel project" as a "Trial by Formula" that would deprive Wal-Mart of its right to assert statutory defenses to the individual claims of all class members. <u>Dukes</u>, 2011 U.S. LEXIS 4567, at *48-51. Here, Plaintiffs rely on <u>Hilao</u> to propose determining individualized damages "in a formulaic manner." Pls.' Mot. for Pre-Trial Order at 4 n.10. In light of the Supreme Court's rejection of this approach, it is not clear to the Court how, even if class-wide liability were established, a week-by-week analysis of every class member's damages could be feasibly conducted.

## C. Recent Developments in this Case Compel Decertification

Since issuing its Partial Decertification Order, the Court has learned that the payroll certification forms cannot serve as reliable common proof of misclassification, and that Plaintiffs intend to rely primarily on individual testimony by exemplar class members to prove their case. These developments lead the Court to conclude that individual issues will predominate at trial.

### 1. The Payroll Certification Forms Can No Longer Be Considered Reliable Common Proof

In its Partial Decertification Order, the Court found that the payroll certifications appeared reliable based on the analysis of Dollar Tree's expert Robert Crandall. <u>See</u> Part. Decert. Order at 17-20. In making this determination, however, the Court expressly noted that "[t]he Court is not bound by these determinations as the litigation progresses. If persuaded by the parties to do so, the Court can revise its determination concerning the overall reliability of the certifications." <u>Id.</u> at 20. The Court has

13

since learned that approximately sixty percent of class members stated under oath that either (1) they were not truthful when submitting their weekly payroll certifications, or (2) their "yes" responses did not in fact indicate that they spent more than fifty percent of their actual work time performing the tasks listed on the form. ECF No. 298-1 ("Vandall Decl. ISO Objections to Ngo Decl.") at ¶ 4.[6] An additional twenty-five percent of the class could not recall whether they were truthful when submitting their weekly certifications or provided no response at all. Id.

In addition, Plaintiffs themselves have argued on numerous occasions since the Court's Partial Decertification Order that the payroll certifications are not an accurate indication of how class members spent their time. They have made this argument despite the Court's repeated admonition that "if Plaintiffs intend to argue that the certifications do not provide a reliable measure of weeks when SMs were not spending most of their time performing managerial tasks, then it is not clear to the Court how this case can proceed as a class action." Part. Decert. Order at 17; see also ECF No. 294 ("Order Granting Leave to File Mot. for Recons.") at 2 (same). Indeed, in opposition to Defendant's motion for summary adjudication, Plaintiffs argued that "the certification responses are clearly unreliable." Runnings action, ECF No. 337 ("Pls.' Opp. To MSA") at 10. Plaintiffs argued that class members were confused about how to complete the forms, that the analysis of Defendant's

---

[6] When it issued the Partial Decertification Order, the Court was only presented with evidence that ten class members indicated they were not truthful when submitting their payroll certifications. See Part. Decert. Order at 17. Dollar Tree has subsequently provided evidence that 111 class members indicated the same. Vandall Decl. ISO Objections to Ngo Decl. at ¶ 4.

1 expert Crandall was based on old data compiled prior to the
2 narrowing of the class, and that there are a large number of weeks
3 for which class members did not fill out certification forms. Id.
4 Similarly, in Plaintiffs' motion for reconsideration filed on April
5 22, 2011, Plaintiffs argued that "[r]ecent events . . . have
6 revealed that Dollar Tree's [payroll certification] records are
7 wrought with problems and have therefore provided an unreliable
8 basis by which to establish eligibility for class membership." ECF
9 No. 301 at 1.

10   Plaintiffs now argue that the certification forms are indeed
11 reliable common proof of how class members were spending their
12 time. Pls.' Br. at 8-10. Their argument, however, amounts to
13 nothing more than pointing to the Court's determination in the
14 Partial Decertification Order and noting that Dollar Tree has used
15 the process for years. Id. This does nothing to overcome the fact
16 that a majority of class members have stated under oath that their
17 certifications were not truthful or did not accurately reflect the
18 time they actually spent performing the tasks listed on the form.

19   In sum, the Court's certification of the current class was
20 premised on the reliability of the payroll certifications as common
21 proof of misclassification. Subsequent briefing by both parties
22 has made this premise no longer sustainable. As a result, it is no
23 longer possible to view the negative responses as, in the words of
24 the Supreme Court, the "glue" that holds all of the individualized
25 experiences of the class members together. See Dukes, 2011 U.S.
26 LEXIS 4567, at *24.
27 ///
28 ///

15

### 2. Representative Testimony Cannot Properly Serve as Common Proof of Class-wide Liability in This Case

Plaintiffs indicated in their trial plan that they intend to make representative testimony "the crux" of their case. Pls.' Mot. for Pretrial Order at 6 ("exemplar plaintiffs' testimony will be the crux of the Plaintiffs' case"); id. at 8 ("the liability issues in this case should be driven by the actual work performed by the class members as evidenced by the exemplar plaintiffs' testimony."). They now contend that this Court already decided that representative testimony of exemplar plaintiffs would be binding on the rest of the class when it chose to certify this case as a class action. Pls.' Br. at 19. According to Plaintiffs, "this Court should simply order that the testimony of five exemplar plaintiffs will be extrapolated to the class as a whole." Id. The Court declines to do so. In its Partial Decertification Order, the Court noted that "representative testimony seems appropriate as part of Plaintiffs' case-in-chief." Part. Decert. Order at 21 n.5. However, as the order makes clear, this statement was premised on the determination that the payroll certifications provided the glue necessary to justify extrapolation from a subset of class members to the class as a whole. As explained above, this conclusion is no longer tenable.

Courts in this district have repeatedly decertified classes in overtime exemption cases where Plaintiffs have provided no reliable means of extrapolating from the testimony of a few exemplar class members to the class as a whole. In Marlo I, the Court explained that:

Plaintiff's evidence at trial primarily would be

16

> individual [class members'] testimony . . . . The exempt/non-exempt inquiry focuses on what an employee actually does. The declarations and deposition testimony of [class members] submitted by the parties suggest variations in job duties . . . . Without more than this individual testimony, the Court cannot conceive how the overtime exemption will be presented to the jury as a common issue for class-wide adjudication, as opposed to a number of individualized inquiries.

251 F.R.D. at 486. The court decertified the class because the plaintiff failed "to provide common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative." Id. The Ninth Circuit affirmed, as explained supra. See also Wells Fargo II, 268 F.R.D. at 612 (denying class certification in overtime exemption case because differences among class members rendered representative testimony insufficient common proof of misclassification); Whiteway v. FedEx Kinkos Office and Print Servs., Inc., No. 05-CV-02320 (N.D. Cal. Oct. 2, 2009) (decertifying class in overtime exemption case because plaintiff could not show how testimony of 10-20 class members could be extrapolated to the class).

Because it is no longer viable to consider the payroll certifications reliable common proof of how class members were spending their time, there is no basis for distinguishing this case from those in which this district has found certification improper. As in those cases, the failure of Plaintiffs here to offer a basis for extrapolation of representative testimony to the class as a whole is fatal to continued certification.

///
///

### 3. Plaintiffs' Other Evidence Does Not Provide Common Proof of How Class Members Spent Their Time

Plaintiffs contend that, even if the payroll certification forms are not reliable, class-wide liability may be tried by a plethora of other common evidence. Pls.' Br. at 10. Plaintiffs have presented evidence of Dollar Tree's centralized operational and human resources hierarchy. See Runnings action, ECF No. 124 ("Pls.' Am. Mot. for Class Cert."). They have likewise presented evidence that all store managers are given uniform training and training-related materials, use the same on-the-job tools, receive "daily planners" that require them to perform certain tasks, and are subject to other Dollar Tree policies intended to standardize the experiences of all store managers. Id.

While this evidence does provide some proof that class members shared a number of common employment experiences, it does not provide common proof of whether they were spending more than fifty percent of their time performing exempt tasks. As the Ninth Circuit explained in Marlo II, the existence of "documents explaining the activities that [managers] are expected to perform, and procedures that [managers] should follow . . . does not establish whether [the managers] actually are 'primarily engaged' in exempt activities during the course of the workweek." 2011 U.S. App. LEXIS 8664, at *13. This evidence is therefore insufficient to establish that common issues will predominate over individualized ones at trial.

///
///
///

18

## V. CONCLUSION

For the foregoing reasons, the Court finds that continued class treatment is not appropriate in this case and DECERTIFIES the class. The Court invites Class Counsel to file a motion to equitably toll the statute of limitations on the misclassification claims of former class members to preserve their right to pursue individual claims against Dollar Tree. The Court encourages the parties to resolve this issue by stipulation.

The parties shall appear for a Case Management Conference on September 9, 2011 at 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

IT IS SO ORDERED.

Dated: July 7, 2011

_____
UNITED STATES DISTRICT JUDGE